Liza M. Walsh
Hector D. Ruiz
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
(973) 757-1100

**OF COUNSEL** (*admitted pro hac vice*):

Adam R. Alper
Brandon H. Brown
Natalie Flechsig
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Michael W. De Vries
KIRKLAND & ELLIS LLP
555 South Flower Street
Suite 3700
Los Angeles, CA 90071
(213) 680-8400

Leslie Schmidt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC., and PICTOMETRY INTERNATIONAL CORP.,<br><br>Plaintiffs,<br><br>v.<br><br>GAF MATERIALS LLC,<br><br>Defendant. | Civil Action No.: 1:21-cv-10669 (RMB-SAK)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER**<br><br>*Filed Electronically* |

# **TABLE OF CONTENTS**

I.     **INTRODUCTION** ...................................................................................1

II.   **LEGAL STANDARD** ...........................................................................4

III.  **ARGUMENT**.........................................................................................4

     A.    The Private Interest Factors Favor Adjudicating This Case in
          the District of New Jersey .......................................................6

          1.    EagleView's preference to litigate where GAF is
                 headquartered outweighs GAF's desire to litigate where
                 it has a tangential presence (factors 1 and 2) ..............................6

          2.    EagleView's claim arose in New Jersey, and GAF
                 identifies no relevant connection to Utah (factor 3) ................10

          3.    The convenience of the parties, with respect to physical
                 and financial condition, favors litigating in New Jersey
                 (factor 4)....................................................................................17

          4.    The convenience of the witnesses does not favor transfer
                 because GAF does not identify witnesses in Utah (factor
                 5) ...............................................................................................18

          5.    GAF's books and records are in this District (factor 6)...........20

     B.    The Public Interest Factors Favor Adjudicating This Case in the
          District of New Jersey ..........................................................21

           1.    Enforcing a judgment against a New Jersey corporation
                 is easier in New Jersey (factor 1)..............................................21

          2.    Practical considerations that could make the trial easy,
                 expeditious, or inexpensive favor this District, not Utah
                 (factor 2)....................................................................................22

          3.    Local interests favor adjudicating a dispute against a
                 New Jersey company in New Jersey (factor 4).........................25

          4.    The court's familiarity with the asserted patents weighs
                 against transfer (factor 6).........................................................26

i

5.     The remaining factors (factors 3 and 5) are neutral..................27

**IV.    CONCLUSION** ............................................................................**28**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
    571 U.S. 49 (2013)...................................................................................................6

*Avaya, Inc. v. Mitel Networks Corp.*,
    460 F. Supp. 2d 690 (E.D. Va. 2006) ................................................................24

*Canon Fin. Servs., Inc. v. JL Barrett Corp.*,
    No. 10-4117, 2010 WL 4746242 (D.N.J. Nov. 16, 2010)............................22, 24

*Cellectis S.A. v. Precision Biosciences, Inc.*,
    858 F. Supp. 2d 376 (D. Del. 2012)...................................................................10

*COA Network, Inc. v. J2 Global Commcn's, Inc.*,
    No. 09-6505, 2010 WL 2539692 (D.N.J. June 17, 2010) .....................19, 24, 27

*Coyoy v. United States*,
    No. CV-202501 KMESK, 2021 WL 1050198 (D.N.J. Mar. 18,
    2021) ...................................................................................................................27

*Eon-Net, L.P. v. Drugstore.com, Inc.*,
    No. 05-845 (JCL), 2005 WL 8175900 (D.N.J. Dec. 20, 2005).........................17

*GSK v. Merix Pharm. Corp.*,
    No. 05-898, 2005 WL 1116318 (D.N.J. May 10, 2005) ....................................20

*Indivior Inc. v. Dr. Reddy's Lab'ys S.A.*,
    No. 17-07111, 2018 WL 4921541 (D.N.J. July 12, 2018)......................4, 18, 21

*Indivior Inc. v. Dr. Reddy's Lab'ys S.A.*,
    No. 17-7106, 2018 WL 4089031 (D.N.J. Aug. 27, 2018)..........................*passim*

*Intell. Ventures I LLC v. Altera Corp.*,
    842 F. Supp. 2d 744 (D. Del. 2012)....................................................................6

*Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
    797 F. Supp. 2d 472 (D. Del. 2011)....................................................................8

*Intendis, Inc. v. River's Edge Pharms., LLC*,
   No. 11-2838 FSH PS, 2011 WL 5513195 (D.N.J. Nov. 10, 2011) ...............9, 10

*Internal Combustion Sols., LLC v. Yoshimura Rsch & Dev. Of Am.*
   *Inc.*,
   No. 13-02793, 2014 WL 1391178 (D.N.J. Apr. 9, 2014) ...........................10, 21

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) ........................................................................4, 6, 28

*LifeCell Corp. v. Lifenet Health*,
   No. 15-6701 (CCC), 2016 WL 544489 (D.N.J. Feb. 9, 2016), *aff'd*,
   2016 WL 3545752 (D.N.J. June 28, 2016)..........................................................19

*Master Cutlery, Inc. v. Panther Trading Co.*,
   No. 12-4493, 2012 WL 6597056 (D.N.J. Dec. 17, 2012) ...........................11, 26

*MaxLite, Inc. v. ATG Elecs., Inc.*,
   193 F. Supp. 3d 371 (D.N.J. 2016)....................................................................18

*Medidata Sols., Inc. v. DATATRAK Int'l, Inc.*,
   No. CIV. 12-4748 WJM, 2013 WL 1989854 (D.N.J. May 13,
   2013) ..................................................................................................................24

*ML Design Grp., LLC v. Young Mfg. Co.*,
   No. 12-5883, 2013 WL 3049174 (D.N.J. June 17, 2013) ..................................10

*Ostella v. IRBSearch, LLC*,
   No. 12-7002, 2014 WL 3843880 (E.D. Pa. Aug. 5, 2014).................................19

*PharmaNet, Inc. v. DataSci Liab. Co.*,
   No. 08-2965, 2009 WL 396180 (D.N.J. Feb. 17, 2009)......................................4

*Reckitt Benckiser Pharms., Inc. v. Biodelivery Scis. Int'l, Inc.*,
   No. 14-5892, 2015 WL 4461511 (D.N.J. July 21, 2015) ...................................24

*Refined Recommendation Corp. v. Netflix, Inc.*,
   No. 07-04981, 2008 WL 474106 (D.N.J. Feb. 15, 2008)............................12, 17

*Samuels v. Medytox Sols., Inc., No.*
   CIV.A. 13-7212 SDW, 2014 WL 4441943 (D.N.J. Sept. 8, 2014)...................27

*Shutte v. Armco Steel Corp.*,
   431 F.2d 22 (3d Cir. 1970) ................................................................................4, 6

*Smart Audio Techs., LLC v. Apple, Inc.*,
   910 F. Supp. 2d 718 (D. Del. 2012)......................................................10, 19, 20

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
   No. 15-2192, 2015 WL 13064914 (D.N.J. Dec. 30, 2015) ................................11

*Telebrands Corp. v. Mopnado*,
   No. 14-7969, 2016 WL 368166 (D.N.J. Jan. 12, 2016), *R. & R.*
   *adopted*, No. 14-7969, 2016 WL 355072 (D.N.J. Jan. 28, 2016) ..........11, 16, 25

*Tessera, Inc. v. Sony Elecs. Inc.*,
   No. 10-838 RMB KW, 2012 WL 1107706 (D. Del. Mar. 30, 2012)
   (Bumb, J., by designation)..............................................................16, 18, 20, 25

*Teva Pharms. USA, Inc. v. Sandoz Inc.*,
   No. 17-275(FLW), 2017 WL 2269979 (D.N.J. May 23, 2017) ....................9, 24

**Rules**

Fed. R. Civ. P. 45 ....................................................................................................20

## I.     INTRODUCTION

In an effort to transfer this action to a different District in which none of the parties is headquartered and thereby significantly delay this case while taking it away from a Court with deep experience with numerous important subjects (including patents) at issue in the case, Defendant GAF insists that "the ***only*** connection between this Vicinage and the issues in this suit is the fact that the Xactware Action … was filed here."  Mot. at 24 (emphasis added).  That claim is obviously incorrect.  EagleView brought this matter in the home district of Defendant GAF, where it operates its 40-acre "global headquarters" and from where its senior employees in charge of QuickMeasure (the Accused Product) orchestrate GAF's infringement of EagleView's patents to undercut EagleView's sales.  Specifically, GAF's Director of Marketing for QuickMeasure—Vishal Laddha—is admittedly located in this District.  Mr. Laddha and his Parsippany-based team direct GAF's nationwide sales and marketing of infringing roof reports from this District, including by demonstrating the accused software to customers and touting that GAF's infringing reports include "everything you would expect from [] EagleView," "managing and overseeing" GAF's relationships with third party software developers who GAF seeks to "add certain capabilities" to "GAF's Technology," and negotiating with EagleView's customers to convince them to buy GAF's infringing products.  These operative facts all occur here in GAF's home district and this case should be litigated

here.

Indeed, as GAF passingly acknowledges (Mot. at 1), GAF has touted its strong New Jersey roots when seeking transfer of other cases *to* New Jersey, emphasizing that its connection to New Jersey dates back to 1886 and that it employs nearly 700 people at its New Jersey headquarters.  Ex. A, GAF's Brief in Support of Motion To Stay and Transfer To The District of New Jersey, *Kirsch Research and Development, LLC v. GAF Corp.*, Case No. 3:20-cv-01028 (N.D. Tex. Jun. 24, 2020), Dkt. 33 at 3-4.  But in this case, for strategic reasons that are omitted from its Motion, GAF asks the Court to ignore this District's significant connections not only to GAF but specifically to the factual bases for this case, and transfer it to Utah, where GAF has no employees involved with the Accused Product, no facility related to the Accused Product, and where Plaintiffs have not identified any relevant documents, witnesses, or facilities.  And although it purports to, GAF does not actually identify even a single witness who is actually located in Utah—let alone a Utah-based witness who is "unavailable" or "unwilling" to testify in New Jersey, a critical requirement in this District for determining witness availability.

GAF also supposes—while simultaneously disclaiming actual knowledge, *see* Mot. at 16 n.7 ("GAF cannot know for absolute certain the precise nature of a third-party's activities…")—that another company, Nearmap, may have relevant documents related to aspects of the Accused Product, QuickMeasure; but critically,

GAF also acknowledges that it is equally possible that an entirely different company, Minnesota-headquartered Pushpin, has those documents, instead (Laddha Decl. ¶¶ 8-12). Indeed, all GAF can say with certainty is that Nearmap supplies aerial imagery (*id.* ¶ 7), but is careful not to say that it actually developed the software, leaving more likely that GAF's technology was actually developed by Pushpin. Although EagleView has filed suit against Nearmap in Utah on entirely different products, GAF is not a party to that case and QuickMeasure (the Accused Product here) is not at issue in Utah. Likewise, Nearmap is not a party to this case, and its products at issue in the Utah case (MapBrowser and Nearmap on OpenSolar) are not at issue here. As GAF concedes, in cases with "different defendants" and "different accused products," "any efficiencies…are likely to be limited." Mot. at 2.

Although six patents asserted in this case are also asserted against Nearmap in Utah, three others are not. And those three patents, the '436, '840, and '376 patents, were all litigated to trial in the *Xactware* litigation. Thus, not only is this Court already familiar with many of the Asserted Patents and the technology (unlike the Utah court, where the Nearmap case has only recently begun), but transferring those patents to Utah risks inconsistency with this Court's prior determinations on claim construction and validity, at a minimum.

As explained below, the factors to be considered weigh decisively against transfer, and GAF cannot meet the heavy burden needed to transfer this case away

from its home court to a venue where GAF has not actually identified any relevant witnesses or documents.  GAF's motion should be denied.

## II.   LEGAL STANDARD

"[M]otions to transfer are not 'liberally granted.'"  *Indivior Inc. v. Dr. Reddy's Lab'ys S.A.*, No. 17-07111, 2018 WL 4921541, at *5 (D.N.J. July 12, 2018), *R. & R. adopted*, 2018 WL 4089031 (D.N.J. Aug. 27, 2018) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).  "The Third Circuit has … establish[ed] a list of public and private interest factors that a court must analyze in determining whether a transfer would be appropriate. . . . The balancing of these interest factors is discretionary."  *Id.*  "[U]nless the balance ... is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail."  *Id.* (emphasis removed).  "The burden of establishing the need for transfer … rests with the movant."  *PharmaNet, Inc. v. DataSci Liab. Co.*, No. 08-2965, 2009 WL 396180, at *15 (D.N.J. Feb. 17, 2009) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).

## III.   ARGUMENT

GAF cannot meet its burden of establishing the need for transfer away from its home court.  GAF is headquartered in this District.  The GAF employees charged with developing, marketing, and selling QuickMeasure, the Accused Product, are in this District.  GAF devised its strategy to use that Accused Product to take EagleView's market share and customers from within this District.  GAF, however,

wants to litigate in Utah. GAF has no facility in Utah relevant to QuickMeasure. GAF has no employees in Utah related to QuickMeasure. In fact, GAF does not identify a single witness, GAF employee or not, who is actually located in Utah despite its allegations. And Plaintiffs likewise have not identified any relevant documents, witnesses, or facilities in Utah.

Indeed, the only connection GAF has to Utah that may be relevant here is its relationship with Nearmap. But even if GAF's "understanding" about Nearmap's role with respect to QuickMeasure is correct—an understanding that GAF does not support with any evidence or certainty regarding Nearmap's actual role—GAF still does not identify any documents or witnesses that are actually in Utah, despite its representations. As GAF acknowledges, another company called Pushpin may be in possession of those documents, and Pushpin is in Minnesota, with no apparent connection to Utah. GAF is thus left to argue that the litigation that EagleView filed against Nearmap, to which GAF is not a party and in which QuickMeasure is not accused, requires transfer. But as GAF itself acknowledges, where there are different defendants and different accused products, any potential efficiency is likely to be limited at best. Mot. at 2. That is particularly the case here, where this Court has substantial familiarity with EagleView's technology, and has presided over a trial of three of the Asserted Patents, none of which are at issue in the Nearmap case. Accordingly, even assuming venue were proper in Utah, which EagleView does not

dispute based on GAF's representation that they sold QuickMeasure there, the *Jumara* factors weigh strongly in favor of keeping this case in this District, where EagleView chose to file suit, and GAF's motion should be denied.

### A. The Private Interest Factors Favor Adjudicating This Case in the District of New Jersey

1. <u>EagleView's preference to litigate where GAF is headquartered outweighs GAF's desire to litigate where it has a tangential presence and EagleView has no material presence (factors 1 and 2)</u>

In this Circuit, "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request[.]" *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Although New Jersey may not be EagleView's "home turf," EagleView undisputedly has "a legitimate and rational basis for suing [GAF] in [New Jersey]." *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 754 (D. Del. 2012); *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) ("Because plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), we have termed their selection the 'plaintiff's venue privilege.'").

GAF has been based in New Jersey "for decades," and New Jersey is home to its 40-acre "global headquarters" campus in Parsippany.[1] From this campus, GAF

---

[1] Dkt. 11-2, Ex. 14 (describing GAF's "global headquarters"); Ex. A, GAF's Brief

directs not only its sales throughout all of New Jersey,[2] but controls its nationwide efforts to develop, market, and sell its infringing products. That effort includes GAF's New Jersey-based Director of Marketing for the Accused Product, Mr. Vishal Laddha, whose job responsibilities include "managing and overseeing GAF's relationships" with vendors "who designed, developed, and/or utilize" the "software that is referenced in the Complaint." Laddha Decl. ¶ 6. Mr. Laddha is also responsible for sales and marketing roles of the Accused Product, such as providing demonstrations of infringing functionality (as alleged in First Am. Complaint (hereinafter, "FAC") ¶ 162) and working directly with customers to poach them from EagleView.[3] Accordingly, EagleView's decision to bring this case in GAF's home forum, where GAF conducts marketing and sales of infringing products designed to take business from EagleView, weighs against transfer. *Indivior Inc. v. Dr. Reddy's Lab'ys S.A.*, No. 17-7106, 2018 WL 4089031, at *3, *7 (D.N.J. Aug. 27, 2018) ("a foreign plaintiff should be given deference when it elects to bring a case in

---

in Support of Motion To Stay and Transfer To The District of New Jersey, *Kirsch Research and Development, LLC v. GAF Corp.*, Case No. 3:20-cv-01028 (N.D. Tex. Jun. 24, 2020), Dkt. 33 at 3-4.

[2] *See* Ex. B, https://eave.us/coverage (GAF website showing GAF coverage throughout New Jersey).

[3] Ex. C, https://www.metalarchitecture.com/daily-news/myabcsupply-and-gaf-quickmeasure-come-together-to-help-contractors (Laddha: "We're thrilled to partner with ABC Supply to provide an integrated solution where contractors can access everything they need for a roofing job at their fingertips, including a QuickMeasure roof report.").

defendant's home forum"); *Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 479-80 (D. Del. 2011) (plaintiff's forum choice entitled to "substantial, indeed 'paramount,' weight" where defendants "have all chosen to avail themselves of the rights, benefits, and obligations that [plaintiff's forum choice] affords" and "each of the Defendants have sold or offered for sale their accused products and services in" the forum).

Attempting to avoid this straightforward conclusion, GAF argues that its choice of forum trumps EagleView's because "the 'center of gravity' for this case lies outside the District of New Jersey." Mot. at 11, 14. The only physical location GAF identifies in Utah is a manufacturing facility that (i) has no connection to the Accused Product, and (ii) is owned by a GAF-related entity (BMCA Cedar City LLC) with the same New Jersey address as GAF's headquarters. Ex. D (https://eagleweb.ironcounty.net/eaglesoftware/taxweb/account.jsp?accountNum=0 359015). In any event, "center of gravity," is a separate factor, and, as explained in Section III.A.2 below, GAF's attempt to construct some material connection between this case and Utah falls woefully short.

GAF next points to the separate litigation that EagleView filed against Nearmap in the District of Utah as a reason it wishes to litigate there instead of its home state. Mot. at 14. No efficiencies would result from transferring this case to Utah, and instead, transfer would create a potential for inconsistent rulings. *First*,

the Nearmap case involves different accused products and a different defendant. *See* Ex. E (accusing Nearmap's MapBrowser and Nearmap on OpenSolar). *Second*, there is not a complete identity of patents between the two cases. While six of the Asserted Patents in this case are also asserted against Nearmap, three are asserted only against GAF and another two are asserted only against Nearmap. Moreover, EagleView is only asserting the '436, '840, and '376 patents against GAF (not in the Utah case), and this Court has significant experience with those patents, which were tried to the jury in the *Xactware* litigation. *Third*, contrary to GAF's contention, the very early stage of the Utah case weighs *against* transfer, as the Utah court has not progressed beyond a pending motion to dismiss (which has not been ruled on), whereas this Court has substantial experience with the underlying technology and patents from the *Xactware* litigation. *See Indivior*, 2018 WL 4089031, at *3 (currently presiding judge's experience more relevant than transferee's).

Teva and *Intendis* do not suggest a different result. In *Teva*, while one defendant (Sandoz) was headquartered in New Jersey, Sandoz's Colorado facility had actually submitted the ANDA for the infringing product, and the other defendant (Momenta) had filed a declaratory judgment claim on the same patent and products in Delaware, the transferee forum. *Teva Pharms. USA, Inc. v. Sandoz Inc.*, No. 17-275(FLW), 2017 WL 2269979, at *10 (D.N.J. May 23, 2017). By contrast, while GAF identifies a facility in Utah, it does not allege that facility has any relevance to

9

this case.  GAF also has not filed a declaratory judgment claim on any asserted patent, and different products and patents are at issue in the Nearmap litigation.[4] And in *Intendis*, the plaintiff had filed "an identical action" in the transferee district, which is not the case here.  *Intendis, Inc. v. River's Edge Pharms., LLC*, No. 11-2838 FSH PS, 2011 WL 5513195, at *3 (D.N.J. Nov. 10, 2011).  Simply put, EagleView "filed suit in [New Jersey] for legitimate reasons," and so that necessarily weighs against transfer under the law.  *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012).

> ### 2. EagleView's claim arose in New Jersey, and GAF identifies no relevant connection to Utah (factor 3)

In patent cases, the claim "arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority."  *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 730 (D. Del. 2012).  To identify the locus of facts relevant to infringement, courts apply a "sales approach," i.e., where sales occur, or a "center of gravity" approach, focused on where "engineering, development, product design, marketing, and sales

---

[4] *ML Design* and *Internal Combustion* are similarly irrelevant, as the defendants in those cases did not have any offices in New Jersey.  *ML Design Grp., LLC v. Young Mfg. Co.,* No. 12-5883, 2013 WL 3049174, at *3 (D.N.J. June 17, 2013) (neither party resided in the district); *Internal Combustion Sols., LLC v. Yoshimura Rsch & Dev. Of Am. Inc.,* No. 13-02793 (RMB/AMD), 2014 WL 1391178, at *1 (D.N.J. Apr. 9, 2014) (defendant had no location in the district and sold products through infringer).

activities" occur. *Synchronoss Techs., Inc. v. Dropbox, Inc.*, No. 15-2192, 2015 WL 13064914, at *1 (D.N.J. Dec. 30, 2015); *Master Cutlery, Inc. v. Panther Trading Co.*, No. 12-4493, 2012 WL 6597056, at *3 (D.N.J. Dec. 17, 2012). Under either test, this factor weighs against transfer.

GAF does not and cannot deny selling its Accused Products in this District and in fact, directs *all* of its worldwide sales of infringing products from its headquarters in this District. Laddha Decl. ¶¶ 2, 11. Thus, under the sales approach, EagleView's claim arose in this district. *Telebrands Corp. v. Mopnado*, No. 14-7969, 2016 WL 368166, at *11 (D.N.J. Jan. 12, 2016), *R. & R. adopted*, No. 14-7969, 2016 WL 355072 (D.N.J. Jan. 28, 2016) ("Defendant's argument ignores the fact that, while the products at issue may have originated elsewhere, each was sold and shipped to consumers within New Jersey.").

The "center of gravity" of EagleView's infringement claims is also squarely in this District. GAF has undisputedly sold QuickMeasure throughout the United States, including in this District, and GAF's sales and marketing employees knowledgeable about QuickMeasure are located here. Laddha Decl. ¶ 11. Indeed, GAF's Director of Sales and Marketing Mr. Laddha's entire team of "GAF employees [with] knowledge of … marketing efforts, etc. … of QuickMeasure" are "based in northern New Jersey." Laddha Decl. ¶ 11. GAF also does not deny that servers, files, and database related to GAF's infringing sales and marketing are

located in this District, instead only stating that no *third-party* materials are present. *Id.* ¶¶ 11, 19.   In addition, GAF's New Jersey-based marketing and sales efforts directly target EagleView with GAF's infringing products.  GAF touts QuickMeasure as offering "everything you would expect from [] EagleView," and leverages that position to take customers directly from EagleView.[5]  These facts compel the conclusion that the center of gravity of this case is in New Jersey. *Refined Recommendation Corp. v. Netflix, Inc.*, No. 07-04981, 2008 WL 474106, at *1 (D.N.J. Feb. 15, 2008) (finding center of gravity where the "servers, processors, databases and other resources used in the operation of the service" and "Defendant's employees responsible for sales and marketing decisions related to its services" were located).

Despite these facts, however, GAF insists that "the **only** connection between

---

[5]  *See JobProgress & GAF QuickMeasure now live!*, JOBPROGRESS WEBINARS, https://www.bigmarker.com/jobprogress/JobProgress-QuickMeasure-now-live?bmid=7162652c195a at 3:01-07 (New Jersey-based Laddha, participating in a webinar to advertise QuickMeasure: "What we provide you is . . . ***everything that you would expect from [] EagleView***") (video available upon request); *NAVIG8 2020 - From Truth to Roof - An Industry Transforms*, NEARMAP, https://www.nearmap.com/us/en/navig8-2020?utm_source=Social%20Media&utm_medium=LinkedIn&utm_term=organic&utm_campaign=21q1-navig8-2020&utm_content=&sfc=7012x000000ozYaAAI ("NAVIG8 Video") at 4:31-42 ("Going forward, … ***our plan for GAF QuickMeasure***, the sky's the limit. … ***We're going to be expanding our user base. We're going to be bolstering reports with additional attributes and data sets***. And there's a lot more to come.") (video labeled, "ENABLING ROOFERS WITH QUICKMEASURE" under subheading, "GLOBAL TRENDS IN ROOFING & SOLAR") (video available upon request).

this Vicinage and the issues in this suit is the fact that the Xactware Action … was filed here" (Mot. at 24), contending that the center of gravity is elsewhere.  In doing so, GAF does not rely on its own connections to Utah, because it has none that are relevant to this case, nor EagleView's (again, which has none).  Instead, GAF attempts to distance itself from its home state by claiming it is not involved in the operation of QuickMeasure, and that the "'central facts' of this lawsuit *have a direct connection* to Utah."  Mot. at 14 (emphasis added).  A careful review of the facts reveals that neither of these assertions is correct.

In an effort to obtain transfer, GAF attempts to disclaim all responsibility for the "research, development, testing, and operation of QuickMeasure software and … the production of QuickMeasure reports."  Mot. at 15.  Despite this attempt to disclaim its involvement and responsibility, New Jersey-based Mr. Laddha admits that the Nearmap-Pushpin partnership has undertaken efforts to "add certain capabilities to the GAF technology" according to "GAF's desire."  Laddha Decl. ¶¶ 6, 8; *see also* NAVIG8 Video at 4:31-42 (Mr. Laddha announcing that GAF's "plan for GAF QuickMeasure" is to "expand[] our user base" and "bolster[] reports with additional attributes and data sets.").  Thus, it is no surprise that Mr. Laddha and GAF represent that QuickMeasure is "GAF technology."  Laddha Decl. ¶ 8.  GAF also directly provides QuickMeasure Reports to customers through its website.[6]

---

[6] GAF asserts that none of the claims are "directed to a report itself," Mot. at 4-5,

QuickMeasure Reports are labeled with GAF's logo, and come subject to GAF's, not Nearmap's or anyone else's, license and terms.  Dkt. 11-2, Ex. 15; *see* Ex. F (https://www.gaf.com/en-us/document-library/documents/documents/legaldocumentsdocuments/GAF_QuickMeasure_Ro of_Report_Terms_and_Conditions.pdf)).

Even the underlying software relevant to patent claims asserted by EagleView in this case appears to run directly on GAF's website.  For example, the '880 Patent's claim that GAF excerpts in its motion is infringed by, in part, enabling customers to move a "visual marker … to a final location" and to use a "computer input capable of signaling user-acceptance."  Dkt. 11-1, Ex. 4 ('880 Pat.) at Cl. 1.  This is done, as the specification explains, in a way that "more precisely identifies the location of the building roof structure [] to be measured," (*id.* 10:9-12) thereby allowing the user to ensure that the software subsequently "measure[s] the correct roof structure as opposed to, for example, measuring the nearby roof structure due to mistake/miscommunication" (*id.* at 10:25-29).  GAF offers this functionality directly on its website, including at "quickmeasure.**GAF.**com," running code from GAF's

---

but this is incorrect.  Multiple claims expressly involve "generat[ing]" and "transmit[ting]" a roof report (*see, e.g.*, Dkt. 11-2, Ex. 1 ('436 Patent) at Cl. 1; Dkt. 11-2, Ex. 7 ('568 Patent) at Cl. 1) and "generat[ing]" and "output[ting]" a roof report (*see, e.g.*, Dkt. 11-1, Ex. 5 ('961 Patent) at Cl. 1; *id.*, Ex. 6 ('376 Patent) at Cl. 1; Dkt. 11-2, Ex. 8 ('960 Patent) at Cl. 1; *id.*, Ex. 9 ('149 Patent) at Cl. 1).

servers and in GAF's possession.   Dkt. 11-2, Ex. 17; FAC ¶¶ 114-19; Ex. G (screenshot of GAF code from https://quickmeasure.gaf.com/guest-home-page).

GAF also attempts to suggest a connection to Utah by identifying witnesses and QuickMeasure development work and documents that according to GAF are in Utah.   But in fact, none of the seven witnesses GAF contends have relevant information are based in Utah.   John Ford, GAF's "principal point of contact at Nearmap" for the Accused GAF Products, is based in Montana.   Laddha Decl. ¶ 15. Nearmap's CEO, CTO, and Product Manager are all admittedly located in "the Sydney area of Australia," along with a Nearmap analytics employee, Mary Cudmore.   Laddha Decl. ¶ 15.   And although GAF claims that two Nearmap witnesses are located in Utah—Amanda Marchetti and Tony Agresta—those individuals publicly state on their current LinkedIn pages they are located in Denver, Colorado and Seattle, Washington, respectively, and do not identify having ever worked in or out of Utah.   *Id.*; Ex. H (https://www.linkedin.com/in/amanda-marchetti-b4886121/); Ex. I (https://www.linkedin.com/in/tonyagresta/).

GAF's speculative suggestion that QuickMeasure was designed and the related documents may be in Utah fares no better, as GAF admits it does not actually know where the design occurred or the documents are located.  Mot. at 16 n.7 ("GAF cannot know for absolute certain…").   While GAF offers its "understanding that Utah-based Nearmap is involved in the design, development, and testing of the

QuickMeasure Software," Mot. at 14, it tellingly never says that any of these activities or related documents are in Utah. Instead, GAF settles for referring to Nearmap—an Australian company with its headquarters in Sydney (Ex. J)—as "Utah-based," hoping the Court will ignore the lack of any evidence that the documents and development work are actually "in Utah." Moreover, and critically, GAF freely admits that supposedly relevant design work, documents, and source code may alternatively be in the possession of an entirely different company, Pushpin, which is based in Minnesota and has no connection to Utah. Laddha Decl. ¶ 10 ("To the extent that any such documents exist, they are in the possession of Pushpin and/or Nearmap."). Indeed, it is more likely that Pushpin prepares the GAF software, based on their own website's description of their software, rather than Nearmap, since the only concrete thing GAF asserts about Nearmap is that Nearmap provides the underlying aerial imagery. *Id.* ¶ 7. GAF's guesswork does not come close to meeting its heavy burden on transfer. *See Telebrands*, 2016 WL 368166, at *11 ("vague, unsupported speculation" insufficient to meet movant's burden); *Tessera, Inc. v. Sony Elecs. Inc.*, No. 10-838 RMB KW, 2012 WL 1107706, at *8 (D. Del. Mar. 30, 2012) (Bumb, J., by designation) (holding that a movant failed to "establish that [a] factor supports transfer" where relevant factual disputes existed and the movant did "not provide[] [the] Court with sufficient information to resolve these disputes…").

16

Finally, as the above makes clear, the cases GAF relies on where the defendant, along with all of the development work for the accused products, were located in the transferee district, are therefore entirely inapplicable. *Refined Recommendation*, 2008 WL 474106 at *4 ("*[a]ll of Defendant's* servers, processors, databases *and employees with responsibility for sales and marketing decisions* are located in [transferee forum]."); *Eon-Net, L.P. v. Drugstore.com, Inc.*, No. 05-845 (JCL), 2005 WL 8175900, at *2-3 (D.N.J. Dec. 20, 2005) (defendant headquartered, relevant witnesses located, and development work performed in transferee district). Accordingly, the "operative facts" of this case, under any analysis, are present in the District, along with GAF's own substantial headquarters and senior executive (and team) in charge of the accused products.

3. <u>The convenience of the parties, with respect to physical and financial condition, favors litigating in New Jersey (factor 4)</u>

It is more convenient for both parties to litigate in New Jersey. The *Xactware* litigation, which includes three of the same patents at issue here and similar technology, demonstrates EagleView's willingness and ability to litigate in New Jersey when an infringer is headquartered here (like Verisk and GAF).[7]   GAF

---

[7] GAF repeatedly contends that EagleView's "actual home state" is Washington, relying on EagleView's complaint from six years ago in the *Xactware* litigation. Mot. at 3, 11. This is incorrect. As EagleView pled in the much more recent Complaint in this matter, EagleView's principal place of business is in Rochester, NY. FAC ¶ 4. Suffice it to say that this District is much closer (approx. 250 miles) to EagleView's current principal place of business than the District of Utah (approx.

generates "$3B + in annual revenue" and is headquartered in this District (Ex. K, https://www.gaf.com/en-us/about-us).  Moreover, GAF's main executive in charge of marketing of the Accused Product, Vishal Laddha, is based here in the District. Mr. Laddha is also "responsible for managing and overseeing GAF's relationships" regarding the Accused Products and undoubtedly will be a witness in this matter. Laddha Decl. ¶ 6.  Likewise, Mr. Laddha admits that "GAF employees" with knowledge of "marketing efforts, commercial relationships, and website design" are likewise present in the District.  Laddha Decl. ¶ 11.  Thus, contrary to GAF's claim of "neutrality," this factor weighs decidedly against transfer. *Indivior*, 2018 WL 4921541, at *7 (holding that a defendant "cannot complain that the suit has been 'brought in the district of its domicile'").

### 4. The convenience of the witnesses does not favor transfer because GAF does not actually identify any witnesses in Utah (factor 5)

The "sole relevant consideration for" the convenience of non-party witnesses is whether "any witnesses would be unable or unwilling to travel to [this District]." *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 394 (D.N.J. 2016).  Although GAF bears the "burden to show both the unavailability of a particular witness and that witness' importance to [its] case," GAF does not identify a single witness who meets this criteria.  *Tessera*, 2012 WL 1107706, at *6.  While GAF lists seven

------

1750 miles).

18

witnesses who it claims are beyond this Court's trial subpoena power, it does not assert or offer proof that any are actually unable or unwilling to travel to this District for a trial. *Ostella v. IRBSearch, LLC*, No. 12-7002, 2014 WL 3843880, at *8 (E.D. Pa. Aug. 5, 2014) ("the unavailability of subpoena power does not, by itself, establish the unavailability of non-party witness given that ***non-party witnesses may be voluntarily willing to testify*.*"); *Smart Audio*, 910 F. Supp. 2d at 732 ("this factor is only given weight when there is some reason to believe that a witness actually will refuse to testify absent a subpoena.").

Moreover, contrary to GAF's speculation, the relevant facts suggest that these seven witnesses are not even subject to the trial subpoena power of the Utah court. GAF admits that five of these "critical" witnesses are ***not*** in Utah; and even for the two who GAF claims might be in Utah, those witnesses' own public statements indicate that they are not. *See* Section III.A.2., *supra*.[8] And these witnesses' presence elsewhere outside of Utah is of no hindrance here, as they can be

---

[8] Therefore, unlike in *COA Network* and *Lifecell*, where witnesses were actually located in the transferee court, GAF has failed to actually identify any witnesses present in Utah. Mot. at 18; *COA Network, Inc. v. J2 Global Commcn's, Inc.*, No. 09-6505, 2010 WL 2539692, at *4 (D.N.J. June 17, 2010) (at least three witnesses actually identified in transferee court); *see also LifeCell Corp. v. Lifenet Health*, No. 15-6701 (CCC), 2016 WL 544489, at *3, *5 (D.N.J. Feb. 9, 2016), *aff'd*, 2016 WL 3545752 (D.N.J. June 28, 2016) (identifying two inventors residing in the transferee district who had both demonstrated an unwillingness to voluntarily testify in related cases).

subpoenaed for deposition and have their testimony either played at trial or can testify voluntarily. *See* Fed. R. Civ. P. 45. The same is true for EagleView's witnesses. Accordingly, this factor weighs against transfer. *Smart Audio*, 910 F. Supp. 2d at 732.

5. <u>GAF's books and records are in this District (factor 6)</u>

GAF does not deny that it maintains relevant documents in this District, nor can it given that it admits its relevant employees are based in the District. Laddha Decl. ¶ 11 (QuickMeasure marketing employees at GAF in New Jersey). While GAF speculates that other, relevant documents exist outside of this District, it does not actually point to any such documents in Utah, acknowledging it is unsure. Mot. at 16 n.7. Even if some relevant documents existed in Utah, the location of books and records factor "is only material 'to the extent that the files could not be produced in the alternative forum.'" *Tessera*, 2012 WL 1107706, at *8 (recognizing that "recent technological advances … enable the documents at issue in the litigation to be readily produced in even a distant forum"). As GAF itself acknowledges, it "is certainly possible" that the documents it thinks may be in Utah (or somewhere else) could be produced here, pursuant to a subpoena. Mot. at 19-20. Accordingly, this factor weighs against transfer. *GSK v. Merix Pharm. Corp.*, No. 05-898, 2005 WL 1116318, at *8 (D.N.J. May 10, 2005) (internal citation omitted) ("When documents can be transported and/or easily photocopied, their location is entitled to little

20

weight.  In the day of the internet and electronic transmission of documents, location of documents assumes even less significance.").

## B.  The Public Interest Factors Favor Adjudicating This Case in the District of New Jersey

### 1.  Enforcing a judgment against a New Jersey corporation is easier in New Jersey (factor 1)

This factor weighs against transfer because EagleView can more easily enforce a judgement in New Jersey, GAF's home state. *Indivior*, 2018 WL 4921541, at *7 ("The enforceability of judgment factor also weighs against transfer as it may be easier to enforce a judgment in the Defendants' home state.").  Despite being headquartered here, GAF argues that enforcing the judgment in Utah would somehow be easier because GAF's "understanding is that … at least some of the [development, testing, research, and production has] been conducted … in the District of Utah[.]"  Mot. at 20.  But as explained in Section III.A.2, *supra*, GAF does not actually assert that any of these activities were or are actually performed in Utah, as opposed to other states (and country) where the entities and individuals it identifies are located.  GAF's guesswork about what occurs where makes its reliance on *Internal Combustion* inapposite.  *Internal Combustion*, 2014 WL 1391178, at *5 (infringer's products actually developed, tested, researched, and produced in transferee forum, where infringer was also headquartered).  Simply put, the easiest place to enforce a judgment against GAF is unsurprisingly where GAF is globally

21

headquartered: New Jersey.  *Indivior*, 2018 WL 4921541, at *7.

> 2.   Practical considerations that could make the trial easy, expeditious, or inexpensive favor this District, not Utah (factor 2)

This Court has had significant involvement with five of the Asserted Patents and with the underlying technology of all Asserted Patents.  In particular, this Court has already considered whether numerous of the Asserted Patents are directed to eligible subject matter (including five on a motion to dismiss (Ex. L (Dkt. No. 104 in the *Xactware* litigation)), three on summary judgment (Ex. M (Dkt. No. 557)), and three at trial and post-trial), evaluated claim construction issues on four of the Asserted Patents (Ex. N (Dkt. No. 332)), and handled countless factual and discovery disputes regarding EagleView's embodying technology, objective indicia of non-obviousness, and countless other issues relating to the overall subject matter of the Asserted Patents.  This strongly weighs against transfer.  *See Indivior*, 2018 WL 4089031 at *3.

GAF's argument to the contrary is premised on the existence of the Nearmap case.  Although there are some circumstances where "the pendency of a related or similar case … is a powerful reason to grant a motion for change of venue," this is not such a case.  *Canon Fin. Servs., Inc. v. JL Barrett Corp.,* No. 10-4117, 2010 WL 4746242, at *3 (D.N.J. Nov. 16, 2010).  While GAF claims that Nearmap is "directly involved in the infringement allegations" here, Mot. at 23, the products accused of

infringing in the Nearmap litigation are not accused here and QuickMeasure is not accused of infringing in the Nearmap litigation. *Supra* at Section III.A.1. Indeed, as GAF acknowledges that this case necessarily involves "software," it appears that Minnesota-based Pushpin more likely provides the software and Nearmap only provides the aerial imagery (Laddha Decl. ¶¶ 7-12), and still, even then with no apparent connection to Utah. Even GAF recognizes that "different defendants and accused products" limit any possible efficiencies. Mot. at 2 (arguing *Xactware* litigation was not relevant to whether case should remain in New Jersey).

In addition, there is not close to a complete identity of the patents asserted in this case and in Nearmap—and critically, the three patents here that were subject to the *Xactware* verdict are *not* asserted against Nearmap. *Supra* at Section III.A.1. GAF not only recognizes that efficiencies are limited where there is not identity of patents, it freely disregards those purported efficiencies when it wants to transfer a case *to* New Jersey.[9] *See* Mot. at 2 (arguing *Xactware* litigation was not relevant because "only three of the patents asserted during the Xactware trial are asserted here."); Ex. A, *Kirsch Research and Development, LLC v. GAF Corp.*, Case No.

---

[9] GAF points out that the '880 Patent is from a different family than the others, but this patent relates to similar concepts, including the use of "aerial image[s]," use of a "visual marker," "generating…outline drawings around outlines corresponding to roof planes based on tracing from said imagery," and "providing a printed report that includes an aerial image of the building roof structure." Dkt. 11-2, Ex. 4 ('880 Patent) at Cls. 1, 7, 9.

3:20-cv-01028, Dkt. 33 at 33 (arguing for transfer to New Jersey despite four other lawsuits on identical patents in transferor venue). The Nearmap litigation is also at its early stages, meaning that Court is not yet familiar with the patents and technology, in contrast with the significant experience that this Court has with EagleView's patents and the technology. In these circumstances, the existence of another litigation does not favor transfer, and GAF cites no case to the contrary.[10] *See Indivior*, 2018 WL 4089031 at *3 (currently presiding judge's experience more relevant than transferee's).

GAF also claims that transfer to Utah would "eliminate the possibility of inconsistent results" (Mot. at 21), but the opposite is true: transfer would *increase* the possibility of inconsistent results. The *Nearmap* case in Utah does not involve any of the three overlapping patents this Court considered at trial. Absent a transfer, there is limited risk that the two cases will invite a direct conflict with this Court's

---

[10] *Teva*, 2017 WL 2269979, at *10 (defendant filed a declaratory judgment on the same patent and same product in transferee venue); *Canon*, 2010 WL 4746242, at *3 (defendants had pending lawsuit against plaintiff in transferee venue); *COA Network*, 2010 WL 2539692, at *5 (five related cases in transferee venue were nearing *Markman*, which would construe all four asserted patents); *Medidata Sols., Inc. v. DATATRAK Int'l, Inc.*, No. CIV. 12-4748 WJM, 2013 WL 1989854, at *6 (D.N.J. May 13, 2013) (earlier filed patent litigation between same parties in transferee venue); *Avaya, Inc. v. Mitel Networks Corp.*, 460 F. Supp. 2d 690, 691 (E.D. Va. 2006) (identical parties and patents asserted in two venues); *Reckitt Benckiser Pharms., Inc. v. Biodelivery Scis. Int'l, Inc.*, No. 14-5892, 2015 WL 4461511, at *6 (D.N.J. July 21, 2015) (involved "the same product at issue in this case, involves nearly the same parties," and nearly the same patents).

trial or post-trial rulings in the *Xactware* litigation.  If, however, this case is transferred to Utah, that Court would reevaluate challenges to the '436, '840, and '376 Patents that could create a split between rulings on those patents and "actually promote inefficiency, create the danger of inconsistent outcomes, and run counter to the public interest." *Telebrands*, 2016 WL 368166, at *12; *see also Tessera*, 2012 WL 1107706, at *8, n.8 ("significant efficiencies to be gained" in forum that "has already construed the same claims on related patents").  Accordingly, this factor weighs against transfer.

### 3.   Local interests favor adjudicating a dispute against a New Jersey company in New Jersey (factor 4)

GAF claims the "local interest" factor favors Utah because "the only connection between this Vicinage and the issues in this suit" is the *Xactware* litigation.  Mot. at 24.  But as repeatedly explained, this broad claim is obviously incorrect: GAF has ***admitted*** to committing acts of infringement—including marketing, advertising, and sales of the Accused Product—in this District, where its Director of Marketing and additional GAF employees with knowledge about the same are admittedly located.  Laddha Decl. ¶¶ 6, 11.  GAF has touted its connections to New Jersey as a whole when seeking to transfer here, emphasizing that "GAF has been based in New Jersey for decades," "traces its corporate roots back to the Standard Paint Company, which was founded in New Jersey in 1886," and has nearly 20% of its workforce in New Jersey.  Ex. A (*Kirsch Research and Development,*

25

*LLC v. GAF Corp.*, Case No. 3:20-cv-01028, Dkt. 33 at 3). Moreover, this Court has a significant interest in adjudicating a case involving a New Jersey company accused of committing acts of infringement in this District. *Master Cutlery, Inc. v. Panther Trading Co.*, No. 12-4493, 2012 WL 6597056, at *5 (D.N.J. Dec. 17, 2012) ("The caseload factor does not outweigh, however, New Jersey's interest in this litigation, as it concerns a business that operates in New Jersey and alleges patent infringement that involve[es] sales in New Jersey.").

> 4. <u>The court's familiarity with the asserted patents weighs against transfer (factor 6)</u>

GAF's assertion that this factor is neutral cannot be squared with its acknowledgment that "this Court has invested substantial resources in a prior patent infringement suit brought by Plaintiffs … during which the Court undoubtedly became familiar with the parties and issues in that proceeding." Mot. at 2. Three of the same patents at issue here have already been litigated in a 12-day trial overseen by this Court, and five of the remaining six Asserted Patents in this case are related to those three already-litigated patents. Although the sixth Asserted Patent (the '880 Patent) is not a member of the already-litigated patent family, it is also infringed by GAF's QuickMeasure product and thus relates to similar technology as the other Asserted Patents. This factor weighs against transfer. *Indivior*, 2018 WL 4089031 at *3.

5.   The remaining factors (factors 3 and 5) are neutral

The remaining factors, public policies of the fora and court congestion, are neutral.  With respect to the public policies factor, "[p]atent infringement lawsuits are matters of national concern that are not 'local controversies,' nor do they implicate the public policies of any one forum." *COA Network*, 2010 WL 2539692, at *5.  To the extent that the Court considers the potential for inconsistent outcomes in this factor, as GAF invites it to do, Mot. 24-25, then this factor weighs against transfer for the reasons explained in Section III.B.2.

With respect to court congestion, the District of New Jersey is undisputedly a busy district, but it is able to more expeditiously bring cases to trial (40.8 months as of March 31, 2020) than the District of Utah (43.9 months to trial as of March 31, 2018 (last reported metric)).[11]  Moreover, while "the District of New Jersey has a virtually unparalleled shortage of judges and a significant caseload," as GAF points out, "[t]hat consideration … does not outweigh the other factors discussed above." *See Coyoy v. United States*, No. CV-202501 KMESK, 2021 WL 1050198 (D.N.J. Mar. 18, 2021) (explaining "court congestion [was not] a particularly persuasive basis to transfer this case"); *see also Samuels v. Medytox Sols., Inc., No.* CIV.A. 13-

---

[11] Ex. O (United States District Courts -- National Judicial Caseload Profile), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2021.pdf.

7212 SDW, 2014 WL 4441943 (D.N.J. Sept. 8, 2014) (court congestion is not "a factor of great importance on a motion to transfer" and "[w]hile this District is indeed busier in terms of overall caseload than is [the transferee court], the difference is not so stark so as to overcome Plaintiff's private interest in litigating this case in New Jersey."). Thus, this factor is neutral.

## IV.    CONCLUSION

Because the *Jumara* factors weigh decisively against transfer, as discussed above, Plaintiffs respectfully request that the Court deny Defendant's motion to transfer.

Dated:  September 30, 2021                Respectfully submitted,

By:   */s/ Liza M. Walsh*
      Liza M. Walsh
      Hector D. Ruiz
      WALSH PIZZI O'REILLY
      FALANGA LLP
      Three Gateway Center
      100 Mulberry Street, 15th Floor
      Newark, New Jersey 07102
      (973) 757-1100
      lwalsh@walsh.law
      hruiz@walsh.law

**OF COUNSEL** (*admitted pro hac vice*):

Adam R. Alper
Brandon H. Brown
Natalie Flechsig
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Michael W. De Vries
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400

Leslie Schmidt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

*Attorneys for Plaintiffs Eagle View Technologies, Inc.*
*and Pictometry International Corp.*