# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**EAGLE VIEW TECHNOLOGIES, INC.**
and **PICTOMETRY INTERNATIONAL CORP.,**

          Plaintiffs,

    v.

**GAF MATERIALS LLC**,

          Defendant.

**Case No. 1:21-cv-10669-RMB-SAK**

---

## DEFENDANT GAF MATERIALS LLC'S
## REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

---

Maureen T. Coghlan
Archer & Greiner, P.C.
One Centennial Square
33 East Euclid Avenue
Haddonfield, NJ 08033

*Attorneys for Defendant GAF Materials LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

TABLE OF ABBREVIATIONS ............................................................................ iii

I.  THE '880 PATENT'S "AUTOMATED RETRIEVAL" CLAIMS ARE INVALID ..........2

    A.  The '880 Claims Fail *Alice* Step 1 ...............................................................2

        1.  The '880 Claims Are Analogous To Invalidated Claims .............................4

        2.  The '880 Claims Fail The "Indicia of Abstractness" Tests ........................5

    B.  The '880 Patent's "Automated Retrieval" Claims Fail *Alice* Step 2 ........................6

II. THE "3D MODELLING" CLAIMS ARE INVALID ........................................................7

    A.  The "3D Modelling" Claims Fail *Alice* Step 1 ................................................7

    B.  The "3D Modelling" Claims Fail *Alice* Step 2 ................................................8

III. THE "OVERLAY AND REGISTER" CLAIMS ARE INVALID ..................................9

    A.  The "Overlay and Register" Claims Fail *Alice* Step 1 ............................................9

    B.  The "Overlay and Register" Claims Fail *Alice* Step 2 .........................................10

IV. "PITCH INDICATION/MODEL MODIFICATION" CLAIMS ARE INVALID...........10

    A.  The "Pitch Indication/Model Modification" Claims Fail *Alice* Step 1 .................10

    B.  The "Pitch/Indication/Model Modification" Claims Fail *Alice* Step 2 .................11

V.  THE "ROOF PITCH CALCULATION" CLAIMS ARE INVALID ...............................11

    A.  The "Roof Pitch Calculation" Claims Fail *Alice* Step 1.........................................11

    B.  The "Roof Pitch Calculation" Claims Fail *Alice* Step 2.........................................12

VI. CONCLUSION....................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018)........................................................................10

*Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016)........................................................................10

*Broadcom Corp. v. Netflix Inc.*,
   No. 3:20-cv-04677, 2021 WL 4170784 (N.D. Cal. Sept. 14, 2021)........................7, 8, 10

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)..........................................................................1

*Linquet Technologies, Inc. v. Tile, Inc.*,
   No. 3:20-cv-05153-JD, 2021 WL 4198521 (N.D. Cal. Sept. 15, 2021) ...........................6

*Procon Analytics, LLC v. Spireon, Inc.*,
   No. 3:19-cv-201, 2021 WL 1269081 (E.D. Tenn. Apr. 6, 2021) ...................................10

*RingCentral, Inc. v. Dialpad, Inc.*,
   372 F. Supp. 3d 988 (N.D. Cal. 2019) .................................................................6

*SynKloud Technologies, LLC v. HP, Inc.*,
   Nos. 19-1360-RGA and 20-0007-RGA, 2021 WL 3568371 (D. Del. Aug. 12,
   2021) ........................................................................................................9

*Yu v. Apple Inc.*,
   1 F.4th 1040 (Fed. Cir. 2021) ................................................................. *passim*

## TABLE OF ABBREVIATIONS[1]

| | |
|---|---|
| "'436 patent" | U.S. Patent No. 8,078,436 |
| "'840 patent" | U.S. Patent No. 8,170,840 |
| "'152 patent" | U.S. Patent No. 8,209,152 |
| "'880 patent" | U.S. Patent No. 8,542,880 |
| "'961 patent" | U.S. Patent No. 8,670,961 |
| "'376 patent" | U.S. Patent No. 9,129,376 |
| "'568 patent" | U.S. Patent No. 9,514,568 |
| "'960 patent" | U.S. Patent No. 10,528,960 |
| "'149 patent" | U.S. Patent No. 10,685,149 |
| "Defendant" or "GAF" | GAF Materials, LLC |
| "EV Appeal Brief" | Appellees' Response Brief, *EagleView Technologies, Inc. v. Xactware Solutions, Inc.*, Nos. 21-1048, 21-1049, 21-1743 (Fed. Cir. filed June 8, 2021) (Dkt. No. 34) |
| "FAC" | First Amended Complaint (Dkt. No. 11) |
| "Patents-in-Suit" | United States Patent Nos. 8,078,436; 8,170,840; 8,209,152; 8,542,880; 8,670,961; 9,129,376; 9,514,568; 10,528,960; and 10,685,149 |
| "Eagleview" | Eagle View Technologies, Inc. |
| "Pictometry" | Pictometry International Corporation |
| "Pl. Br." | Plaintiffs' Opposition to Defendant's Motion to Dismiss (Dkt. No. 47) |
| "Plaintiffs" | Eagle View Technologies, Inc. and Pictometry International Corporation, collectively |
| "Utah Action" | *Eagle View Technologies, Inc. v. Nearmap US, Inc.*, No. 2:21-cv-283-TS-DAO (D. Utah compl. filed May 4, 2021) |
| "*Xactware* Action" | *EagleView Technologies, Inc. v. Xactware Solutions, Inc.*, No. 1:15-cv-07025-RMB-JS (D.N.J. compl. filed Sept. 23, 2015) |
| "*Xactware* Defendants" | Xactware Solutions, Inc. and Verisk Analytics, Inc., collectively |

---

[1]   Unless otherwise noted, all emphases herein have been added.

Plaintiffs' opposition rests primarily on the claim that they "revolutionized the insurance industry with innovative and accurate roof reports."  (Pl. Br. at 6.)  That may be true.  And there may well have been patentable subject matter developed in connection with those commercial products.  But the Patents-in-Suit claim no such subject matter, and are instead directed to the use of computers in a conventional way, using conventional algorithms and conventional user input, to produce conventional data.  Those claims violate Section 101 because:

- **The Closest, Most Recent Decisions Establish That The Claims Are Invalid**. As GAF noted in its opening brief, *Alice* Step 1 requires courts to "compare the claims at issue to those claims already found to be directed to an abstract idea in previous cases."  *Enfish, LLC v. Microsoft Corp.,* 822 F.3d 1327, 1334 (Fed. Cir. 2016).  The claims here are most closely analogous to those recently held to be invalid in *Yu v. Apple Inc.*, 1 F.4th 1040 (Fed. Cir. 2021).  Plaintiffs cite multiple cases in their opposition, but do not compare the claim language in even one of those cases to the particular language at issue here.  Plaintiffs declined to do so presumably because the claims here bear no resemblance to those of the cited cases directed to improved computer functionality or a tangible inventive step.  Indeed, as discussed below, claims that are strikingly similar to those in the Patents-in-Suit have been invalidated even since GAF's motion was filed.

- **The Asserted Claims Are Directed to Five Abstract Ideas.**  Plaintiffs criticize GAF for treating the Patents-in-Suit "at large, as a group."  (Pl. Br. at 2, 23.)  But GAF analyzed the claim language of each Patent-in-Suit, before concluding that separate subsets of those claims are directed to (1) automated image retrieval based on user input ('880 patent); (2) generation of a 3D building model based on multiple images ('436 patent); (3) use of user-based input to overlay and register building images ('152 patent); (4) use of user-based input to modify a 3D building model ('840 and '149 patents); and/or (5) calculation of roof pitch ('376, '961, '568, and '960 patents).[1]  And while Plaintiffs also criticize GAF for not reciting claim language verbatim, the Federal Circuit has never required that every word from a representative claim appear in the proposed distillation of the claimed subject-matter for purposes of *Alice* Step 1.

- **The Federal Circuit Abstract Indicia All Support Dismissal.**  Plaintiffs concede that the Court has never had the opportunity to consider the Federal

---

[1]  Plaintiffs untenably contend that GAF does not challenge the '376 patent.  Not so.  GAF defined "Patents-in-Suit" to include the '376 patent, and used that term 52 times in its opening brief.  While GAF did not reproduce claim 1 of the '376 patent in its opening brief, Plaintiffs contend that the same "core claim requirements [are] present in all the Asserted Patents" for purposes of Section 101.  (*See, e.g.*, Pl. Br. at 1.)

1

Circuit's four indicia of abstractness in light of the most recent caselaw.  For instance, Plaintiffs cite this Court's *Xactware* JMOL decision as proof that the Court has already considered the "pen-and-paper" test—but that citation merely refers to whether certain claims are "a replacement for mental activity," and did not consider, for instance, whether the '880 patent fails the pen-and-paper test under the latest caselaw.  (*See* Pl. Br. at 4 (citing Dkt. 11-2, Ex. 10 at 19, 23).)

- **Plaintiffs' Alleged "Inventive Steps" Restate the Abstract Ideas Themselves**.  Plaintiffs do not dispute that the FAC fails to identify what the alleged inventive step is for each claim of the Patents-in-Suit.  Their opposition brief offers a series of alleged inventive steps:  (i) whatever "specific improvements were lauded by competitors, press, and federal courts"; (ii) "creating accurate, 3D roof models in hours"; "correlation or calibration"; (iii) "interactive user interface control to specify pitch"; (iv) "visual markers to increase accuracy"; and (v) "countless other features."  (Pl. Br. at 5, 36-37.)  But those are not inventive steps under Federal Circuit case law; they are mere restatements of the abstract idea which, in many cases, have no basis in the actual claim language.

- **Plaintiffs' Argument That Unspecified Dependent Claims and Unspecified Claim Construction Issues Prevent Dismissal Should be Rejected.**  Plaintiffs contend that GAF's motion should be denied because it "fails to address even a single dependent claim of any Asserted Patent."  (Pl. Br. at 5.)  That is incorrect as a factual matter; GAF specifically addressed claim 10 of the '152 patent, and noted that the FAC did not explicitly allege that any dependent claim supplied an inventive step.  In any event, Plaintiffs' opposition includes only a handful of references to dependent claims, such as two dependent claims from the '880 patent and two dependent claims from the '436 patent, and does not explain how the multitude of claims that GAF did address—which included claim elements from each Patent-in-Suit—are not representative.  (Pl. Br. at 13, 17.)  Likewise, Plaintiffs' remark that unspecified claim construction issues render GAF's motion "premature" should not prevent dismissal.

## I.    THE '880 PATENT'S "AUTOMATED RETRIEVAL" CLAIMS ARE INVALID

### A.    The '880 Claims Fail *Alice* Step 1

Representative claim 1 of the '880 patent, which is directed to automated image retrieval based on user input, is abstract.  Claim 1 of the '880 patent describes a basic, generic, and conventional process of (i) specifying an address, (ii) receiving a top-down image corresponding to that address, (iii) visually marking the top of a building at that address, and then (iv) automatically retrieving an oblique view corresponding to the marked location.  ('880 patent, col. 13:53-14:8.)  That is the very height of abstraction—a process of using user input to confirm that

2

the correct building has been identified for a desired address, and then presenting a different view of that building.  Indeed, the '880 patent readily acknowledges that these claims are directed to ensuring that "when placing an order, the vendor is measuring the correct roof structure." ('880 patent, col. 10:25-29.)  That concept is unpatentable.

Plaintiffs argue that GAF has mischaracterized the representative claim of the '880 patent, because that claim does not recite the phrase "automated retrieval."  (Pl. Br. at 13.)  While it is true that those two words do not appear in the representative claim, they accurately reflect its subject matter.  For instance, Figures 4A-4D of the '880 patent depict a process familiar to anyone who has ever "dropped a pin" on an online map, as a user merely marks the building for which she wants to order a roof report, and then a computer automatically retrieves another image of that marked building taken from a different angle.  (*See* '880 patent, col. 9:50-11:16.) Moreover, Plaintiffs use the same terminology as GAF, arguing that the '880 patent claims "'**automate** a task previously performed by humans.'"  (Pl. Br. at 15.)

Plaintiffs also contend that GAF has overlooked three allegedly non-abstract elements of the '880 patent claims: (i) use of specific images (i.e., a top-down image and an oblique image); (ii) use of a "visual marker"; and (iii) printing a report.  (Pl. Br. at 14.)  Those elements are all equally abstract.  The "specific" images that Plaintiffs identify are the only two possibilities for how to take an aerial image: either straight down or at an angle.  What Plaintiffs call "specific" is actually just a description of the entire universe of photographic possibilities.  Moreover, the '880 patent teaches that those "specific" images could come from a well-known, pre-existing, conventional database: the "Google® Earth imagery database."  ('880 patent, col. 9:65-10:1.) The '880 patent also underscores that the "visual marker" is just a well-known, generic computer tool used conventionally.  (*See* '880 patent, col. 5:9-12 ("The term 'visual marker' is a shape,

pointer, label, icon, avatar, or other indicator which is movable or displayable on a computer screen and which may be visually differentiated from other objects on the computer screen.").) And while Plaintiffs are correct that certain dependent claims are directed to compiling information into a printed report, that idea is the pinnacle of abstraction, as a "report" is merely defined as "one or more pages or screen shots, or both, made available to a user including aerial imagery and/or data from such imagery." ('880 patent, col. 4:26-29.)

### 1.      The '880 Claims Are Analogous To Invalidated Claims

The '880 patent claims are closely analogous to those recently affirmed as invalid in *Yu*. Plaintiffs criticize GAF's reliance on that case because *Yu* did not, in Plaintiffs' view, represent a major sea-change in the Section 101 jurisprudence.  (Pl. Br. at 26.)  But GAF never contended that *Yu* overruled prior Federal Circuit precedent; GAF argues instead that this recent and closely analogous case—to which the claims of the Patents-in-Suit must be compared as part of the Section 101 analysis—compels dismissal of the FAC.  The claims in *Yu* were "directed to the abstract idea of taking two pictures (which may be at different exposures) and using one picture to enhance the other in some way."  *Yu*, 1 F.4th at 1043.  In the '880 patent, one picture (from a top down view) is used to confirm a location, from which another picture (from a different view) is then retrieved for a user.  Plaintiffs attempt to distinguish the claims in *Yu* from the '880 patent claims by alleging (without addressing the '880 claims) that the Patents-in-Suit "specifically delineate exactly how to obtain high-accuracy measurements from aerial imagery."  (Pl. Br. at 25.)  That description does not apply to the process of confirming that a photograph is of the correct address, as set forth in the '880 patent claims.  Thus, this manipulation of two photographs claimed in the '880 patent is abstract, just as the manipulation of two photographs was held to be abstract in *Yu*.

### 2.    The '880 Claims Fail The "Indicia of Abstractness" Tests

If there were any doubt about the abstract character of the '880 patent claims, the Federal

Circuit's guidance regarding abstract indicia forecloses any other conclusion.  The claims of the

'880 patent (1) fail the "*improved computer functionality*" test because they require the use of

conventional computer infrastructure (databases, means for user input, moveable markers) that

are as old as computers themselves, and that are used in entirely conventional ways; (2) fail the

"*pen-and-paper*" test because all of the steps (specifying an address, retrieving a top down image

corresponding to that address, marking on that image the desired building, retrieving an image of

that same from a different angle, and printing information) could be performed manually; (3) fail

the "*desired outcome*" test because they merely state an end-result (an oblique image

corresponding to an address) without describing how to get from a specified address to the

corresponding image; and (4) and fail the "*data manipulation*" test because they just take one

form of data (an address that is input and marked by a user) and transmit responsive data (an

oblique image of that address and/or a printed report).

Plaintiffs offer a single sentence as to why the '880 patent claims allegedly improve

computer functionality: they are directed to "specific user interface techniques for manipulating a

visual marker on a top-down image to identify appropriate oblique images for use in

measurements."  (Pl. Br. at 26.)  But that description only confirms that these claims do not

improve computer functionality; Plaintiffs describe a conventional process that employs

conventional techniques, and does not solve a problem specific to computers.  On the contrary,

the problem of a mistaken address is one that pre-dated computers and would be an issue even if

someone were manually ordering a roof report in person.  *See, e.g.*, *Linquet Techs., Inc. v. Tile,*

*Inc.*, Case No. 3:20-cv-05153-JD, 2021 WL 4198521, at *5 (N.D. Cal. Sept. 15, 2021)

(dismissing complaint where the claims were not directed to "problems specific to computers and

computer networks," and where the alleged improvements were "more like marketing soundbites than allegations of fact").  Similarly, Plaintiffs contend that the pen-and-paper test must be met because the '880 patent "provid[es] a movable 'visual marker' and 'computer inputs.'"  That is directly at odds with Federal Circuit law; a means for computer inputs does not in and of itself satisfy Section 101.  *See, e.g.*, *RingCentral, Inc. v. Dialpad, Inc.*, 372 F. Supp. 3d 988, 997 (N.D. Cal. 2019) (granting motion to dismiss in part because claims failed the pen-and-paper test, despite the fact that claimed method required computer input).

As for the "desired outcome" test, Plaintiffs contend that the answer to the question GAF raised in its opening brief—how a corresponding oblique image is provided—is that the system somehow does it:  after a user "'precisely identifies the location' of the target," then "the system provides 'one or more oblique images.'"  (Pl. Br. at 14-15.)  That non-answer confirms that the '880 patent offers nothing but a desired outcome.  Plaintiffs take a similar approach to the "data manipulation" test, contending that this test is satisfied because there are "specific requirements for interacting with a user interface."  (Pl. Br. at 35.)  But the presence of a user interface for data entry is entirely consistent with GAF's argument that address data is used merely to retrieve photographic data, which renders these claims abstract.  In addition to the cases cited in GAF's opening brief, claims directed to using a user interface were dismissed at the pleading stage just last month.  *See Broadcom Corp. v. Netflix Inc.*, No. 3:20-cv-04677-JD, 2021 WL 4170784, at *2, 7-9 (N.D. Cal. Sept. 14, 2021) (dismissing as invalid claims that required a user interface for submitting "a request for service" on a "user device").

### B.    The '880 Patent's "Automated Retrieval" Claims Fail *Alice* Step 2

It is difficult to discern what Plaintiffs contend is the inventive step in the claims of the '880 patent.  Plaintiffs allege that the Asserted Patents "creat[e] accurate 3D roof models in hours that w[ere] widely praised by both the public and EagleView's own competitors."  (Pl. Br. at 36.)

That description does not apply to the '880 patent claims, which make no mention of "3D roof models."  Nor could that industry praise apply to the '880 patent; that patent was issued to Pictometry, and the praise that Plaintiffs cite was directed to Eagleview prior to its merger with Pictometry.  (*Cf.* FAC ¶ 6 *with* FAC ¶¶ 34, 35.)  And while Plaintiffs also appear to contend that the inventive concept for these claims lies in "visual markers to increase accuracy," (Pl. Br. at 37), that is merely the abstract concept of moving a marker on a screen to more precisely designate a desired location.  The '880 patent claims therefore fail *Alice* Step 2.

## II.     THE "3D MODELLING" CLAIMS ARE INVALID

### A.     The "3D Modelling" Claims Fail *Alice* Step 1

The representative claim of the '436 patent, which is directed to generation of a 3D building model based on non-stereoscopic images, is abstract.  GAF described the '436 patent as a four-step process: (1) receiving at least two non-stereoscopic aerial images; (2) correlating those images; (3) generating a 3D-model based on that correlation; and (4) generating and transmitting a report based on that 3D model.  Plaintiffs do not dispute that this accurately distills claim 1 of the '436 patent, but instead assert that this distillation is incomplete because it omits the "specific and concrete requirements [of dependent claim 2] of 'receiving an indication of one or more corresponding points' using the specific iterative user interface described there.'"  (Pl. Br. at 17.)  That is not a "specific and concrete requirement"; it merely invokes the generic concept of a conventional computer-based user interface.  Plaintiffs' conclusory statement does not identify anything about that "user interface" that is different from conventional user interfaces.  That failure alone indicates that the '436 patent claims are directed to an abstract idea. *See, e.g.*, *Broadcom Corp.*, 2021 WL 4170784, at *9 (noting that "reliance on the conventional and the conclusory will not do" when it comes to the Section 101 analysis).

Plaintiffs also rely heavily on the Court's finding that the *Xactware* defendants did not meet their burden of showing that claims 2 and 36 of the '436 patent are invalid under Section 101.  (Pl. Br. at 16-17.)  But that tactic cannot salvage the '436 patent claims, because more recent caselaw establishes that those claims are invalid.  Indeed, just as in *Yu*, the '436 patent claims a method of correlating two building photographs, and generating and transmitting what amounts to an enhanced version of the photographed building (*i.e.*, a 3D model thereof).  *See Yu*, 1 F.4th at 1042 (citing claim language that included analog-to-digital conversion of two images and then processing those images to produce an "enhanced" digital image).

Plaintiffs address the indicia of abstractness for the '436 patent in only a cursory fashion, contending that the four-step method of the '436 patent described above, which results in a report that contains a 3D model, "improves computer functionality."  (Pl. Br. at 26.)  But Plaintiffs never answer a fundamental question: what particular computer function was allegedly improved by the claimed process of the '436 patent?  Plaintiffs do not contend that they invented 3D modeling, so what was it that allegedly changed?  Plaintiffs' silence speaks volumes—like many recent cases, there is no improvement to computer functionality provided by the claims of the '436 patent; only the use of computers as a tool to perform a conventional function (3D modeling) in connection with generating conventional data (a roof report).  *See Yu*, 1 F.4th 1043 (claims invalid as directed to conventional functions of digital camera technology that generate conventional output of enhanced image); *SynKloud Techs., LLC v. HP, Inc.*, No. 19-1360-RGA, 2021 WL 3568371, at *5 (D. Del. Aug. 12, 2021) (claims were directed to "generic computer components (storage devices and servers) performing routine functions").

### B.      The "3D Modelling" Claims Fail *Alice* Step 2

Plaintiffs contend that the '436 patent claims are directed to the inventive concept of "correlation . . . of two non-stereoscopic aerial images."  (Pl. Br. at 37.)  There are no inventive,

tangible, or physical components that Plaintiffs identify in connection with this generic

correlating step.  And correlating two images taken from different angles cannot be an inventive

concept, as the '436 patent confirms that this step refers to the rudimentary process, familiar to

anyone who has compared two images of the same building taken from different angles, of

"identifying which points of the images correspond to each other."  ('436 patent, col. 8:29-30.)

The process of identifying corresponding points on two images of the same building "does not

add sufficient substance to the underlying idea of enhancement" through the generation of a 3D

model, and merely serves as "'a conduit for the abstract idea.'"  *Yu*, 1 F.4th at 1045.

## III.    THE "OVERLAY AND REGISTER" CLAIMS ARE INVALID

### A.    The "Overlay and Register" Claims Fail *Alice* Step 1

The representative claims of the '152 patent, which are directed to use of user-based input

to overlay and register building images, are abstract.  While Plaintiffs criticize GAF's description

of these claims, it is unclear what Plaintiffs contend is lacking.  (Pl. Br. at 18-19.)  Plaintiffs

attempt to repackage and recharacterize the claims of the '152 patent as "implementing . . .

iterative modification and display of a projection of a feature from a 3D model, as well as

registration of the aerial image to a reference grid."  (Pl. Br. at 19.)  GAF can agree to Plaintiffs'

description for purposes of this motion—because even adopting that description in its entirety,

Plaintiffs recite only routine and generic computer functions of "iterative modification,"

"projection of a feature" and "registration of the aerial image."  This innately functional language

is precisely the sort of claim language that is abstract.  *See, e.g.*, *Broadcom*, 2021 WL 4170784,

at *9 (invalidating claims that combined various functions of "allocating," "receiving,"

"determining," and "delivering"); *Procon Analytics, LLC v. Spireon, Inc.*, No. 3:19-cv-201, 2021

WL 1269081, at *2, 9 (E.D. Tenn. Apr. 6, 2021) (dismissing claims directed to generic functions

of "communicatively coupling," "associating," "disassociating," and "receiving").

B.     The "Overlay and Register" Claims Fail *Alice* Step 2

Plaintiffs contend that the inventive concept for the claims of the '152 patent is

"**displaying** the projections of 3D models on multiple aerial images and subsequent **registering**

of aerial images to a reference grid."  (Pl. Br. at 37.)  In other words, Plaintiffs recite verbatim

the same functional language that they identified for *Alice* Step 1, which is impermissibly

abstract.  "Displaying" and "registering" steps are not the sort of subject matter that has been held

to supply an inventive concept at Step 2.  Indeed, while Plaintiffs cite two cases in this section of

their opposition, (Pl. Br. at 37), both are readily distinguishable from the abstract concepts

embodied in the '152 patent.  *See Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827

F.3d 1341, 1350 (Fed. Cir. 2016) (Step 2 met by "a filter implementation versatile enough that it

could be adapted to many different users' preferences while also installed remotely in a single

location"); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127 (Fed. Cir.

2018) (denying motion to dismiss because there was a factual dispute over whether specific

claimed data file eliminated the need for "proprietary database schemas and without having to

custom program the form files to work with each outside application").

IV.     "PITCH INDICATION/MODEL MODIFICATION" CLAIMS ARE INVALID

A.     The "Pitch Indication/Model Modification" Claims Fail *Alice* Step 1

The representative claims of the '840 and '149 patents are directed to one or more of the

above abstract ideas, in combination with the abstract idea of using user-based input to modify a

3D building model.  As GAF noted in its opening brief, although the title of the '840 and '149

patents refers to "Pitch Determination Systems," the claims are actually directed to "pitch

indication by a user," which occurs through a user interface referred to as a "pitch determination

marker."  (GAF Br. at 8.)  Plaintiffs argue that GAF has engaged in "inexplicable substitution of

claim language," (Pl. Br. at 19), but the actual claim language for both representative claims

10

refers to "receiving . . . an **indication of pitch**," and then "modifying a model of the roof based on the received **indication of the pitch**." ('840 patent, col. 24:9-13; '149 patent, col. 24:58-63.) Computers are used merely as a tool to receive an indication of roof pitch from a user and then to modify a roof model based on receiving it. That does not improve computer functionality, involve a new algorithm, involve some innovative configuration of hardware, or involve steps that could not be performed by a person armed with trigonometric equations and photographs—and Plaintiffs do not contend otherwise in their opposition brief.

**B.     The "Pitch/Indication/Model Modification" Claims Fail *Alice* Step 2**

Plaintiffs allege that the "inventive step" for the '840 patent is "the iterative use of a pitch determination marker," while the inventive step of the '149 patent is "interactive user interface control to specify pitch." (Pl. Br. at 37.) Those are not inventive steps; they are a description of a generic process through which a user can specify attributes of a building. Nothing could be more fundamental and conventional to the operation of computer systems than the ability to enter information, which is all that Plaintiffs allege is "inventive" about these claims.

**V.     THE "ROOF PITCH CALCULATION" CLAIMS ARE INVALID**

**A.     The "Roof Pitch Calculation" Claims Fail *Alice* Step 1**

The representative claims of the '376, '961, '568, and '960 patents are directed to one or more of the above abstract ideas, in combination with the abstract idea of calculating roof pitch. Plaintiffs' opposition brief has very little to say about these patents, and consists primarily of reciting generic claim language directed to "calibration" and "correlation" steps. (Pl. Br. at 21-23.) As discussed above, "correlation" represents the epitome of a generic and conventional computer function, and "calibration" is an equally generic and conventional computer function. (*See* FAC ¶ 28 (defining "calibration" as "identifying common reference points depicted" in two roof images).) Plaintiffs do not claim to have invented a new way to calculate roof pitch, and do

not claim to have improved the way that pitch is calculated; the "Roof Pitch Calculation" claims all rely on the same generic, well-known algorithms "described . . . in textbooks, trade journals, and academic publications."  (*See, e.g.*, '961 patent, col. 7:5-22.)  That concept is unpatentable.

### B.      The "Roof Pitch Calculation" Claims Fail *Alice* Step 2

Plaintiffs contend that the inventive step for these claims is "correlation or calibration of two non-stereoscopic aerial images."  (Pl. Br. at 37.)  Aside from the fact that the phrase "non-stereoscopic aerial images" does not appear in any of those claims, there is nothing in that alleged inventive step that meets the Federal Circuit's requirements for *Alice* Step 2.  On the contrary, identifying common reference points between two photographs "merely invokes well-understood, routine, conventional" steps that cannot satisfy Step 2.  *Yu*, 1 F.4th at 1045.

### VI.    CONCLUSION

For the reasons above and those in GAF's opening brief, the FAC should be dismissed.

DATED:  October 15, 2021

s/Maureen T. Coghlan

Maureen T. Coghlan
Archer & Greiner, P.C.
One Centennial Square
33 East Euclid Avenue
Haddonfield, NJ 08033

John M. Neukom (*pro hac vice*)
Skadden, Arps, Slate,
Meagher & Flom LLP
525 University Avenue
Palo Alto, CA 94301
Tel: (650) 470-4500
john.neukom@skadden.com

*Attorneys for GAF Materials LLC*

Edward L. Tulin (*pro hac vice*)
Rachel R. Blitzer (*pro hac vice*)
Leslie A. Demers (*pro hac vice*)
Skadden, Arps, Slate,
Meagher & Flom LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
edward.tulin@skadden.com
rachel.blitzer@skadden.com
leslie.demers@skadden.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2021, I caused a true and correct copy of the

foregoing brief and all exhibits referenced therein to be served by email upon counsel of record

listed below:

Hector Daniel Ruiz
Liza W. Walsh
Walsh Pizzi O'Reilly Falanga LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NY 07102
Tel: 973-757-1100
hruiz@walsh.law
lwalsh@walsh.law

Adam R. Alper
Brandon H. Brown
Natalie Flechsig
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Gianni Cutri
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Michael W. De Vries
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
(213) 680-8400

Leslie Schmidt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Dated:  October 15, 2021

s/Maureen T. Coghlan