UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EAGLE VIEW TECHNOLOGIES, INC.** and **PICTOMETRY INTERNATIONAL CORP.**,<br><br>Plaintiffs,<br><br>v.<br><br>**GAF MATERIALS LLC**,<br><br>Defendant. | Case No. 1:21-cv-10669-RMB-SAK |

**DEFENDANT GAF MATERIALS LLC'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER**

Maureen T. Coghlan
Archer & Greiner, P.C.
One Centennial Square
33 East Euclid Avenue
Haddonfield, NJ 08033

*Attorneys for Defendant GAF Materials LLC*

**TABLE OF CONTENTS**

Page

I.   THIS CASE COULD HAVE BEEN BROUGHT IN UTAH .............................................3

II.  THE PRIVATE INTEREST FACTORS FAVOR TRANSFER TO UTAH........................3

   A.   Because of the Unique Facts Here, Plaintiffs' Forum Preference Weighs in Favor of Transfer. ...................................................................................................3

   B.   Defendant's Forum Preference Weighs in Favor of Transfer. .................................5

   C.   Plaintiffs' Claims Arose Elsewhere..........................................................................5

   D.   The Convenience of the Parties with Respect to Physical and Financial Condition is Neutral..................................................................................................7

   E.   The Convenience of the Witnesses Favors Transfer................................................8

   F.   The Location of Books and Records Is Neutral.......................................................8

III. THE PUBLIC INTEREST FACTORS FAVOR TRANSFER TO UTAH. ........................9

   A.   The Enforceability of the Judgment Favors Transfer. .............................................9

   B.   Practical Considerations That Could Make the Trial Easy, Expeditious, or Inexpensive Favor Transfer. ....................................................................................9

   C.   Court Congestion Weighs in Favor of Transfer......................................................11

   D.   The Local Interest Favors Transfer........................................................................11

   E.   The Familiarity of the Trial Judge with the Applicable Law is Neutral. ...............11

IV.  CONCLUSION..................................................................................................................12

**TABLE OF AUTHORITIES**

**CASES**

*Coyoy v. United States*,
  No. 20-2501 (KM) (ESK), 2021 WL 1050198 (D.N.J. Mar. 18, 2021) ............................11

*In re Dole Food Co., Inc. Stockholder Litigation*,
  110 A.3d 1257 (Del. Ch. 2015)......................................................................................9

*Indivior Inc. v. Dr. Reddy's Laboratories S.A.*,
  Nos. 17-7106 (KM)(CLW) et seq., 2018 WL 4089031 (D.N.J. Aug. 27, 2018).................5

*Intellectual Ventures I LLC v. Altera Corp.*,
  842 F. Supp. 2d 744 (D. Del. 2012)................................................................................5

*Intellectual Ventures I LLC v. Checkpoint Software Technologies Ltd.*,
  797 F. Supp. 2d 472 (D. Del. 2011)................................................................................5

*Internal Combustion Solutions, LLC v. Yoshimura Research & Development of America, Inc.*,
  No. 13-02793 (RMB/AMD), 2014 WL 1391178 (D.N.J. Apr. 9, 2014)............................9

*Medidata Solutions, Inc. v. DATATRAK International, Inc.*,
  No. 12-4748 (WJM), 2013 WL 1989854 (D.N.J. May 13, 2013) ....................................10

*Reckitt Benckiser Pharmaceuticals, Inc. v. Biodelivery Sciences International, Inc.*,
  No. 14-5892 (MAS)(TJB), 2015 WL 4461511 (D.N.J. July 21, 2015).......................10, 11

*Samuels v. Medytox Solutions, Inc.*,
  No. 13-7212 (SDW), 2014 WL 4441943 (D.N.J. Sept. 8, 2014) .....................................11

*Teva Pharmaceuticals USA, Inc. v. Sandoz Inc.*,
  No. 17-275(FLW), 2017 WL 2269979 (D.N.J. May 23, 2017).....................................4, 8

Two district courts—this Court and the District of Utah—are simultaneously addressing two infringement suits that Plaintiffs filed on the same day, asserting six of the same patents, and involving software-based technology that has been used, maintained, and/or developed by the same entity (Utah-based Nearmap).[1]  Unless GAF's motion to transfer is granted, those concurrent proceedings will be a recipe for duplication of judicial effort, risk of inconsistent judgments, and wasted resources.  In attempting to convince the Court that it should deny GAF's motion and invest time and resources on a case that overlaps substantially with the Utah Action, Plaintiffs rely primarily on four untenable arguments:[2]

*First*, Plaintiffs argue that it would be more efficient for two Courts to simultaneously adjudicate co-pending infringement cases involving six of the same patents because (i) the Utah Action involves "entirely different products" from QuickMeasure; and (ii) GAF is not a party to the Utah Action.  (Pl. Br. at 3.)  But Plaintiffs' description of the Utah Action applies equally to the *Xactware* Action, which (i) involves "entirely different products" from QuickMeasure; and (ii) does not include GAF as a party.  Aside from that contradiction, Plaintiffs have taken an artificially narrow view of the overlap between the Utah Action and this case, and an improperly expansive view of the overlap between the *Xactware* Action and this case.  Whereas the *Xactware* defendants have nothing to do with QuickMeasure reports or their creation, Utah-based Nearmap is indisputably and directly involved with QuickMeasure reports and the third-party software used to create them.  The Laddha Declaration establishes that but for Utah-based Nearmap, there would be no QuickMeasure reports.  And while Plaintiffs downplay the fact that

---

[1] All capitalized terms herein have the same meanings as in GAF's opening brief.

[2] Plaintiffs' opposition brief relies entirely on attorney argument and publicly available materials.  Although they could have done so, Plaintiffs did not seek discovery from GAF, Nearmap, Pushpin, or anyone else in connection with GAF's motion.

the Utah Action is at the same stage as this case, the inefficiencies that would result from denial of GAF's motion are perhaps best illustrated by what is scheduled for November 1: that is not only the motion day in this Court for GAF's motion to dismiss, but is also the date for oral argument in Utah on Nearmap's pending motion to dismiss one of the same patents asserted here. (Utah Action, Dkt. No. 43.) Two hearings in two courts, on the same date no less, regarding the same challenge to the same patent claims, is the height of judicial inefficiency.

*Second*, Plaintiffs postulate that, in addition to relevant documents and witnesses from Utah-based Nearmap, there may also be other relevant documents and witnesses from Minnesota-based Pushpin or Nearmap's Australian corporate affiliate. GAF agrees, and already addressed that issue in Mr. Laddha's declaration. (*See* Laddha Decl. ¶¶ 17, 18.) But the fact that multiple entities may use non-GAF software to generate QuickMeasure reports outside of New Jersey is no reason to keep this case in New Jersey. Indeed, Plaintiffs' argument confirms that the Nearmap-Pushpin partnership—which is indisputably centered outside of this District—is at the heart of whether the QuickMeasure software infringes any of Plaintiffs' patents.

*Third*, Plaintiffs argue that the risk of inconsistent outcomes would *decrease* if two courts simultaneously consider the same six Patents-in-Suit, rather than if just one court (the District of Utah) did so. Setting aside the facial illogic of that contention, Plaintiffs' argument appears based on the incorrect notion that this Court will summarily deny GAF the opportunity to contest "claim construction and validity, at a minimum," and that it will automatically adopt all such prior determinations from the *Xactware* Action. (Pl. Br. at 3, 25.) Plaintiffs cite no authority for this view, and the Court has given no indication that it would deny GAF the chance to make arguments—on claim construction, validity, or any other topic—merely to avoid an outcome that might be inconsistent with *Xactware*.

*Fourth*, Plaintiffs highlight that GAF previously sought to transfer to this District in a patent case ("the Kirsch Action")—a fact that GAF acknowledged in the first paragraph of its opening brief.  GAF sought transfer in the Kirsch Action to the forum that made the most sense for that case, and has applied the same approach here.  Unlike this action, which involves infringement allegations relating to third-party proprietary software that GAF did not develop, does not maintain, and does not even have access to, the Kirsch Action concerned roofing underlayment products for which GAF's New Jersey-based engineers had worked directly on "technical specifications and product qualifications."  (Dkt. No. 48-2, Ex. A at 14-15.)

Plaintiffs filed two closely related patent cases in different forums on the same day, but the only forum in which both of those cases can proceed together is the District of Utah.  GAF thus respectfully requests that its motion to transfer to that District be granted.

**I.      THIS CASE COULD HAVE BEEN BROUGHT IN UTAH**

Plaintiffs do not dispute that venue is "proper in Utah" and that this case could have been brought there.  (Pl. Br. at 5-6.)  Thus, the only question is whether the *Jumara* factors establish that transfer is in the interests of justice and convenience.  That answer is indisputable: they do.

**II.     THE PRIVATE INTEREST FACTORS FAVOR TRANSFER TO UTAH**

   **A.     Because of the Unique Facts Here, Plaintiffs' Forum Preference Weighs in Favor of Transfer.**

In its opening brief, GAF noted that there are two instances when a plaintiff's forum preference is typically accorded less deference in the *Jumara* analysis:  (1) when it sues outside its home state, and (2) where the operative facts giving rise to the claim occur elsewhere.  (Dkt. No. 32-1 at 10-11.)  Plaintiffs concede that they sued GAF outside their home state, and thus their forum preference should be accorded less deference on that ground alone.  (*See, e.g.*, Pl. Br. at 6.)  As for the second part of this analysis, the Court has articulated five relevant categories of

3

"operative facts," which are the locations of the accused product's (1) development, (2) testing, (3) research, (4) production, and (5) marketing management. *Teva Pharms. USA, Inc. v. Sandoz Inc.*, No. 17-275(FLW), 2017 WL 2269979, at *6 (D.N.J. May 23, 2017). Mr. Laddha's uncontroverted declaration establishes that the first four "operative facts" occurred outside of New Jersey, i.e., "the research, development, testing, and operation of the software used to produce QuickMeasure reports all took place at locations other than those in New Jersey, and were supervised by individuals associated with Nearmap and/or Pushpin." (Laddha Decl. ¶ 12.) The operative facts that relate most to the disputed issues in this case, such as whether any Nearmap-Pushpin software performs the steps claimed in the Patents-in-Suit, cannot be answered directly by anyone in New Jersey, who instead will likely be able to speak only to "marketing efforts, commercial relationships, and website design." (Laddha Decl. ¶ 11.) As the Court no doubt observed during the *Xactware* trial, and as exemplified in the Court's most recent Order in the *Xactware* Action, questions of infringement tend to turn on materials that are generally outside the purview of sales and marketing functions, and that instead concern "technical documentation," "source code, and versions of all software." (*Xactware* Action, Dkt. No. 975.)

Plaintiffs have not cited a single case in which sales and marketing activities alone were sufficient to tip this first factor against transfer; the cases that Plaintiffs cite are either inapposite or support GAF's motion. For instance, although Plaintiffs rely heavily on *Indivior Inc. v. Dr. Reddy's Laboratories S.A.*, No. 17-7106 (KM)(CLW), 2018 WL 4089031 (D.N.J. Aug. 27, 2018), the *Indivior* court's decision to deny transfer to Delaware appears to rest primarily on the fact that the case could not have been brought there. *Id.* at *2. Moreover, the *Indivior* court never addressed any "operative facts"; that term never appears in the court's opinion. *See id.* Plaintiffs similarly rely upon *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744,

4

754 (D. Del. 2012). (Pl. Br. at 6.) But that case directly supports GAF's argument. In *Altera*, Judge Stark concluded that the location of "operative events . . . weigh[ed] in favor of transfer" because although the accused products were sold nationwide, "at least some of the research and development activities relating to the allegedly infringing products occurred in the [transferee forum], and none in [the original forum]." *Id.* at 755; *see also Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 485 (D. Del. 2011) (cited in Pl. Br. at 8) (concluding that, where the original forum was only the site of some sales, and where the "bulk" of relevant R&D was outside the original forum, this factor weighed slightly in favor of transfer).

### B. Defendant's Forum Preference Weighs in Favor of Transfer.

As with the first private *Jumara*, factor, this Court has defined two instances when this second factor typically weighs in favor of transfer: (1) when the "central facts" are "primarily connected" to the transferee forum; and (2) when a related case is pending in the transferee forum. (Dkt. No. 32-1 at 14.) Both apply here. GAF's understanding is that the central facts of this case concern the Nearmap-Pushpin partnership, which is centered at least in part in the transferee forum—and not in New Jersey. (*See* Laddha Decl. ¶¶ 7-13.) And there is no dispute that the Utah Action is related to this case, as it involves six of the same patents as this action. GAF's preference to litigate in Utah—where a related action is pending against the very entity that is primarily connected to the central facts here—thus weighs in favor of transfer.

### C. Plaintiffs' Claims Arose Elsewhere.

This case is primarily about software that was not developed or implemented by GAF, and that was, is, and continues to be developed and implemented by Nearmap and/or Pushpin outside of New Jersey. Plaintiffs argue that this factor nonetheless weighs against transfer because: (1) GAF manages its QuickMeasure sales activity from New Jersey and sells some QuickMeasure reports in New Jersey; (2) GAF's website, through which QuickMeasure reports

5

can be ordered, has source code associated with it; (3) Nearmap is "an Australian company with its headquarters in Sydney"; and (4) in the opinion of Plaintiffs' counsel, "it is more likely that Pushpin prepares the GAF software." (Pl. Br. at 10-17.) Those arguments should be rejected.

The parties do not dispute the facts that underlie Plaintiffs' first argument; GAF manages its QuickMeasure sales activity from New Jersey and sells some QuickMeasure reports here. (Laddha Decl. ¶ 11.) But the question of liability in this case is not likely to turn on marketing materials, GAF branding, or the number of New Jersey roofing contractors who have ordered QuickMeasure reports. Those issues are ancillary to the crux of the case, which is how QuickMeasure reports are created. And on that question, GAF does not (i) know the precise division of labor between Pushpin and Nearmap, (ii) know how those reports are created, or (iii) have access to the relevant source code. (Laddha Decl. ¶ 10.) Plaintiffs argue that GAF understates its actual role in creating QuickMeasure software because Mr. Laddha asked GAF's third-party vendors to provide, among other things, a plan to "expand [the QuickMeasure] user base." (Pl. Br. at 12-13.) But that non-technical request underscores that GAF relied on other, non-New Jersey-based entities to develop the relevant technology.

Plaintiffs' second argument is equally misplaced. Plaintiffs submit what they characterize as "a screen shot of source code from GAF's website." (Dkt. No. 48-1, ¶ 9.) But Plaintiffs provide no evidence, testimony, or analysis as to how that source code relates, if at all, to the issues of infringement. Every website on the World Wide Web is based on source code, and a similar screenshot could be obtained for millions of websites (including the websites for Nearmap, Pushpin, EagleView, and even for this District) by pressing "Ctrl+U" in the Google Chrome browser. If the mere presence of source code for a web page were enough to show a nexus to the "operative facts," then every web page on the Internet would have such a nexus.

That cannot be, and Plaintiffs' mere invocation of webpage source code has nothing to do with the central issues in this case, which relate instead to source code that is likely to be exclusively in the possession of entities other than GAF (and not publicly available).

Plaintiffs' third argument—that GAF has improperly labeled Nearmap as "Utah-based"—is misleading. As GAF noted in its opening brief, several key individuals likely to have information relevant to QuickMeasure are located in Australia, where Nearmap's global headquarters is located. (Laddha Decl. ¶ 15.) But Nearmap itself (i.e., Nearmap US Inc., as defined in GAF's opening brief) is in the District of Utah—as Plaintiffs have affirmatively pled in their Complaint in the Utah Action. (*See* Dkt. No. 48-2, Ex. E, at ¶ 6 (noting that Nearmap has "a regular and established place of business at . . . South Jordan, Utah," and "directly competes with EagleView and Pictometry").)

Plaintiffs' fourth argument—that Minnesota-based Pushpin may have "prepared" the QuickMeasure software for Utah-based Nearmap—is unsupported attorney argument. As noted above, Plaintiffs did not seek any discovery from Pushpin, Nearmap, or GAF in connection with their opposition, and instead have opined on Pushpin "based on their own website's description of their software." (Pl. Br. at 17.) It is unclear what "website" Plaintiffs are even referring to, because the only document cited in support of this statement is the Laddha Declaration. (*Id.*) But even if Pushpin did have a key role in "preparing" Nearmap software, that would again only underscore how this case "arose elsewhere"—i.e., outside of New Jersey.

### D. The Convenience of the Parties with Respect to Physical and Financial Condition is Neutral.

Plaintiffs do not address this factor, which relates to whether the relative size of the parties suggests that either forum may be particularly inconvenient. *Teva Pharms.*, 2017 WL 2269979, at *7. Instead, Plaintiffs ignore their own physical and financial condition, do not

7

contend that Utah would be inconvenient for them, and argue that GAF has sufficient financial assets to litigate in Utah or in this District. (Pl. Br. at 17-18.) This factor is therefore neutral.

### E.  The Convenience of the Witnesses Favors Transfer.

In its opening brief, GAF identified by name twelve potential third-party witnesses (e.g., Nearmap employees, Pushpin employees, and former EagleView employees/officers) all of whom are based outside of New Jersey, and for whom the District of Utah would be more convenient. Plaintiffs do not dispute that the District of Utah would be more convenient for all of those third-party witnesses, made no attempt to identify any potential witness based in New Jersey (other than GAF's declarant, Mr. Laddha), and do not dispute that those dozen witnesses are all likely to have relevant information. Instead, Plaintiffs criticize GAF for failing to identify any witnesses who live in Utah, citing printouts from the LinkedIn pages of two Nearmap employees (Amanda Marchetti, Nearmap's product manager, and Tony Agresta, Nearmap's VP of Sales for North America) that list their current location as outside of Utah. (*See* Dkt. No. 48-2, Exs. G & H.) But those exhibits only confirm that Ms. Marchetti and Mr. Agresta are both managing agents/officers of Utah-based Nearmap, and therefore would likely be subject to the subpoena power of the Utah court. *See, e.g.*, *In re Dole Food Co. S'holder Litig.*, 110 A.3d 1257, 1262 (Del. Ch. 2015) (citing multiple authorities and noting that "[t]hrough its jurisdiction over a corporation, a court can compel the biological persons who serve as its directors, officers, and managing agents to appear as witnesses at trial or for a deposition in a particular location").

### F.  The Location of Books and Records Is Neutral.

While GAF has records relating to QuickMeasure in New Jersey, they are unlikely to be relevant to the key issues in this case. For instance, in assessing whether a new product from Xactware infringed certain of the Patents-in-Suit, the Court ordered production of multiple categories of technical documents. (*Xactware* Action, Dkt. No. 975.) GAF has no documents

8

that fall within those categories for the creation of QuickMeasure Reports. And although the Local Patent Rules of this Court call for GAF to produce "[s]ource code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation, composition, or structure of . . . an Accused Instrumentality," L. Pat. R. 3.4(a), GAF does not have any such documents that relate to the generation of QuickMeasure reports. (Laddha Decl. ¶ 10.) Those documents may be obtained from a third-party subpoena to Utah-based Nearmap, but Plaintiffs do not dispute that it would be easier to do so in Utah, where Nearmap is in active litigation with Plaintiffs and subject to jurisdiction. At a minimum, then, this factor is neutral.

### III.    THE PUBLIC INTEREST FACTORS FAVOR TRANSFER TO UTAH.

#### A.    The Enforceability of the Judgment Favors Transfer.

In its opening brief, GAF noted that "Plaintiff can more easily enforce a judgment . . . in the same forum where the infringing product's 'development, testing, research, and production occurred.'" *Internal Combustion Sols., LLC v. Yoshimura Rsch & Dev. of Am. Inc.*, No. 13-02793 (RMB/AMD), 2014 WL 1391178, at *5 (D.N.J. Apr. 9, 2014). This Court's recent *Xactware* Order confirms that the District of Utah would be a better venue to enforce such a judgement. As part of Plaintiffs' attempt to ensure compliance with the injunctive relief granted as part of the *Xactware* judgment, they sought (and the Court ordered) production of technical documents. Those sorts of documents for QuickMeasure could only be obtained from an entity other than GAF (located outside of New Jersey). This factor thus weighs in favor of transfer.

#### B.    Practical Considerations That Could Make the Trial Easy, Expeditious, or Inexpensive Favor Transfer.

Plaintiffs' decision to file the Utah Action, asserting six of the Patents-in-Suit against one of the vendors involved in creating QuickMeasure reports, means that this factor weighs heavily

9

in favor of transfer—as exemplified by the fact that two parallel motions to dismiss the same patent are now pending before those two courts, set for the same motion day. Faced with the consequences of its decision to file two such suits, Plaintiffs untenably argue that it would be more "practical" for two courts to simultaneously consider those two identical sets of patents because: (i) there is not complete overlap between the Utah Action and this Action; and (ii) Plaintiffs believe that this Court has already decided how it will rule on GAF's "challenges to the '436, '840, and '376 Patents." (Pl. Br. at 22-25.) Both arguments are incorrect.

As for Plaintiffs' first argument, it is true that there is not complete overlap of patents and issues between the Utah Action and this Action. But there is indisputably far more overlap between those two cases (at essentially the same stage, both involving Nearmap, and involving six of the same patents), than between this Action and the *Xactware* trial (with no overlapping defendants or products, and just three of the same patents). Indeed, complete overlap of all patents (or even, any patents) has never been required for this factor to weigh in favor of transfer. *See, e.g.*, *Reckitt Benckiser Pharms., Inc. v. Biodelivery Scis. Int'l, Inc.*, No. 14-5892 (MAS) (TJB), 2015 WL 4461511, at *6 (D.N.J. July 21, 2015) (incomplete overlap of patents); *Medidata Sols., Inc. v. DATATRAK Int'l, Inc.*, No. 1204748 (WJM) 2013 WL 1989854, at *6-7 (D.N.J. May 13, 2013) (only a related patent was asserted in transferee forum).

Plaintiffs' second argument is nonsensical. Plaintiffs argue that while the District of Utah might construe claim terms from certain Patents-in-Suit differently from Judge Kugler's *Markman* Order in the *Xactware* Action, there is no possibility that this Court would do so—even though a new party (GAF) may present new arguments. The same is true in Plaintiffs' mind for invalidity; there is no chance that GAF may prevail on issues of validity here, while it might do so in the District of Utah. This Court will undoubtedly give full and fair consideration to any

10

arguments and evidence that GAF presents, just as the District of Utah would do, and thus there is an inherent possibility (as there always is with simultaneously proceeding cases) of inconsistent results. That risk can be avoided if this case is transferred to the District of Utah.

   **C.  Court Congestion Weighs in Favor of Transfer.**

Plaintiffs cite two cases, both of which treat the congestion in this District as a factor indeed weighing in favor of transfer. *See Coyoy v. United States*, No. CV-202501 KMESK, 2021 WL 1050198, at *14 (D.N.J. ) (treating the "virtually unparalleled shortage of judges and a significant caseload" in this District as a "consideration" in favor of transfer); *Samuels v. Medytox Sols., Inc.*, No. CIV.A. 13-7212, 2014 WL 4441943, at *10 (D.N.J. Sept. 8, 2014) (treating court congestion as a factor that weighed in favor of transfer, albeit "not . . . heavily"). Even if it does not weigh heavily in favor of transfer, court congestion supports GAF's motion.

   **D.  The Local Interest Favors Transfer.**

GAF is proud of its longstanding connection to New Jersey. But that connection has little if anything to do with this case, because GAF has outsourced the creation and implementation of the accused QuickMeasure software to third-parties based outside of New Jersey. This Court has found that, even when a defendant is based in New Jersey, this factor will weigh in favor of transfer if the defendant plays a limited role in the central facts relating to infringement. *Reckitt*, 2015 WL 4461511, at *6 (this factor favored transfer despite defendant's principal place of business in New Jersey because the transferee forum's "interests arise from the development and production of the allegedly infringing product"). This factor thus weighs in favor of transfer.

   **E.  The Familiarity of the Trial Judge with the Applicable Law is Neutral.**

Plaintiffs improperly rewrite the final public *Jumara* factor as "the court's familiarity **with the asserted patents.**" (Pl. Br. at 26 (emphasis added).) That is not the final public *Jumara* factor, which instead concerns the relative familiarity with the **applicable law**, i.e.,

11

federal patent law. The judges in this District and the District of Utah are equally familiar with federal patent law. This factor is therefore neutral.[3]

## IV. CONCLUSION

Plaintiffs' choice to file overlapping patent infringement suits on the same day, as well as the balance of the *Jumara* factors, weigh in favor of transfer to the District of Utah. GAF's motion to transfer should therefore be granted.

---

[3] The parties agree that public *Jumara* factor 5 is neutral. (Pl. Br. at 27-28.)

| | |
|---|---|
| DATED: October 15, 2021 | s/Maureen T. Coghlan |
| | Maureen Coghlan |
| John M. Neukom (*pro hac vice*) | Archer & Greiner, P.C. |
| Skadden, Arps, Slate, | One Centennial Square |
| Meagher & Flom LLP | 33 East Euclid Avenue |
| 525 University Avenue | Haddonfield, NJ 08033 |
| Palo Alto, CA 94301 | |
| Tel: (650) 470-4500 | |
| john.neukom@skadden.com | *Attorneys for GAF Materials LLC* |
| | |
| Edward L. Tulin (*pro hac vice*) | |
| Rachel R. Blitzer (*pro hac vice*) | |
| Leslie A. Demers (*pro hac vice*) | |
| Skadden, Arps, Slate, | |
| Meagher & Flom LLP | |
| One Manhattan West | |
| New York, NY 10001 | |
| Tel: (212) 735-3000 | |
| edward.tulin@skadden.com | |
| rachel.blitzer@skadden.com | |
| leslie.demers@skadden.com | |

13

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2021, I caused a true and correct copy of the foregoing brief and all exhibits referenced therein to be served by email upon counsel of record listed below:

Hector Daniel Ruiz
Liza W. Walsh
Walsh Pizzi O'Reilly Falanga LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NY 07102
Tel: 973-757-1100
hruiz@walsh.law
lwalsh@walsh.law

Adam R. Alper
Brandon H. Brown
Natalie Flechsig
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Gianni Cutri
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Michael W. De Vries
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
(213) 680-8400

Leslie Schmidt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Dated:  October 15, 2021

s/Maureen T. Coghlan