[Docket Nos. 31, 32]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

EAGLE VIEW
TECHNOLOGIES, INC.
and PICTOMETRY
INTERNATIONAL CORP.,

        Plaintiffs,

    v.

GAF MATERIALS, LLC,

        Defendant.

Civil No. 21-10669 (RMB/SAK)

**OPINION**

**APPEARANCES**

Hector D. Ruiz
Liza M. Walsh
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

(*admitted pro hac vice*):
Adam R. Alper
Brandon H. Brown
Natalie Flechsig
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Leslie Schmidt
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Michael W. De Vries
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
(213) 680-8400

   *On behalf of Plaintiffs Eagle View Technologies, Inc. and Pictometry International Corp.*

Maureen T.  Coghlan
ARCHER & GREINER, PC
1025 Laurel Oak Road
Voorhees, NJ 08043
(856) 354-3034

(*admitted pro hac vice*):
John M. Neukom
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500

Edward L. Tulin
Leslie A. Demers
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
(212) 735-3000

   *On behalf of Defendant GAF Materials, LLC*

**BUMB, U.S. District Judge**

   This matter comes before the Court upon an admittedly unusual request from

the defendant, GAF Materials, LLC ("GAF" or "the Defendant"). Having been sued

for patent infringement in its home District (*i.e.,* the District from which it operates

its global headquarters in Parsippany, New Jersey), GAF seeks to transfer the present

action to the U.S. District Court for the District of Utah where the plaintiffs have

another patent infringement lawsuit pending against another defendant.

2

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The Court recites herein only those facts that are relevant to its determination of GAF's pending Motion to Transfer Case to the District of Utah Pursuant to 28 U.S.C. § 1404(a). [Docket No. 32.] The plaintiffs—Eagle View Technologies, Inc. ("Eagle View") and Pictometry International Corp. ("Pictometry," and together with Eagle View, "the Plaintiffs")—initiated this lawsuit by filing a Complaint with this Court on May 4, 2021. [Docket No. 1.] The Plaintiffs "developed technologies and products that produce aerial roof reports," which revolutionized the market and "are used, *inter alia*, to estimate the costs of roof repairs, construction, and insurance." [*Id.* at 2 ¶ 1.] The Plaintiffs allege that one of their direct competitors, GAF, developed a product that infringes on several of their patents, known as "QuickMeasure roof reports and the software used to generate these reports" (together, "the Accused Product"). [*Id.*] The Plaintiffs brought this action "to halt GAF's infringement of nine (9) patents" in connection with the Accused Product, specifically, U.S. Patent Nos.:

- 8,078,436 ("the '436 patent"),
- 8,170,840 ("the '840 patent"),
- 8,209,152 ("the '152 patent"),
- 8,542,880 ('the '880 patent"),
- 8,670,961 ("the '961 patent"),
- 9,129,376 ("the '376 patent"),
- 9,514,568 ("the '568 patent"),
- 10,528,960 ("the '960 patent"), and

- 10,685,149 ("the '149 patent").

[Docket No. 1, at 3 ¶ 3.] An Amended Complaint was filed by the Plaintiffs with this Court on July 23, 2021, containing these same general allegations. [Docket No. 11.]

The present action was not the only patent infringement suit filed by the Plaintiffs on May 4, 2021. That same day, Eagle View and Pictometry filed another lawsuit in the U.S. District Court for the District of Utah (Northern Division) against another defendant, Nearmap US, Inc. ("Nearmap") ("the Utah Action"). [Docket No. 48 (hereafter "Plaintiffs' Brief"), Ex. E.] The Plaintiffs allege that Nearmap, another of their direct competitors, infringes on eight (8) of their patents, six (6) of which are also alleged in the current controversy against GAF:

- the '152 patent,
- the '880 patent,
- the '961 patent,
- the '568 patent,
- the '960 patent,
- the '149 patent, and U.S. Patent Nos.:
  - 8,593,518, and
  - 9,135,737 (neither of which are asserted against GAF).

[*Id.*] In the Utah Action, the Plaintiffs assert that at least two products of Nearmap, both of which are separate and distinct products from GAF's QuickMeasure roof reports, infringe the Plaintiffs' patents, "including (1) Nearmap on OpenSolar and (2) MapBrowser." [*Id.* at 2 ¶ 1.]

GAF maintains that the District of Utah is the more convenient venue for the

present infringement action, arguing that the software behind its Accused Product

was developed entirely outside of New Jersey through a partnership between GAF,

Nearmap, and another Minnesota-based entity known as "Pushpin":

> GAF does not make QuickMeasure reports, did not design or develop any of
> the QuickMeasure [s]oftware, and has never maintained or controlled any of
> the QuickMeasure [s]oftware. Instead, QuickMeasure reports are generated
> through a partnership between Utah-based Nearmap . . . and Minnesota-based
> Primitive LLC (d/b/a Pushpin) (hereafter "Pushpin"). QuickMeasure reports
> are white-labeled by GAF, but GAF's role is essentially limited to sales and
> marketing of those reports.

 [Docket No. 32-1 (hereafter "Defendant's Brief"), at 1.]

This is also not the first time that the Plaintiffs are appearing before this Court

alleging patent infringement of their aerial roof report technology. In fact, this Court

presided over another patent infringement lawsuit brought by Eagle View and

Pictometry in 2015. *See Eagle View Techs., Inc., et al. v. Xactware Solutions, Inc., et al.*,

Civ. No. 15-7025 (RMB/SAK) (D.N.J.) ("the *Xactware* Action"). After four years of

pre-trial litigation, this Court conducted a two-week jury trial that resulted in a

verdict in favor of the Plaintiffs. That case only recent settled while on appeal to the

Federal Circuit Court of Appeals. During the *Xactware* Action, this Court certainly

became quite familiar with certain of the Plaintiffs' patents as well as the technology

behind some of the Plaintiffs' patent-protected products. In its supporting brief, GAF

"recognizes that this Court has invested substantial resources in [that] prior patent

infringement suit," and acknowledges that the Plaintiffs "previously asserted some

claims of the [p]atents-in-[s]uit at trial in the *Xactware* Action:  claims 2 and 36 of the

'436 patent, claims 10 of the '840 patent, and claim 20 of the '376 patent."[1] [Defendant's Brief at 2, 8 (*citing* Docket No. 11 (hereafter "First Amended Complaint"), Ex. 10, at 6 n. 4).] The Plaintiffs also acknowledge that the '436 patent, the '840 patent, and the '376 patent—the three patents asserted here that "are *not* asserted against Nearmap" in the Utah Action—are also "critically, the [only] three patents [asserted here] that were subject to the *Xactware* verdict." [Plaintiff's Brief at 23 (emphasis in original).] Thus, of the nine patents asserted against GAF, six are also asserted against Nearmap in the pending Utah Action and the remaining three were previously litigated to trial in the *Xactware* Action before this Court.

On August 25, 2021, GAF filed two motions with this Court, a Motion to Dismiss [Docket No. 31] and a Motion to Transfer Case to the District of Utah Pursuant to 28 U.S.C. § 1404(a) [Docket No. 32]. On January 21, 2022, this Court heard oral argument from the parties regarding both of GAF's pending motions. [Docket No. 60.] Having considered the arguments raised by the parties at oral argument and in their supporting briefs, the Court must first determine whether transfer is warranted. What is initially apparent to this Court upon reviewing the facts of this case is that there is not a complete identity of patents asserted, products accused, or defendants sued by the Plaintiffs in any of these complex patent infringement cases, including the present action, the Utah Action, and the *Xactware*

---

[1] GAF also correctly identifies that "the '152 patent was asserted at one point in the *Xactware* Action, but '[t]he parties resolved all of their disputes concerning the '152 [p]atent prior to trial.'" [Defendant's Brief at 8-9 (*citing* First Amended Complaint, Ex. 10, at 5-6 n. 2).]

Action. This Court must now carefully consider each of the six private interest and six public interest factors laid out by the Third Circuit in *Jumara* and make an unavoidably close call as to whether transfer is warranted pursuant to 28 U.S.C. § 1404(a).

## II.    JURISDICTION AND VENUE

This Court has original subject matter jurisdiction over the Plaintiffs' claims of patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has personal jurisdiction over GAF and venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, among other things, GAF is incorporated and maintains a regular and established place of business in this District from which it routinely transacts business.

## III.    LEGAL STANDARD

"[W]here both the original and the requested venue are proper," the applicable federal statute governing "venue questions" is 28 U.S.C. § 1404(a). *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). In *Jumara*, the Third Circuit outlined the six private interest and six public interest factors district courts should consider in assessing whether transfer is appropriate pursuant to 28 U.S.C. § 1404(a), while at the same time acknowledging "there is no definitive formula or list of the factors to consider." *Id.* at 879. The six private interest factors are:

> [a] plaintiff's forum preference as manifested in the original choice; [b] the defendant's preference; [c] whether the claim arose elsewhere; [d] the convenience of the parties as indicated by their relative physical and financial condition; [e] the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [f] the

7

location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879. The six public interest factors are:

[a] the enforceability of the judgment; [b] practical considerations that could make the trial easy, expeditious, or inexpensive; [c] the relative administrative difficulty in the two fora resulting from court congestion; [d] the local interest in deciding local controversies at home; [e] the public policies of the fora; and [f] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80.

The burden to "sho[w] that the balance of convenience factors and interests of justice weigh strongly in favor of transfer" lies with the Defendant. *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 760 (D. Del. 2012) (*citing In re Xoft, Inc.*, 435 Fed. Appx. 948, 949–50 (Fed.Cir.2011) (non-precedential) (denying mandamus and noting that "[t]he Third Circuit has held that 'unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail'") (*quoting Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). Thus, "[i]t follows that 'transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer.'" *Id.* at 751 (*quoting Angiodynamics, Inc. v. Vascular Solutions, Inc.*, 2010 WL 3037478, at *2 (D. Del. July 30, 2010) (citations omitted)).

## IV.   ANALYSIS

The Plaintiffs do not dispute that venue for this action is proper both in this District and the District of Utah "based on GAF's representation that they sold

QuickMeasure there."[2] [Plaintiffs' Brief at 5-6.] Therefore, the Court turns its analysis to the *Jumara* factors and will first consider the six private interest factors before turning to the six public interest factors.

### A.    Private Interest *Jumara* Factors

### 1.    The Plaintiffs' Forum Preference

In support of their decision to sue GAF in its home District, the Plaintiffs argue that they had "legitimate reasons" for doing so, including that "GAF's New Jersey-based Director of Marketing for the Accused Product, Mr. Vishal Laddha"— who is not only "responsible for sales and marketing . . . of the Accused Product" but also manages and oversees GAF's relationships with vendors "who designed, developed, and/or utilized" the underlying software for the Accused Product— works from GAF's headquarters in Parsippany, New Jersey. [Plaintiffs' Brief at 7 (*citing* Laddha Decl. ¶ 6).] In response, GAF recognizes that "a plaintiff's forum preference is typically accorded deference," but argues that such preference is accorded less deference in certain circumstances, specifically, "[1] when the plaintiff selects a forum outside of its home state, *and* [2] where 'the operative facts giving rise to the claim occurred outside the forum chosen by the plaintiff.'" [Defendant's Brief at 10 (emphasis added) (*first citing Teva Pharms. USA, Inc. v. Sandoz Inc.*, Civ. No. 17-

---

[2] The parties do not dispute that GAF also has a regular and established place of business in Cedar City, Utah and that "[t]he District of Utah, like all federal courts, has federal question subject matter jurisdiction over this [patent infringement] case pursuant to 28 U.S.C. §§ 1331 and 1338(a)." [Defendant's Brief at 9.]

0275 (FLW/DEA), 2017 WL 2269979, at *5 (D.N.J. May 23, 2017); *then citing ML Design Grp., LLC v. Young Mfg. Co.*, Civ. No. 12-5883 (MAS/TJB), 2013 WL 3049174, at *3 (D.N.J. June 17, 2013)).] Although GAF is correct that neither of the Plaintiffs are "at home" in this District,[3] the Court does not agree with GAF's contention that "the first private interest factor weighs in favor of transfer" based on this Court's view of where the operative events giving rise to the Plaintiffs' claims occurred, or by the same token, did not occur. [Defendant's Brief at 12.]

GAF admits in its supporting brief that certain (albeit limited) operative events giving rise to the Plaintiffs' infringement claims did occur in this District, specifically, that "the only "QuickMeasure 'events' that have ever occurred in New Jersey relate to sales and marketing" of the Accused Product. [Defendant's Brief at 11.] As will be discussed in more detail below, "whether the Plaintiffs' claims arose elsewhere" is a separate private interest factor under the Court's *Jumara* analysis. Federal courts "have adopted two different approaches to evaluating where operative facts arise in patent infringement cases"—one such approach is known as the "center of gravity" approach, which considers where the product was developed, tested, researched, produced, and where marketing decisions and sales are made; another approach is referred to as the "sales approach," which centers on where the "allegedly infringing

---

[3] In the First Amended Complaint, Eagle View states that it is incorporated under the laws of the State of Washington and has its principal place of business in Rochester, New York. Pictometry is incorporated under the laws of the State of Delaware and also has its principal place of business in Rochester, New York. [Docket No. 11, at 3 ¶ ¶ 4-5.]

products are sold." *Teva Pharms.*, 2017 WL 2269979, at * 6 (citations omitted).

GAF argues that the "center of gravity" approach is the preferred approach, and as will be discussed below, the Court agrees. However, by conceding that GAF sold and marketed the Accused Product in this District, the Court is not persuaded by GAF's argument that the Plaintiffs' forum preference should be left out or afforded less deference in the Court's *Jumara* analysis. In any event, where the Plaintiffs' claims arose is a separate and distinct factor to be considered later in the Court's *Jumara* analysis, and the Plaintiffs have stated the applicable law correctly with respect to the first *Jumara* factor: "[i]n this Circuit, '[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request[.]'" [Plaintiffs' Brief at 6 (*citing Shutte*, 431 F.2d at 25).] The Court finds that the Plaintiffs' forum preference weighs against transfer.

## 2. GAF's Forum Preference

GAF also cites *Teva Pharms.* to support its argument that "this Court has typically accorded more weight to the defendant's preference where there is a related case pending in the transferee forum." [Defendant's Brief at 14 (*citing Teva Pharms.*, 2017 WL 2269979, at *6).] Again, GAF relies on the "center of gravity" approach in making its argument that its forum preference should be afforded more weight in the Court's *Jumara* analysis.

It is true that the pending Utah Action "asserting six of the nine" patents asserted here, which is also in the initial stages of litigation, constitutes a legitimate

reason for GAF to seek transfer, compounded by the fact that the District of Utah is also a proper venue for this suit and GAF's contention that these two cases are related. But again, the Plaintiffs are correct that "[i]n any event, 'center of gravity,' is a separate factor" in the *Jumara* analysis. [Plaintiffs' Brief at 8.] Thus, as with prong one of the *Jumara* analysis, the Court refrains from affording any more or less weight to the parties' forum preferences. Defendant's forum preference weighs in favor of transfer.

### 3.   Whether the Plaintiffs' Claims Arose Elsewhere

The third *Jumara* factor poses unique challenges in this case since none of the parties purport to know where the software behind GAF's Accused Product was developed (or which entity even developed such software for that matter). In determining whether to apply the "sales approach" or the "center of gravity" approach in deciding where the Plaintiffs' infringement claims arose, the Court first considers the nature of the Plaintiffs' claims. The Court finds that the Plaintiffs' infringement claims necessarily depend on *how* GAF's QuickMeasure roof reports are generated, implicating the software and computer-based processes behind the Accused Product. For example, Court I of the Plaintiffs' First Amended Complaint is for infringement of "at least claim 1" of the '436 patent—Claim 1 of the '436 patent specifies that the patent is for "[a] computing system for generating a roof estimate report." [First Amended Complaint, at 15-16 (citations omitted).] Similarly, Count II of the First Amended Complaint is for infringement of "at least claim 1" of the '840 patent by GAF, which specifies that the '840 patent is directed to "[a]

computer-implemented method for generating a roof estimate report." [First Amended Complaint, at 30 (citations omitted).] In fact, all of the Plaintiffs' claims in the First Amended Complaint appear to be either directed to [1] a patent that expressly pertains to "computer-based" methods for generating roof estimate reports, or [2] a patent that necessarily implicates such computer-based software/methods/ processes. To put it differently, the Plaintiffs' infringement claims are predominantly about the software, source code, and other computer-based methods by which QuickMeasure roof reports are generated. Thus, in determining where the Plaintiffs' claims arose, the Court finds that the "center of gravity" approach is the preferred approach, which considers not only where sales and marketing decisions are made, but also where the product was developed, tested, researched, and produced.

The problem is that GAF claims that it does not know where the software behind its Accused Product was developed. According to GAF, it "itself does not create, modify, or otherwise generate QuickMeasure reports, and that 'complete aerial roof measurement software' has been owned at all times by Utah-based Nearmap and/or Minnesota-based Pushpin." [Defendant's Brief at 7 (*citing* Laddha Decl. ¶ 5, 6, 9, 12).] The Court is very concerned by GAF's contention that it "did not create and does not even have ***access*** to the source code, specifications, schematics, formulas, or other documentation that would show the structure and operation of the systems and software that create QuickMeasure reports," which could cause significant delays and prolonged discovery disputes as the litigation proceeds, given that such information will be central to resolving the Plaintiffs'

claims of patent infringement. [*Id.* at 7 (*citing* Laddha Decl. ¶ 10) (emphasis in original).]

At the heart of this dispute is the central question whether the software used to generate the Accused Product is sufficiently distinct from that used to generate the Plaintiffs' patent-protected product. Thus, the Court finds that the preferred forum for this suit under the third private interest *Jumara* factor, considering the nature of the Plaintiffs' infringement claims, would be where such software was developed and is maintained. Given that GAF's role is purportedly limited to marketing and sales of the Accused Product—a contention by GAF that the Court fully expects to have been made accurately and in good faith—the Court finds that the Plaintiffs' infringement claims appear to have arisen elsewhere. Oddly, GAF does not provide any evidence in support of its motion to demonstrate where that "elsewhere" actually is, suggesting that the software behind the Accused Product might have been developed in Utah or maybe in Minnesota.[4]

Although the Court finds that the "center of gravity" with respect to that Plaintiffs' claims is <u>outside</u> of this District based on GAF's representations, the Court, however, is unable to conclude that GAF has met its burden to show that the

---

[4] If it turns out that GAF's claim—that it was not involved in the development of the software behind the Accused Product—was not made in good faith and/or evidence comes to light that shows the software was actually developed in this District, this Court will necessarily need to address the issue. Indeed, where the Plaintiffs' infringement claims arose under the "center of gravity" approach is a *Jumara* factor that has significant bearing on this Court's decision to transfer this case to the District of Utah.

proper transferee district is the District of Utah under the third *Jumara* factor (or any other District for that matter). Therefore, the Court finds that the third private interest factor under *Jumara* is neutral based on the record presently before it.

### 4.    Convenience of Parties

The Court finds that this factor is neutral with respect to the physicality and the financial condition of the Plaintiffs and GAF. The Plaintiffs have brought this suit outside of their home fora and are actively pursuing another patent infringement suit in the District of Utah. Further, GAF has conceded that "all parties have the physical and financial condition to litigate either in the District of Utah or in this forum." [Defendant's Brief at 17.] The Court agrees.

### 5.    Convenience of Witnesses

Under the next private interest *Jumara* factor, the convenience of witnesses, the "sole relevant consideration for this factor" is whether "any witnesses would be unable or unwilling to travel to" this District or the proposed transferee forum. *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 394 (D.N.J. June 24, 2016). In its supporting brief, GAF identifies several Nearmap and Eagle View employees by name, arguing that this factor weighs in favor of transfer since such individuals do not live or work in New Jersey, but instead live and work in western states that are closer in proximity to the District of Utah. This argument is not convincing to this Court, considering that almost all of the individuals named by GAF also do not live or work in the District of Utah, and thus, are not subject to the subpoena powers of the courts either here or there.

Taking into consideration that the parties have not yet identified which entity was responsible for developing the software behind the Accused Product, the Court is unable to determine at this time where the most critical non-party witnesses are even likely to be located. Most importantly, GAF has not identified any witnesses who are unable or unwilling to travel to either this District or the District of Utah in connection with their anticipated testimony in this case. Thus, this factor is neutral.

### 6.     Location of Books and Records

GAF concedes that "[m]uch of the key evidence relating to QuickMeasure [s]oftware and its use in generating QuickMeasure reports likely lies outside of this District, and would likely need to be produced pursuant to third-party subpoenas." [Defendant's Brief at 19 (*citing* Laddha Decl. ¶ 6-9).] However, just as the Court is unable to determine at this time where the most critical third-party witnesses are located, the Court is also unable to make a finding as to where the books and records regarding the development/maintenance of the software and computer-based processes behind the Accused Product are located. Thus, the Court finds that this factor is also neutral.

### B.     Public Interest *Jumara* Factors

The Court turns next to the six public interest factors set forth by the Third Circuit in *Jumara*.

### 1.     Enforceability of Judgment

Given that this is a patent infringement lawsuit arising pursuant to federal

statute, the Court finds that a judgment entered in either district would be enforceable against GAF. Although enforcing a judgment against GAF may be more straightforward in this District given that it is GAF's home District, the nature of the Plaintiffs' infringement claims predominantly concern the development of the software behind the Accused Product, which appears to have occurred outside of this District. In any event, because either District can render an enforceable judgment, the Court finds that this factor is neutral.

## 2.    Practical Considerations

The Court finds that the second public interest *Jumara* factor weighs very strongly in favor of transfer. When considering whether there are practical considerations that weigh in favor of transferring a particular case, "[c]ourts in this Circuit have frequently held that the pendency of a related or similar case in another forum is a powerful reason to grant a motion for a change of venue . . . [s]pecifically, such a transfer allows for pretrial discovery to be conducted more efficiently, saves witnesses' time and money, both with respect to pretrial and trial proceedings, avoids duplicative litigation, thereby eliminating unnecessary expense to the parties, and at the same time serves the public interest and avoids inconsistent results." *Canon Fin. Servs., Inc. v. JL Barrett Corp.*, Civ. No. 10-4117 (RMB/KMW), 2010 WL 4746242, at *3 (D.N.J. Nov. 16, 2010) (citations omitted). In its final analysis below, the Court finds that such practical considerations favor transfer of this case to the District of Utah.

Although the Court is comfortable in concluding that this action and the Utah

17

Action are similar, it is unable to conclude at this time that the Utah Action is necessarily *related* to the current controversy. In its supporting brief, GAF explains that it "cannot know for absolute certain" whether it was Utah-based Nearmap or Minnesota-based Pushpin (which is not a party to the Utah Action) that "actually developed the software and systems that are used to produce QuickMeasure reports." [Defendant's Brief at 16 n. 7 (explaining that "GAF has attempted in good faith to set forth the facts that it is aware of, but it is not privy to the confidential and proprietary information of the third-party entities that actually developed the software and systems that are used to produce QuickMeasure reports").] It may very well be the case that it was, in fact, Utah-based Nearmap that developed and maintains the software and source code behind GAF's Accused Product, which would strongly suggest that the District of Utah is the proper venue for this suit. Regardless, there is no requirement under 28 U.S.C. § 1404(a) that a related case must be pending in the transferee district. Practical considerations may weigh in favor of transfer when there is a similar enough case pending in the transferee venue.

The Court finds that there are many similarities between the present action against GAF and the Utah Action. The fact that the Plaintiffs filed the Utah Action against Nearmap on the same day they filed the present action against GAF, asserting mostly the same patents, is a very significant fact. The Plaintiffs contend that "the products accused of infringing in the Nearmap litigation are not accused here and QuickMeasure is not accused of infringing in the Nearmap litigation." [Plaintiffs' Brief at 22-23.] However, the Court does not find this argument

persuasive enough to tip the scales against transfer. Even in these very early stages of litigation, the Court can discern that GAF's Accused Product and the allegedly infringing Nearmap products are not widely differing products, which is consistent with the fact that the Plaintiffs are asserting mostly the same patents in these infringements suits since similar infringing products would obviously implicate many of the same patents. Comparing the allegedly infringing products in these two cases is not a comparison of apples and oranges; these products involve software-driven technology implicating the use of aerial images.

The Plaintiffs argue that the Court's prior involvement in the *Xactware* Action should be a practical consideration that weighs against transfer. The Plaintiffs are correct that during various stages of the *Xactware* Action, this Court previously considered several different legal challenges to some of the patents asserted here, including whether such patents were "directed to eligible subject matter" and by "evaluat[ing] claim construction. . . and handl[ing] countless factual and discovery disputes regarding Eagle View's embodying technology." [Plaintiff's Brief at 22.] However, this Court's role in the *Xactware* Action will have limited applicability here, given that six additional patents that were not subject to the *Xactware* verdict have been asserted in the present action against GAF, an entity unrelated to any of the parties that participated in the *Xactware* Action.

The Plaintiffs also argue that "if . . . this case is transferred to Utah, that [c]ourt would reevaluate challenges to the '436, '840, and '376 [p]atents that could create a split between rulings on those patents" and this Court's previous findings

from the *Xactware* Action. [Plaintiffs' Brief at 25.] However, the Court finds that the risk of inconsistent rulings is far greater if GAF's transfer motion is denied. GAF correctly points out that the *Xactware* Action is at a very different stage of litigation than either the present action or the Utah Action. In fact, the parties in the *Xactware* Action, which was on appeal to the Federal Circuit Court of Appeals when the parties briefed the motions pending before this Court, have since settled their dispute prior to any ruling from the federal appellate court. In any event, this Court would obviously allow a new party, here GAF, to raise any arguments or defenses available to it, and any of the Court's prior findings from the *Xactware* Action would have to be reconsidered as applicable to GAF. Thus, the Court agrees that if GAF's transfer motion were denied, two different federal courts would "be simultaneously considering discovery issues, reviewing *Markman* briefing on [mostly] the same patents, and holding multiple trials on [mostly] the same patents." [Defendant's Brief at 21.] As both the present action and the Utah Action are in the earliest stages of litigation, the Court finds that duplicative judicial efforts are not only impractical in terms of conserving judicial resources, but also would increase the potential for inconsistent findings.

Considering the significant overlap of mostly the same patents asserted, the similarity of products accused, the potential for inconsistent results, and duplication of judicial efforts, the Court finds that the practical considerations at issue strongly tilt this Court's balancing of the *Jumara* factors in favor of transferring the present action to the District of Utah.

### 3. Court Congestion

The Court finds that there is no significant difference between this District and the District of Utah with respect to caseload and ability to expeditiously bring patent infringement cases to trial. Thus, this factor is neutral.

### 4. Local Interest

This factor is also neutral. Patent infringement lawsuits "are matters of national concern that are not local controversies, nor do they implicate the public policies of any one forum." *Teva Pharms.*, 2017 WL 2269979, at * 8 (citations omitted). Sometimes, "if there are significant connections between a particular venue and the events that gave rise to a suit," this factor will weigh in favor of having the dispute decided in that venue. *Id.* However, as this Court has already discussed, *supra* Section (IV)(A)(3), the Court is unable to determine at this time where the Plaintiffs' claims against GAF arose under the preferred "center of gravity" approach.

### 5. Public Policies

As discussed in the factor immediately above, neither this District nor the District of Utah are likely to advance any particular localized public policies in this patent infringement suit. Thus, this factor is also neutral.

### 6. Familiarity of Trial Judges with Law

As previously discussed, *supra* Section (IV)(B)(2), any prior learning by this Court in the *Xactware* Action will have limited applicability in the current controversy. In addition, this Court is in no better position that the District Court for

the District of Utah to apply and interpret federal patent law in adjudicating the Plaintiffs' claims. Thus, the Court finds that the final *Jumara* factor is neutral.

## V.   CONCLUSION

Having considered each of the individual *Jumara* factors, this Court finds that other than the parties' forum preferences, *supra* Sections (IV)(A)(1)-(2), which if these were the only non-neutral factors under the Court's consideration would tilt in favor of not transferring the case, all of the other *Jumara* factors are neutral except for one: the second public interest factor, practical considerations. That factor weighs very strongly in favor of transfer, and thus, tilts the Court's balancing of the *Jumara* factors in favor of transfer for several reasons given the similarities between the present action and the Utah Action, including significant overlap of mostly the same patents asserted by the Plaintiffs, the similarity of products accused, the potential for inconsistent results, and duplication of judicial efforts. The Court finds that these numerous practical considerations weigh so strongly in favor of transfer to overcome the Plaintiffs' stated forum preference of litigating this dispute in this Court, establishing that the District of Utah is the more convenient forum for this suit.

Accordingly, GAF's Motion to Transfer Case to the District of Utah Pursuant to 28 U.S.C. § 1404(a) [Docket No. 32] shall be **granted** and GAF's Motion to Dismiss [Docket No. 31] shall be **dismissed as moot**. For the avoidance of doubt, GAF shall retain the ability to refile a motion to dismiss with the District Court for the District of Utah if it so chooses pursuant to that Court's rules and procedures, as

applicable. GAF shall also retain the ability to make the same legal arguments made

to this Court if it so chooses, may revise, or may make additional legal arguments in

support of any such motion, taking into consideration the fact that the District Court

for the District of Utah has previously made rulings in the Utah Action that implicate

some of the patents at issue in this case.

    An accompanying Order, as of today's date, shall issue.


<u>March 25, 2022</u>                        <u>Renée Marie Bumb</u>
Date                                      Renée Marie Bumb
                                          U.S. District Judge