Michael K. Erickson (12503)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Ste. 1400
P.O. Box 45385
Salt Lake City, UT 84145-0385
Tel.: 801-532-1500
Fax: 801-532-75438
merickson@rqn.com

*Attorney for Defendant & Counterclaim-Plaintiff*
*Additional counsel listed in signature block*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **EAGLE VIEW TECHNOLOGIES, INC., and PICTOMETRY INTERNATIONAL CORP.,** <br> *Plaintiffs*, <br><br> v. <br><br><br> **GAF MATERIALS LLC,** <br> *Defendant.* | **MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER AND COUNTERCLAIMS** <br><br> Case No.: 2:22-cv-00215-TS-DAO <br><br> The Honorable Ted Stewart <br> Magistrate Judge Daphne A. Oberg |

## I.      RELIEF SOUGHT AND GROUNDS FOR MOTION

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure and DUCivR 15-1, Defendant GAF respectfully moves this Court for leave to file its First Amended Answer and Counterclaims ("FAAC") against Plaintiffs Eagle View Technologies Inc. ("Eagleview") and Pictometry International Corp. ("Pictometry").[1] The FAAC asserts two additional equitable affirmative defenses/counterclaims ("the New Patent Defenses")—one for patent misuse, and one for inequitable conduct that renders U.S. Patent No. 8,542,880 ("the '880 patent") unenforceable—and a new counterclaim under the Clayton Act ("the Antitrust Counterclaim").

The New Patent Defenses and Antitrust Counterclaim are based on materials that GAF received since filing its original Answer on December 27, 2022 (Dkt. No. 105), including: (i) multiple versions of a software user guide published by Pictometry ("the EFS User Guides"); ███. The grounds for the New Patent Defenses and Antitrust Counterclaim are summarized below:

- *Inequitable Conduct.* GAF's inequitable conduct defense and counterclaim against the '880 patent is based on Pictometry's failure to disclose published Pictometry user guides describing Pictometry's own technology to the U.S. Patent & Trademark Office ("PTO"), in violation of the duty of candor owed to the PTO. Under Plaintiffs' interpretation of the '880 patent, the EFS User Guides disclose (either alone or with other references) all elements of at least one '880 patent claim. If those had been disclosed to the PTO during prosecution of the '880 patent applications, the asserted claims would not have issued. GAF therefore has plausibly alleged inequitable conduct that renders the '880 patent unenforceable. *See Probert v. Clorox Co.*, 258 F.R.D. 491, 494-95 (D. Utah 2009).

- *Patent Misuse.* GAF's patent misuse defense and counterclaim are based on ███

---

[1]      Pursuant to DUCivR15-1(a), GAF has attached the FAAC as Exhibit A, and a redlined version of the FAAC comparing it with GAF's original Answer & Counterclaims as Exhibit B.

 This defense appears to be similar to one that the Court allowed, over Plaintiffs' opposition, in the *Nearmap* Action.[2] GAF therefore has plausibly alleged that patent misuse bars Plaintiffs' infringement claims. *See, e.g., Zenith Radio Corp. v. Hazeltine Res., Inc.*, 395 U.S. 100, 135-36 (1969) (patent misuse bars using patent "leverage" to "extend the monopoly of [a] patent to derive a benefit not attributable to use of the patent's teachings").

- *Antitrust.* The Antitrust Counterclaim

As detailed in the FAAC, Plaintiffs' anticompetitive conduct has also harmed competition, consumers (by restricting output and leading to higher-priced products), and interstate commerce, including in this District. GAF therefore has plausibly alleged a counterclaim under the Clayton Act for violations of 15 U.S.C. § 1.

GAF has timely moved for leave to amend, and Plaintiffs will suffer no unfair prejudice if the FAAC is filed, particularly given the relative early stage of this case (in which the parties have yet to agree on a document production protocol, have taken no depositions, and have nearly six months remaining in fact discovery). GAF's motion should therefore be granted.

## II.    BACKGROUND

Plaintiffs' First Amended Complaint ("FAC") alleges that GAF's "QuickMeasure roof reports and the software used to generate these reports" infringe nine patents ("the Asserted Patents"), including the '880 patent. (Dkt. No. 11, ¶¶ 1, 8–16.) GAF did not develop the "third-party proprietary" software that Plaintiffs accuse of infringement, and does not generate

---

[2] *Eagle View Techs. et al. v. Nearmap US, Inc.*, No. 2:21-cv-283-TS-DAO, ("the *Nearmap* Action") ECF No. 267 (D. Utah Mar. 14, 2023) (granting leave to add defense of patent misuse).

2

QuickMeasure reports; instead, GAF purchases QuickMeasure reports from third-party Pushpin. (Dkt. No. 32-2, ¶¶ 5, 6.) Those reports are white-labeled with GAF branding. (*Id.*, ¶ 6.)

On December 27, 2022, GAF filed its Answer. (Dkt. No. 105.) On February 23, 2023, GAF served its First Set of Requests for Production ("the RFPs") seeking, *inter alia*, █████ ████████████████████ and all versions of the EFS User Guides dated prior to May 22, 2008. On March 27, 2023, Plaintiffs objected and responded to the RFPs, but failed to produce any documents at that time. After GAF reiterated its request for production of the EFS User Guides and ███████████████████, Plaintiffs did so on April 6, 2023.[3]

The Court's Scheduling Order designated April 18, 2023, as the last day to file motions to amend pleadings.[4] (Dkt. No. 111.) Fact discovery is ongoing and will not close until October 3, 2023. (*See id.*) The Court has not set a trial date.

### III.    LEGAL STANDARD

Because GAF has moved to file its amended pleading by the deadline for doing so in the Court's Scheduling Order, Rule 15(a)(2) applies, and provides that courts should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue . . . of the amendment,

---

[3] On July 8, 2022, over Plaintiffs' vigorous opposition, this Court granted a motion to compel production of the confidential ██████████████ in the *Nearmap* Action (Dkt. No. 93). GAF had never seen the ████████████ prior to April 6, 2023.

[4] On April 14, 2023, GAF notified Plaintiffs during a meet-and-confer that it intended to file a FAAC. On April 17, 2023, GAF provided Plaintiffs with additional details regarding the new claims in the FAAC, but because of the timing of the production of documents relied upon in the FAAC, was unable to share the complete FAAC before filing. On April 18, 2023, Plaintiffs notified GAF that they could not consent to the FAAC without additional information.

futility of amendment etc.—the leave [to amend pleadings] sought should, as the rules require, be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks omitted); *see also Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

IV.    ARGUMENT

A.  The FAAC Sufficiently & Timely Pleads Inequitable Conduct.

Because inequitable conduct necessarily involves an allegation of fraud, it must be pleaded with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *See, e.g.*, *Sanders v. Mosaic Co.*, 418 F. App'x 914, 918 (Fed. Cir. 2011). An inequitable conduct defense must include "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009). Additionally, when "pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material . . . omission committed before the PTO." *Id.* at 1327. As explained below, the FAAC satisfies each of the foregoing requirements. In addition, GAF promptly asserted this defense within the deadline to amend pleadings under the Scheduling Order, and just twelve days after it first received copies of several versions of the EFS User Guide on April 6, 2023.

1.  Pictometry Withheld Highly Material EFS User Guides

As GAF explains in the FAAC and Exhibit 5 thereto, Pictometry withheld *four versions* of the highly material EFS User Guide (which, upon information and belief, were publicly accessible and widely disseminated) from the PTO. (*See* FAAC, ¶ 270.)

4

While no prior art was disclosed to the PTO during the prosecution of the '880 patent application, numerous prior art references were disclosed in the preceding "parent" application. (*Id.*, ¶¶ 270-72.)  Two of those references ***mentioned*** early versions of Pictometry's EFS software, and yet contained only generic, off-handed references to that software, which were insufficient for any meaningful comparison between that software and the then-pending claims of the '880 patent.  (*Id.*, ¶ 272.)  One reference mentions the software in a single sentence, and neither mentions the EFS software's roof measurement capability—*i.e.*, the functionality most obviously related to the '880 patent.  (*Id.*, ¶ 270.)  No reference disclosed to the PTO describes any of the EFS software's technical features in the manner and level of detail that the EFS User Guides do.  Therefore, the withheld EFS User Guides are material and not cumulative to any prior art disclosed during prosecution.  *See, e.g.*, *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 768 F.3d 1185, 1190 (Fed. Cir. 2014) (affirming inequitable conduct for omission of user manual and photograph of prior art system despite disclosure of article describing certain features of that system and noting that "[p]artial disclosure of material information about the prior art to the PTO cannot absolve a patentee of intent if the disclosure is intentionally selective").

### 2. The Named Inventors of the '880 Patent and Pictometry's CTO Must Have Known of the EFS User Guides.

Four former Pictometry employees were closely involved with the prosecution of the '880 patent and its parent application: the three named inventors (Dale R. Thornberry, Chris T. Thornberry, and Mark F. Garringer) and Pictometry's former Chief Technology Officer ("CTO"), Stephen Schultz (collectively, the "Pictometry Patent Team").  The entire Pictometry Patent Team owed a duty of candor to the PTO.  (*Id.*, ¶ 272.)   It is reasonable to infer that they knew about the EFS User Guides, at least (i) because they worked for Pictometry, and the EFS

5

software was one of Pictometry's principal products, and (ii) given the sheer number of EFS User Guide versions. (*Id.*, ¶ 263.) This is particularly true for Mr. Schultz, who co-founded Pictometry and was serving as its CTO at the time of prosecution. (*Id.*)

### 3. It is Reasonable to Infer That the Pictometry Patent Team Withheld the EFS User Guides with Intent to Deceive the PTO.

It is reasonable to infer that the Pictometry Patent Team not only knew about the EFS User Guides, but also knew of their relevance to prosecution of the '880 Patent, and withheld them with the specific intent to deceive. While the Pictometry Patent Team disclosed two references that mentioned Pictometry's EFS software, those were too generic to allow any meaningful comparison between the EFS software and the claims of the '880 patent. (FAAC, ¶ 270.) And yet the disclosure of those references supports the inference that the Pictometry Patent Team knew that the EFS software was material to the prosecution of the '880 patent applications, and nonetheless withheld the only prior art that would sufficiently describe it— knowing that if they had disclosed the EFS User Guides, the '880 claims would not have issued.

At the pleading stage, GAF "need only allege facts to reasonably infer a deliberate intent to deceive." *Sweet Petunia, Inc. v. Stampin' Up! Inc.*, No. 2:18-cv-00796-TS-CMR, 2021 U.S. Dist. LEXIS 78486, at *12 (D. Utah Jan. 22, 2021). It has done so here. This District has held that knowledge of the withheld reference's "relevance to the prosecution" allows an inference of a deliberate intent to deceive the patent office in pleadings. *Lifetime Prods. v. Russell Brands, LLC*, No. 1:12-cv-00026-DN, 2015 U.S. Dist. LEXIS 186960, at *9 (D. Utah Sept. 25, 2015). GAF has pleaded specific facts supporting just such an inference. (*See* FAAC, ¶ 271.)

GAF thus meets Rule 9(b)'s requirements for pleading inequitable conduct. In support of its claim, GAF has identified the "who" (the Pictometry Patent Team), "what" (the EFS User

Guides), "when" (during the prosecution of the '880 patent and its parent application), "where" (PTO), and "how" (withholding EFS User Guides while acknowledging the materiality of the EFS software, thus evidencing deliberate intent to device the PTO).

### B.  GAF Sufficiently and Timely Pleads Patent Misuse

This Court has already found that a patent misuse defense asserted in a separate litigation (in which Plaintiffs assert infringement of the same patents asserted against GAF here) was adequately pleaded, despite Plaintiffs' arguments to the contrary.  (*Nearmap* Action, Dkt. No. 267 at 4.)  While GAF has never seen the unredacted version of the patent misuse defense asserted by Nearmap in the *Nearmap* Action, ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ (*See Nearmap* Action, Dkt. Nos. 107, 118.)  And GAF's patent misuse defense appears to be based on the same theory as Nearmap's—*i.e.*, "EagleView impermissibly broadened the scope of its patents by 'conditioning a settlement . . . on the condition that Verisk stop selling certain unaccused products that compete with EagleView.'"  (*Nearmap* Action, Dkt No. 267 at 4.)  GAF has timely sought leave to assert patent misuse just 12 days after first seeing ▮▮▮▮▮▮, and roughly six months before the close of fact discovery.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7



(*Id.*, ¶ 285.) Those facts support a plausible and timely claim for patent misuse.

### C. GAF Sufficiently and Timely Pleads a Sherman Act Violation

GAF's Antitrust Counterclaim is evidenced ████████████████. (*See* FAAC, Ex. 6.) GAF timely sought leave to file within 12 days of its receipt of ████████, and by the deadline to move to amend. (Dkt. No. 111 at 2.)

At the pleading stage, "[t]o state a claim for a violation of [Section 1 of the Sherman Act,] the plaintiff must allege facts which show: the defendant entered a contract, combination or conspiracy that unreasonably restrains trade in the relevant market." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1027 (10th Cir. 1992). Some restraints

of trade "are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *N. Pac. R. Co. v. United States*, 356 U.S. 1, 5 (1958). "[A]n agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition" is presumptively unreasonable. *United States v. Topco Assocs., Inc.* 405 U.S. 596, 608 (1972); *see also Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) (horizontal market allocation agreements are "so inherently anticompetitive that each is illegal *per se* without inquiry into the harm it has actually caused"). Showing the requisite illegal agreement at the pleading stage requires "direct or circumstantial evidence that reasonably tends to prove that [defendants] had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984).

GAF has plausibly stated an antitrust claim by alleging ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████ ████████████████████████ (FAAC, ¶¶ 321-332.)

GAF has also alleged facts that plausibly establish that it has been harmed as a proximate result of Plaintiffs' anticompetitive conduct ████████████████████████ ████████████████████████████████████ ██████████████████████████████ ████████████████████████████████████

9

 (FAAC, ¶¶ 350-366.)  Accordingly, GAF sustained substantial damages of overcharges and lost profits.  (*Id.*, ¶ 367.)[5]

*See Topco Assocs., Inc.* 405 U.S. at 608; *see also F.T.C. v. Actavis, Inc.* 570 U.S. 136, 162 (2013) ("[T]he patent holder—when doing anything, including settling—must act within the scope of the patent. If its actions go beyond the monopoly powers conferred by the patent, we have held that such actions are subject to antitrust scrutiny.").  As discussed above, GAF is a high-volume purchaser of aerial rooftop measurement products, and but for the unlawful agreement, GAF would have been able to ▮.  Plaintiffs' antitrust violations are the proximate cause of that harm to GAF.

## V.    CONCLUSION

For the foregoing reasons, GAF respectfully requests leave to file the FAAC.

---

[5] GAF also alleges that as a proximate result of Plaintiffs' anticompetitive conduct, competition and consumers have been harmed, and interstate commerce affected.  (FAAC, ¶¶ 368-378.)

Dated:  April 18, 2023

/s/ *Michael K. Erickson*

John M. Neukom (*pro hac vice*)
Debevoise & Plimpton LLP
650 California Street
San Francisco, CA 94108
Tel: (415) 738-5719
jneukom@debevoise.com

Edward L. Tulin (*pro hac vice*)
Gish PLLC
41 Madison Ave, Floor 31
New York, NY 10010
Tel: (212) 518-2332
edward@gishpllc.com

Michael K. Erickson (12503)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Ste. 1400
P.O. Box 45385
Salt Lake City, UT 84145-0385
Tel.: 801-532-1500
Fax: 801-532-75438
merickson@rqn.com

*Attorneys for GAF Materials LLC*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of April 2023, a true and correct copy of the foregoing and the exhibits referenced therein was electronically filed with the CM/ECF system of the U.S. District Court for the District of Utah.  The CM/ECF system sent a Notice of Electronic Filing (NEF) to the attorneys of record, who have consented in writing to accept this NEF as service of this document by electronic means.

Dated:  April 18, 2023

*/s/ Megan Kuchenthal*

Megan Kuchenthal
