Juliette P. White, USB #9616
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
JWhite@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES INC., PICTOMETRY INTERNATIONAL CORP., <br><br> Plaintiffs, <br><br> vs. <br><br> GAF MATERIALS LLC, <br><br> Defendant. | **PLAINTIFFS' MOTION TO SEAL DEFENDANT'S MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER AND COUNTERCLAIMS, AND RELATED FILINGS** <br><br> REDACTED VERSION <br><br> Case No. 2:22-cv-00215 <br><br> The Honorable Ted Stewart <br><br> Magistrate Judge Daphne A. Oberg |

1

4891-6627-9007.v5

Plaintiffs Eagle View Technologies, Inc., and Pictometry International Corp. (collectively "EagleView"), pursuant to DUCivR 5-3(b)(2)(C)(i) and the Standard Protective Order that applies in all civil cases in the U.S. District Court for the District of Utah, hereby move this Court for an order permanently sealing certain portions of Defendant GAF Materials, Inc.'s ("GAF") Motion for Leave to File First Amended Answer and Counterclaims (Dkt. 115, the "Motion for Leave"), and related filings.[1]

On April 18, 2023, GAF filed the Motion for Leave, in which it seeks to add allegations purportedly relating to inequitable conduct, patent misuse, and antitrust violations. Dkt. 115. Exhibit A to that motion is a redacted copy of GAF's proposed First Amended Answer to First Amended Complaint and Counterclaims, and Exhibit B is a redline version of the same (collectively, GAF's "Amended Answer"). GAF included in its Amended Answer a detailed section about a confidential settlement agreement between EagleView, on the one hand, and Verisk Analytics, Inc. and Xactware Solutions, Inc. (collectively "Verisk"), on the other (the "Settlement Agreement"). GAF attached the Settlement Agreement as Exhibit 6 to the Amended Answer. The unredacted copies of these materials are currently under seal at Dkt. 117.

EagleView requests that this Court permanently seal the Settlement Agreement and redacted court filings related thereto. These materials should be permanently sealed because (1) disclosure of the highly confidential information contained therein would irreparably harm the competitive interests of both EagleView and non-party Verisk; (2) the Settlement Agreement is not central to the adjudication of this case; and (3) EagleView did not put the Settlement

---

[1] GAF filed its Motion for Leave (Dkt. 115) and Motion for Leave to File Documents Under Seal (Dkt. 116) on April 18, 2023.

4891-6627-9007.v5

Agreement—or any related correspondence—at issue in this case. Given that Verisk is a non-party to this litigation, the potential harm to Verisk—who operated under the legitimate expectation that the Settlement Agreement would remain confidential—is even more pronounced. *See generally* Ex. 1 (Declaration of Maroun S. Mourad, President of Verisk Claim Solutions) (hereinafter, "Mourad Decl.").[2]

EagleView further requests that this Court seal portions of GAF's Amended Answer that discuss and describe multiple versions of EagleView's software user guides ("EFS User Guides"). These materials should be permanently sealed because the EFS User Guides include highly sensitive and competitive technical information, the disclosure of which would irreparably harm EagleView's competitive interests.

**<u>RELEVANT LEGAL STANDARDS</u>**

The common-law right of access to judicial records is not absolute. The "'presumption of access . . . can be rebutted if countervailing interests heavily outweigh the public interests in access.'" *Dovbysh v. Mutual of Enumclaw Insurance Co.*, No. 2:21-cv-690-HCN-DBP, 2022 WL 17128816, at *2 (D. Utah Nov. 22, 2022).

A party may overcome the presumption of public access where, for example, the records contain "business information that might harm a litigant's competitive standing," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); or information which "could harm the competitive

---

[2] The Mourad Decl. was originally filed in a second case pending before this Court captioned, *EagleView Technologies, Inc. et al. v. Nearmap USA, Inc., et al*, Case No. 2:21-cv-00283-TS-DAO, asserting certain of the same patents against other defendants. The Mourad Decl. deals with the same settlement agreement, and for that reason, is supportive of the same confidentiality issues raised here.

3

interests of third parties," *Hershey v. ExxonMobil Oil Corp.*, 550 F. App'x 566, 574 (10th Cir. 2013). *See also Braun v. Medtronic Sofamor Danek, Inc.*, 719 Fed. App'x 782, 801 n.8 (10th Cir. 2017) ("Even a cursory review of the documents in question confirms that they do contain sensitive, proprietary information concerning Medtronic's business practices and potentially sensitive technical and financial data.... For most of the documents in question, we see no reason why they should not be sealed."). "Confidential financial information is often sealed where its disclosure could cause competitive harm." *AH Aero Service, LLC v. Heber City*, 2020 WL 5135819 at *5 (D. Utah Oct. 19, 2020).

The Tenth Circuit has recognized that "preserving the confidentiality of settlement agreements may encourage settlement, and that denying a motion to seal may chill future settlement discussions." *Colony Insurance Company v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012); *see also XPO Logistics, Inc. v. Leeway Global Logistics, LLC*, No. 2:15-cv-00703-CW, 2018 WL 400769, at *5 (D. Utah. Jan. 12, 2018) (finding that "[t]he confidentiality terms of the settlement played a significant role in these two parties' decision to settle all claims between them, is the result of fair bargaining between two well-represented parties, and embodies a reasonable compromise," and approving confidential FLSA settlement).

## ARGUMENT

### I.    THE SETTLEMENT AGREEMENT

#### A.    Real and Substantial Interests Justify Sealing the Documents

The Settlement Agreement and the court filings which cite, quote, and describe the same, contain highly confidential business information—including (1) the obligations of EagleView and non-party Verisk, (2) the amount of the settlement between EagleView and non-party Verisk, and

4891-6627-9007.v5

(3) various representations and warranties—that could harm EagleView's and non-party Verisk's competitive standing. Here, the competitive harm to EagleView and non-party Verisk heavily outweighs the public interest in access. Further, unsealing these settlement materials that EagleView and non-party Verisk understood and expected to be maintained confidentially would chill future settlement discussions.

First, GAF—and other competitors—knowing what non-party Verisk, on the one hand, and EagleView, on the other, ███████████████████████████████████ ████████████ (*see, e.g.*, GAF's Motion for Leave, at 1–2, 7–10; GAF's Amended Answer, ¶¶ 283–293, 320–339, 356–369, 372–375, 377, 450, 453–455), provides an unfair competitive advantage because ████████████████████████████████████████████. *See* Mourad Decl., ¶ 8. In addition, ████████████████████████████████ ███████████████████████████ would be useful to competitors. *See, e.g.*, Motion for Leave, at 7–8; Amended Answer, ¶¶ 286–287; *see also* Mourad Decl., ¶ 10. *Braun*, 719 Fed. App'x at 801 n.8 (sealing documents that contain sensitive, proprietary information concerning business practices, as well as potentially sensitive technical and financial data).

Given that Verisk is a non-party to this litigation, the harm is even more pronounced—it has no interest in the outcome of this action; it did not select this venue; it did not inject the Settlement Agreement into this litigation; and it operated under the legitimate expectation (and desire) that the Settlement Agreement would remain confidential. *See Hershey*, 550 F. App'x at 574; *see generally* Mourad Decl., Ex. 1.

Second, GAF having access to the Settlement Agreement (*see, e.g.*, GAF's Motion for Leave, at 1–2, 7–10; GAF's Amended Answer, ¶¶ 283–293, 320–339, 356–369, 372–375, 377,

5

4891-6627-9007.v5

450, 453–455) would give it an unfair advantage (i) in terms of potentially resolving this case, and (ii) in the market as it competes against EagleView (and potentially non-party Verisk) by knowing what it could be worth to continue infringing. *See* Mourad Decl., ¶ 11; *see also AH Aero Service*, 2020 WL 5135819 at *5 (sealing highly confidential financial information). Other competitors having access to the settlement agreement would be unfair because the competitors would have confidential data points regarding "efficient infringement."

Third, there are confidential ███████████████████ (*see* Amended Answer, Ex. 6, ¶¶ 6(c)) that could provide competitive intelligence as to ███████████████████



███████████████████ *See* Mourad Decl., ¶ 12.

Last, both EagleView and non-party Verisk had a legitimate expectation in the confidentiality of the Settlement Agreement and the negotiations. The Settlement Agreement states that it is understood to be confidential, and it is evident that EagleView and non-party Verisk desire it to stay so. The publication of these materials would have the potential to chill future settlements and would disincentivize future settlement discussions between parties. *See XPO Logistics*, 2018 WL 400769, at *5 (citing and quoting *Colony*, 698 F.3d at 1241).

**B.      The Settlement Agreement Is Not Central to the Adjudication of This Case.**

The Settlement Agreement is not relevant to the merits of this case. This is a patent infringement litigation, not a breach of contract dispute arising out of the Settlement Agreement. The merits of this case will be decided based on whether the accused GAF products infringe the claims of the asserted patents. Even if the Settlement Agreement were marginally relevant to damages, which EagleView disputes (at least because the Settlement Agreement is not a comparable license), that would not override the competitive concerns expressed above. And, the

6

sealing of the Settlement Agreement and these related materials would not impede the ability of a damages expert to opine on the proper among of patent infringement damages.

Further, as discussed in detail below, EagleView did not put the Settlement Agreement at issue in this case. *See infra* Section III.C.

### C. EagleView Did Not Put the Settlement Agreement at Issue in This Case.

EagleView respectfully submits that there is an important distinction between referencing public facts regarding the outcome of the Verisk litigation, which is what it has done here, and putting at-issue confidential information relating to a settlement agreement. Specifically, EagleView references to the "successful litigation" against Verisk in its Complaint refer to the judgment in EagleView's favor. *See, e.g.*, First Amended Complaint, Dkt. 11, ¶¶ 57, 76, 99, 120, 147, 169, 199, 226, 248 (citing https://www.law360.com/articles/1355754/eagleview-sadventures-in-ip-earn-co-375m-enhanced-win). There are no references whatsoever in the First Amended Complaint to the subsequent Settlement Agreement. *See generally id.*

While, in EagleView's First Amended Complaint, it referenced its prior "successful litigation," it has not put the Settlement Agreement at issue here. Rather, it is GAF, not EagleView, who has introduced these materials through its Motion for Leave (which, at the time of this motion, has not yet been granted).

*Colony Insurance Company v. Burke*, 698 F.3d 1222 (10th Cir. 2012) is instructive. There, the parties to the settlement agreements at issue were the parties in the litigation. *Id.* at 1227, 1241. The settlements themselves were at the center of the controversy through a garnishment counterclaim, and a motion for summary judgment on that counterclaim. *Id.* ("The parties themselves placed these settlements at the center of this controversy, in particular through the

4891-6627-9007.v5

Estate's garnishment counterclaim and Colony's motion for summary judgment on that counterclaim."). Further, "[n]either party has submitted any specific argument or facts indicating why the confidentiality of their settlement agreements outweighs the presumption of public access." *Id.* at 1242. Under these circumstances, the Court ruled that the parties failed to meet their burden for sealing the settlement agreements. *Id.*

By contrast, the Settlement Agreement here is between EagleView (a party) and Verisk (a non-party), (*see generally* Mourad Decl.), while GAF is the party that is endeavoring to inject the Settlement Agreement into the case. As explained above, EagleView refers to the successful prior litigation in its First Amended Complaint, but EagleView has in no way put the Settlement Agreement, its terms, or the related negotiations at issue.

## II.   THE EFS USER GUIDES

The EFS User Guides, and the court filings which cite, quote, and describe the same, contain highly sensitive technical information that could harm EagleView's competitive standing. Here, the competitive harm to EagleView heavily outweighs the public interest in access.

Allowing GAF—and other competitors—to learn the information contained in the EFS User Guides (*see, e.g.*, GAF's Amended Answer, ¶¶ 271–273), provides an unfair competitive advantage because it would inform competitors about functions and features EagleView considers important. *See Ensminger v. Credit L. Ctr., LLC*, No. 19-CV-02147-TC-JPO, 2021 WL 8567979, at *1 (D. Kan. May 14, 2021) ("Recognizing that sealing records can be appropriate where the records contain 'information that might harm a litigant's competitive standing'" (quoting *Lazzo v. Frontier WealthMgmt., LLC*¸ No. 20-CV-1075-DDC, 2020 WL 1330696, at *2 (D. Kan. Mar. 23, 2020))). Further, knowing the proprietary details about EagleView's software would likewise be

8

competitively harmful. *Braun*, 719 Fed. App'x at 801 n.8 (sealing documents that contain sensitive, proprietary information concerning business practices, as well as potentially sensitive technical and financial data).

The requested redactions and sealed filings are narrowly tailored to seek protection only of specific information that pertains directly to or reflects EagleView's confidential technical information. Good cause exists to continue to protect this highly confidential and sensitive business information.

## CONCLUSION

For all of the foregoing reasons, EagleView respectfully requests that the Court grant its motion to seal (1) the Settlement Agreement (Dkt. 115, Ex. 6), (2) the redacted court filings relating to the Settlement Agreement (Dkt. 115, Exhibits A and B), and (3) the redacted court filings relating to EagleView's EFS User Guides (Dkt. 115, Exhibits A and B).

Dated:  April 25, 2023

/s/ *Juliette P. White*
Juliette P. White
Sarah Jenkins Dewey
Patrick J. Neville
Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Fax: 801.536.6111
JWhite@parsonsbehle.com
sdewey@parsonsbehle.com
pneville@parsonsbehle.com
ecf@parsonsbehle.com

L. Kieran Kieckhefer
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor

4891-6627-9007.v5

San Francisco, CA 94105
Telephone: 415.616.1100
Fax: 415.616.1339
kieran.kieckhefer@shearman.com

Lillian J. Mao
Yue (Joy) Wang
SHEARMAN & STERLING LLP
1460 El Camino Real, 2nd Floor
Menlo Park, CA 94025
Telephone: 650.838.3600
Fax: 650.838.3699
lillian.mao@shearman.com
joy.wang@shearman.com

Eric S. Lucas
SHEARMAN & STERLING LLP
599 Lexington Ave.
New York, NY 10022
Telephone: 212.838.4955
Fax: 646.848.4955
eric.lucas@shearman.com

*Attorneys for Plaintiffs Eagle View
Technologies, Inc. and Pictometry
International Corp.*

10

4891-6627-9007.v5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 25th day of April, 2023, I caused to be electronically filed and served the foregoing PLAINTIFFS' MOTION TO SEAL DEFENDAN'S MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER AND COUNTERCLAIMS, AND RELATED FILINGS with the Clerk of the Court using the Court's electronic filing system, which sent notification of such filing to all attorneys listed on the docket.

/s/ Juliette P. White

*Attorney for Plaintiffs*

4891-6627-9007.v5