Michael K. Erickson (12503)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Ste. 1400
P.O. Box 45385
Salt Lake City, UT 84145-0385
Tel.: 801-532-1500
Fax: 801-532-7543
merickson@rqn.com

*Attorney for Defendant & Counterclaim-Plaintiff*
*Additional counsel listed in signature block*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC., and PICTOMETRY INTERNATIONAL CORP., *Plaintiffs*, v. GAF MATERIALS LLC, *Defendant*. | FIRST AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS <br><br> Case No.: 2:22-cv-00215-TS-DAO <br><br> The Honorable Ted Stewart <br> Magistrate Judge Daphne A. Oberg |

Defendant GAF Materials LLC ("GAF") respectfully submits this First Amended Answer

and Counterclaims ("Answer") in response to the First Amended Complaint (Dkt. No. 11,

"FAC") filed by Plaintiffs Eagle View Technologies, Inc. ("Eagleview") and Pictometry

International Corp. ("Pictometry") (collectively, "Plaintiffs").

### NATURE OF ACTION

1.      GAF admits that Plaintiffs purport to bring an action for patent infringement in

the First Amended Complaint.  GAF denies the remaining allegations in paragraph 1 of the FAC.

2.      GAF admits that GAF-branded QuickMeasure reports can be ordered for

residential, commercial, or multi-family buildings.  GAF otherwise denies the allegations in paragraph 2 of the FAC.

3.      GAF denies the allegations in paragraph 3 of the FAC.

## THE PARTIES

4.      GAF denies that Eagleview was the first remote aerial roof measurement service. GAF lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 4 of the FAC, and therefore denies them.

5.      GAF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the FAC, and therefore denies them.

6.      GAF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the FAC, and therefore denies them.

7.      GAF admits that it is a Delaware limited liability company with a regular and established place of business at 1 Campus Drive, Parsippany-Troy Hills, New Jersey 07054. GAF denies the remaining allegations in paragraph 7 of the FAC.

## PATENTS-IN-SUIT

8.      GAF admits that, according to Exhibit 1 to the FAC, U.S. Patent No. 8,078,436 ("the '436 patent") is entitled "Aerial Roof Estimation Systems and Methods," and was issued by the U.S. Patent & Trademark Office on December 13, 2011.  GAF further admits that Plaintiffs have attached what they represent is a true and correct copy of the '436 patent as Exhibit 1 to the FAC.  GAF further admits that a document that appears to be the reexamination certificate for the '436 patent is appended at the end of Exhibit 1.  GAF denies that any claims of the '436 patent are valid or enforceable.  GAF lacks knowledge or information sufficient to form a belief

2

as to the truth of the remaining allegations in paragraph 8 of the FAC, and therefore denies them.

9.      GAF lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 9 of the FAC, and therefore denies them.

10.     GAF admits that, according to Exhibit 2 to the FAC, U.S. Patent No. 8,170,840 ("the '840 patent") is entitled "Pitch Determination Systems and Methods for Aerial Roof Estimation," and was issued by the U.S. Patent & Trademark Office on May 1, 2012.  GAF further admits that Plaintiffs have attached what they represent is a true and correct copy of the '840 patent as Exhibit 2 to the FAC.  GAF lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10 of FAC, and therefore denies them.

11.     GAF denies that any claims of the '840 patent are valid and enforceable.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 11 of the FAC, and therefore denies them.

12.     GAF admits that, according to Exhibit 3 to the FAC, U.S. Patent No. 8,209,152 ("the '152 patent") is entitled "Concurrent Display Systems and Methods for Aerial Roof Estimation," and was issued by the U.S. Patent & Trademark Office on June 26, 2012.  GAF further admits that Plaintiffs have attached what they represent is a true and correct copy of the '152 patent as Exhibit 3 to the FAC.  GAF lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 12 of FAC, and therefore denies them.

13.     GAF denies that any claims of the '152 patent are valid and enforceable.  GAF lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 13 of FAC, and therefore denies them.

14.     GAF admits that, according to Exhibit 4 to the FAC, U.S. Patent No. 8,542,880 ("the '880 patent") is entitled "System and Process for Roof Measurement Using Aerial Imagery," and was issued by the U.S. Patent & Trademark Office on September 24, 2013.  GAF further admits that Plaintiffs have attached what they represent is a true and correct copy of the '880 patent as Exhibit 4 to the FAC.  GAF lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 14 of FAC, and therefore denies them.

15.     GAF denies that any claims of the '880 patent are valid or enforceable.  GAF lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 15 of FAC, and therefore denies them.

16.     GAF admits that, according to Exhibit 5 to the FAC, U.S. Patent No. 8,670,961 ("the '961 patent") is entitled "Aerial Roof Estimation Systems and Methods," and was issued by the U.S. Patent & Trademark Office on March 11, 2014.  GAF further admits that Plaintiffs have attached what they represent is a true and correct copy of the '961 patent as Exhibit 5 to the FAC. GAF lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 16 of FAC, and therefore denies them.

17.     GAF denies the allegations in paragraph 17 of the FAC.

18.     GAF admits that, according to Exhibit 6 to the FAC, U.S. Patent No. 9,129,376 ("the '376 patent") is entitled "Pitch Determination Systems and Methods for Aerial Roof Estimation," and was issued by the U.S. Patent & Trademark Office on September 8, 2015.  GAF further admits that Plaintiffs have attached what they represent is a true and correct copy of the

'376 patent as Exhibit 6 to the FAC.  GAF lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 18 of FAC, and therefore denies them.

19.     GAF denies that any claims of the '376 patent are valid or enforceable.  GAF lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 19 of FAC, and therefore denies them.

20.     GAF admits that, according to Exhibit 7 to the FAC, U.S. Patent No. 9,514,568 ("the '568 patent") is entitled "Aerial Roof Estimation Systems and Methods," and was issued by the U.S. Patent & Trademark Office on December 6, 2016.  GAF further admits that Plaintiffs have attached what they represent is a true and correct copy of the '568 patent as Exhibit 7 to the FAC.  GAF lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20 of FAC, and therefore denies them.

21.     GAF denies the allegations in paragraph 21 of the FAC.

22.     GAF admits that, according to Exhibit 8 to the FAC, U.S. Patent No. 10,528,960 ("the '960 patent") is entitled "Aerial Roof Estimation Systems and Methods," and was issued by the U.S. Patent & Trademark Office on January 7, 2020.  GAF further admits that Plaintiffs have attached what they represent is a true and correct copy of the '960 patent as Exhibit 8 to the FAC.  GAF lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 22 of FAC, and therefore denies them.

23.     GAF denies the allegations in paragraph 23 of the FAC.

24.     GAF admits that, according to Exhibit 9 to the FAC, U.S. Patent No. 10,685,149 ("the '149 patent") is entitled "Pitch Determination Systems and Methods for Aerial Roof

Estimation," and was issued by the U.S. Patent & Trademark Office on June 16, 2020.  GAF further admits that Plaintiffs have attached what they represent is a true and correct copy of the '149 patent as Exhibit 9 to the FAC.  GAF lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 24 of FAC, and therefore denies them.

25.     GAF denies the allegations in paragraph 25 of the FAC.

26.     GAF denies the allegations in paragraph 26 of the FAC.

27.     GAF denies the allegations in paragraph 27 of the FAC.

28.     GAF admits that paragraph 28 of the FAC appears to accurately quote from the '436 patent, the '568 patent, the '960 patent, and the '961 patent.  GAF denies the remaining allegations in paragraph 28 of the FAC.

29.     GAF admits that paragraph 29 of the FAC appears to accurately quote from the '376 patent, the '840 patent, the '880 patent, the '152 patent, and the '149 patent.  GAF denies the remaining allegations in paragraph 29 of the FAC.

30.     GAF refers to the Patents-in-Suit for a true and correct recitation of any quotations that appear in paragraph 30 of the FAC.  GAF otherwise denies the allegations in paragraph 30 of the FAC.

31.     GAF denies the allegations in paragraph 31 of the FAC.

32.     GAF admits that paragraph 32 of the FAC appears to accurately quote from Exhibit 10 to the FAC.  GAF otherwise denies the allegations in paragraph 32 of the FAC.

33.     GAF admits that paragraph 33 of the FAC appears to accurately quote from Exhibit 10 to the FAC.  GAF otherwise denies the allegations in paragraph 33 of the FAC.

34.     GAF admits that paragraph 34 of the FAC appears to accurately quote from Exhibit 11 to the FAC.  GAF otherwise denies the allegations in paragraph 34 of the FAC.

35.     GAF admits that paragraph 35 of the FAC appears to accurately quote from Exhibit 12 to the FAC.  GAF otherwise denies the allegations in paragraph 35 of the FAC.

36.     GAF admits that paragraph 36 of the FAC appears to accurately quote from Exhibit 13 to the FAC.  GAF otherwise denies the allegations in paragraph 36 of the FAC.

37.     GAF admits that paragraph 37 of the FAC appears to accurately quote from Exhibit 10 to the FAC.  GAF otherwise denies the allegations in paragraph 37 of the FAC.

## JURISDICTION AND VENUE

38.     GAF admits the allegations in paragraph 38 of the FAC.

39.     GAF admits the allegations in paragraph 39 of the FAC.

40.     GAF admits that the U.S. District Court for the District of New Jersey had personal jurisdiction over GAF; that GAF has substantial, continuous, and systematic contacts with the State of New Jersey; that GAF has solicited business in, transacted business within, and attempted to derive financial benefit from residents of New Jersey, on a substantial and not isolated basis; that GAF maintains a regular and established place of business in New Jersey; that GAF has employees in the State of New Jersey; and that GAF's "global headquarters" is located in Parsippany, New Jersey.  GAF otherwise denies the allegations in paragraph 40 of the FAC.

41.     GAF admits that it maintains a regular and established place of business in the District of Utah.  GAF otherwise denies the allegations in paragraph 41 of the FAC.

## COUNT I – INFRINGEMENT OF THE '436 PATENT BY GAF

42.     In response to paragraph 42 of the FAC, GAF incorporates by reference its

7

responses to paragraphs 1-41 of the FAC as if fully set forth herein.

43. GAF admits that the face of the '436 Patent identifies its issuance date as December 13, 2011.  GAF otherwise denies the allegations in paragraph 43 of the FAC.

44. GAF denies the allegations of paragraph 44 of the FAC.

45. GAF denies the allegations of paragraph 45 of the FAC.

46. GAF admits that paragraph 46 recites claim 1 of the '436 patent.  To the extent there are any further allegations in paragraph 46 of the FAC, GAF denies them.

47. GAF admits that the process of generating GAF-branded QuickMeasure reports involves a computer.  GAF otherwise denies the allegations of paragraph 47 of the FAC.

48. GAF admits that GAF-branded QuickMeasure reports can be requested through a website.  GAF otherwise denies the allegations of paragraph 48 of the FAC.

49. GAF admits that GAF-branded QuickMeasure reports include estimates for roof measurements.  GAF lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 49 of the FAC, and therefore denies them.

50. GAF denies the allegations of paragraph 50 of the FAC.

51. GAF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51, and therefore denies them.

52. GAF admits that GAF-branded QuickMeasure reports include different views of roofs.  GAF otherwise denies the allegations in paragraph 52 of the FAC.

53. GAF admits that GAF-branded QuickMeasure reports include estimates for roof measurements.  GAF lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 53, and therefore denies them.

54.     GAF admits that GAF-branded QuickMeasure reports generally contain information regarding slope, area, and length of edges of roof sections.  GAF lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 54, and therefore denies them.

55.     GAF admits that GAF-branded QuickMeasure reports generally contain information regarding the slope, area, and length of edges of roof sections, and annotated views. GAF otherwise denies the allegations in paragraph 55 of the FAC.

56.     GAF admits that GAF-branded QuickMeasure reports utilize different colors. GAF otherwise denies the allegations in paragraph 56 of the FAC.

57.     GAF admits that it has had knowledge of the '436 patent since no later than May 4, 2021.  GAF otherwise denies the allegations in paragraph 57 of the FAC.

58.     GAF denies the allegations in paragraph 58 of the FAC.

59.     GAF denies the allegations in paragraph 59 of the FAC.

60.     GAF denies the allegations in paragraph 60 of the FAC.

61.     GAF denies the allegations in paragraph 61 of the FAC.

62.     GAF denies the allegations in paragraph 62 of the FAC.

### COUNT II – INFRINGEMENT OF THE '840 PATENT BY GAF

63.     In response to paragraph 63 of the FAC, GAF incorporates by references its responses to paragraph 1-62 as if fully set forth herein.

64.     GAF admits that the face of the '840 Patent identifies its issuance date as May 1, 2012.  GAF otherwise denies the allegations in paragraph 64 of the FAC.

65.     GAF denies the allegations in paragraph 65 of the FAC.

66. GAF denies the allegations in paragraph 66 of the FAC.

67. GAF admits that paragraph 67 recites claim 1 of the '840 patent. To the extent there are any further allegations in paragraph 67 of the FAC, GAF denies them.

68. GAF denies the allegations in paragraph 68 of the FAC.

69. GAF admits that the process of generating GAF-branded QuickMeasure reports involves a computer. GAF otherwise denies the allegations in paragraph 69 of the FAC.

70. GAF admits that GAF-branded QuickMeasure reports can be requested through a website. GAF otherwise denies the allegations in paragraph 70 of the FAC.

71. GAF admits that GAF-branded QuickMeasure reports include estimates for roof measurements. GAF lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 71 of the FAC, and therefore denies them.

72. GAF admits that multiple views of buildings are typically depicted in a GAF-branded QuickMeasure report. GAF otherwise denies the allegations in paragraph 72 of the FAC.

73. GAF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73 of the FAC, and therefore denies them.

74. GAF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74 of the FAC, and therefore denies them.

75. GAF admits that paragraph 75 recites a statement from a webinar by Vishal Laddha. GAF lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 75 of the FAC, and therefore denies them.

76. GAF admits that it has been aware of the '840 patent since no later than May 4,

2021.  GAF otherwise denies the allegations in paragraph 76 of the FAC.

77.     GAF denies the allegations in paragraph 77 of the FAC.

78.     GAF denies the allegations in paragraph 78 of the FAC.

79.     GAF denies the allegations in paragraph 79 of the FAC.

80.     GAF denies the allegations in paragraph 80 of the FAC.

81.     GAF denies the allegations in paragraph 81 of the FAC.

**COUNT III – INFRINGEMENT OF THE '152 PATENT BY GAF**

82.     In response to paragraph 82 of the FAC, GAF incorporates by reference its responses to paragraph 1-81 of the FAC as if fully set forth herein.

83.     GAF admits that the face of the '152 patent identifies its issuance date as June 26, 2012.  GAF denies the remaining allegations of paragraph 83 of the FAC.

84.     GAF denies the allegations of paragraph 84 of the FAC.

85.     GAF denies the allegations of paragraph 85 of the FAC.

86.     GAF admits that paragraph 86 of the FAC recites claim 10 of the '152 patent, and that claim 10 depends from claim 1 of the '152 patent.  To the extent there are any further allegations in paragraph 86 of the FAC, GAF denies them.

87.     GAF admits that paragraph 87 of the FAC recites claim 1 of the '152 patent.  To the extent there are any further allegations in paragraph 87 of the FAC, GAF denies them

88.     GAF admits that generating a GAF-branded QuickMeasure report involves a computer.  GAF denies the remaining allegations in paragraph 88 of the FAC.

89.     GAF admits that a GAF-branded QuickMeasure report can be requested through a website.  GAF denies the remaining allegations in paragraph 89 of the FAC.

90.     GAF admits that GAF-branded QuickMeasure reports include estimates for roof measurements.  GAF lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 90 of the FAC, and therefore denies them.

91.     GAF admits that a typical QuickMeasure report includes different views of a roof. GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 91 of the FAC, and therefore denies them.

92.     GAF admits that a typical QuickMeasure report includes different views of a roof. GAF denies the remaining allegations in paragraph 92 of the FAC.

93.     GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 93 of the FAC, and therefore denies them.

94.     GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 94 of the FAC, and therefore denies them.

95.     GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 95 of the FAC, and therefore denies them.

96.     GAF admits that it has marketed GAF-branded QuickMeasure reports as generally available within one hour of the time that they are ordered.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 96 of the FAC, and therefore denies them.

97.     GAF admits that it has marketed GAF-branded QuickMeasure reports as generally available within one hour of the time that they are ordered, and that paragraph 97 includes a statement from a webinar that was made by Vishal Laddha.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 97

of the FAC, and therefore denies them.

98.   GAF admits that the typical GAF-branded QuickMeasure report includes an image of a roof, and a three-dimensional depiction of a roof.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 98 of the FAC, and therefore denies them.

99.   GAF admits that it became aware of the '152 patent no later than May 4, 2021. GAF otherwise denies the allegations in paragraph 99 of the FAC.

100.   GAF denies the allegations in paragraph 100 of the FAC.

101.   GAF denies the allegations in paragraph 101 of the FAC.

102.   GAF denies the allegations in paragraph 102 of the FAC.

103.   GAF denies the allegations in paragraph 103 of the FAC.

104.   GAF denies the allegations in paragraph 104 of the FAC.

### COUNT IV – INFRINGEMENT OF THE '880 PATENT BY GAF

105.   In response to paragraph 105 of the FAC, GAF incorporates by reference its responses to paragraphs 1-104 as if fully set forth herein.

106.   GAF admits that the face of the '880 patent identifies its issuance date as September 24, 2013.  GAF otherwise denies the allegations in paragraph 106 of the FAC.

107.   GAF denies the allegations of paragraph 107 of the FAC.

108.   GAF denies the allegations of paragraph 108 of the FAC.

109.   GAF admits that paragraph 109 of the FAC recites claim 1 of the '880 patent.  To the extent there are any further allegations in paragraph 109 of the FAC, GAF denies them.

110.   GAF denies the allegations of paragraph 110 of the FAC.

13

111. GAF admits that GAF-branded QuickMeasure reports are generated through a process involving a computer. GAF otherwise denies the allegations in paragraph 111 of the FAC.

112. GAF admits that a GAF-branded QuickMeasure report can be requested through a website. GAF otherwise denies the allegations in paragraph 112 of the FAC.

113. GAF admits that GAF-branded QuickMeasure reports include estimates for roof measurements. GAF lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 113 of the FAC, and therefore denies them.

114. GAF admits that, when a GAF-branded QuickMeasure report is ordered through https://quickmeasure.gaf.com, there is a field which allows the individual ordering a report to "[e]nter the address of the property." GAF otherwise denies the allegations in paragraph 114 of the FAC.

115. GAF admits that multiple images of a building are included in the typical GAF-branded QuickMeasure report. GAF otherwise denies the allegations in paragraph 115 of the FAC.

116. GAF denies the allegations in paragraph 116 of the FAC.

117. GAF denies the allegations in paragraph 117 of the FAC.

118. GAF admits that, when a GAF-branded QuickMeasure report is ordered through https://quickmeasure.gaf.com, there is a "Checkout" button that can be clicked. GAF otherwise denies the allegations in paragraph 118 of the FAC.

119. GAF admits that multiple images of a building are included in the typical GAF-branded QuickMeasure report. GAF otherwise denies the allegations in paragraph 119 of the

FAC.

120.     GAF admits that it has been aware of the '880 patent since no later than May 4, 2021.  GAF otherwise denies the allegations in paragraph 120 of the FAC.

121.     GAF denies the allegations in paragraph 121 of the FAC.

122.     GAF denies the allegations in paragraph 122 of the FAC.

123.     GAF denies the allegations in paragraph 123 of the FAC.

124.     GAF denies the allegations in paragraph 124 of the FAC.

125.     GAF denies the allegations in paragraph 125 of the FAC.

### COUNT V – INFRINGEMENT OF THE '961 PATENT BY GAF

126.     In response to paragraph 126 of the FAC, GAF incorporates by reference its responses to paragraphs 1-125 of the FAC as if fully set forth herein.

127.     GAF admits that the face of the '961 patent identifies its issuance date as March 11, 2014.  GAF otherwise denies the allegations in paragraph 127 of the FAC.

128.     GAF denies the allegations in paragraph 128 of the FAC.

129.     GAF denies the allegations in paragraph 129 of the FAC.

130.     GAF admits that paragraph 130 of the FAC recites claim 1 of the '961 patent.  To the extent there are any further allegations in paragraph 130 of the FAC, GAF denies them.

131.     GAF denies the allegations in paragraph 131 of the FAC.

132.     GAF admits that GAF-branded QuickMeasure reports are generated through a process involving a computer.  GAF otherwise denies the allegations in paragraph 132 of the FAC.

133.     GAF admits that a GAF-branded QuickMeasure report can be requested through a

website.  GAF otherwise denies the allegations in paragraph 133 of the FAC.

134.    GAF admits that GAF-branded QuickMeasure reports include estimates for roof measurements.  GAF lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 134 of the FAC, and therefore denies them.

135.    GAF lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 135 of the FAC, and therefore denies them.

136.    GAF lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 136 of the FAC, and therefore denies them.

137.    GAF admits that the typical GAF-branded QuickMeasure reports includes different views of a roof.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 137 of the FAC, and therefore denies them.

138.    GAF lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 138 of the FAC, and therefore denies them.

139.    GAF admits that the typical GAF-branded QuickMeasure report includes different views of a roof.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 139 of the FAC, and therefore denies them.

140.    GAF lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 140 of the FAC, and therefore denies them.

141.    GAF admits that paragraph 141 of the FAC includes a statement from a webinar that was made by Vishal Laddha.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 141 of the FAC, and therefore denies them.

142. GAF admits that the typical GAF-branded QuickMeasure report includes information on roof pitch.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 142 of the FAC, and therefore denies them.

143. GAF admits that the typical GAF-branded QuickMeasure report includes information on roof pitch.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 143 of the FAC, and therefore denies them.

144. GAF admits that the typical GAF-branded QuickMeasure report includes information on roof pitch.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 144 of the FAC, and therefore denies them.

145. GAF admits that the typical GAF-branded QuickMeasure report includes information on multiple roof attributes.  GAF otherwise denies the allegations in paragraph 145 of the FAC.

146. GAF admits that the typical GAF-branded QuickMeasure report includes multiple different colors.  GAF otherwise denies the allegations in paragraph 146 of the FAC.

147. GAF admits that it has been aware of the '961 patent since no later than May 4, 2021.  GAF otherwise denies the allegations in paragraph 147 of the FAC.

148. GAF denies the allegations in paragraph 148 of the FAC.

149. GAF denies the allegations in paragraph 149 of the FAC.

150. GAF denies the allegations in paragraph 150 of the FAC.

151. GAF denies the allegations in paragraph 151 of the FAC.

152. GAF denies the allegations in paragraph 152 of the FAC.

## COUNT VI – INFRINGEMENT OF THE '376 PATENT BY GAF

153.    In response to paragraph 153 of the FAC, GAF incorporates by reference its responses to paragraph 1-152 of the FAC as if fully set forth herein.

154.    GAF admits that the face of the '376 patent identifies its issuance date as September 8, 2015.  GAF denies the remaining allegations in paragraph 154 of the FAC.

155.    GAF denies the allegations in paragraph 155 of the FAC.

156.    GAF denies the allegations in paragraph 156 of the FAC.

157.    GAF admits that paragraph 157 of the FAC recites claim 1 of the '376 patent.  To the extent there are any further allegations in paragraph 157 of the FAC, GAF denies them

158.    GAF admits that GAF-branded QuickMeasure reports are generated through a process involving a computer.  GAF otherwise denies the allegations in paragraph 158 of the FAC.

159.    GAF admits that a GAF-branded QuickMeasure report can be requested through a website.  GAF otherwise denies the allegations in paragraph 159 of the FAC.

160.    GAF admits that GAF-branded QuickMeasure reports include estimates for roof measurements.  GAF lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 160 of the FAC, and therefore denies them.

161.    GAF admits that the typical GAF-branded QuickMeasure report includes different views of a roof.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 161 of the FAC, and therefore denies them.

162.    GAF admits that paragraph 162 of the FAC includes a statement from a webinar that was made by Vishal Laddha.  GAF lacks information or knowledge sufficient to form a

18

belief as to the truth of the remaining allegations in paragraph 162 of the FAC, and therefore denies them.

163.    GAF lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 163 of the FAC, and therefore denies them.

164.    GAF lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 164 of the FAC, and therefore denies them.

165.    GAF admits that the typical GAF-branded QuickMeasure report includes information on roof pitch.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 165 of the FAC, and therefore denies them.

166.    GAF admits that the typical GAF-branded QuickMeasure report includes information on multiple roof attributes.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 166 of the FAC, and therefore denies them.

167.    GAF admits that the typical GAF-branded QuickMeasure report includes information on multiple roof attributes.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 167 of the FAC, and therefore denies them.

168.    GAF admits that certain individuals who order GAF-branded QuickMeasure reports may be doing so in connection with repair and/or constructing a roof structure.  GAF otherwise denies the allegations in paragraph 168 of the FAC.

169.    GAF admits that it has been aware of the '376 patent since no later than May 4, 2021.  GAF otherwise denies the allegations in paragraph 169 of the FAC.

170.    GAF denies the allegations in paragraph 170 of the FAC.

171.    GAF denies the allegations in paragraph 171 of the FAC.

172.    GAF denies the allegations in paragraph 172 of the FAC.

173.    GAF denies the allegations in paragraph 173 of the FAC.

174.    GAF denies the allegations in paragraph 174 of the FAC.

### COUNT VII – INFRINGEMENT OF THE '568 PATENT BY GAF

175.    In response to paragraph 175 of the FAC, GAF incorporates by reference its responses to paragraph 1-174 of the FAC, as if fully set forth herein.

176.    GAF admits that the face of the '568 patent identifies its issuance date as December 6, 2016.  GAF denies the remaining allegations of paragraph 176 of the FAC.

177.    GAF denies the allegations of paragraph 177 of the FAC.

178.    GAF denies the allegations of paragraph 178 of the FAC.

179.    GAF admits that paragraph 179 of the FAC recites claim 1 of the '568 patent.  To the extent there are any further allegations in paragraph 179 of the FAC, GAF denies them.

180.    GAF denies the allegations of paragraph 180 of the FAC.

181.    GAF admits that GAF-branded QuickMeasure reports are generated through a process involving a computer.  GAF otherwise denies the allegations in paragraph 181 of the FAC.

182.    GAF admits that a GAF-branded QuickMeasure report can be requested through a website.  GAF otherwise denies the allegations in paragraph 182 of the FAC.

183.    GAF admits that GAF-branded QuickMeasure reports include estimates for roof measurements.  GAF lacks knowledge or information sufficient to form a belief as to the truth of

20

any remaining allegations of paragraph 183 of the FAC, and therefore denies them.

184. GAF admits that, when a GAF-branded QuickMeasure report is ordered through https://quickmeasure.gaf.com, there is a field which allows the individual ordering a report to "[e]nter the address of the property." GAF otherwise denies the allegations in paragraph 184 of the FAC.

185. GAF admits that, when a GAF-branded QuickMeasure report is ordered through https://quickmeasure.gaf.com, there is a "Checkout" button that can be clicked. GAF otherwise denies the allegations in paragraph 185 of the FAC.

186. GAF admits that, when a GAF-branded QuickMeasure report is ordered through https://quickmeasure.gaf.com, there is a field which allows the individual ordering a report to "[e]nter the address of the property," and that there is a "Checkout" button that can be clicked. GAF otherwise denies the allegations in paragraph 186 of the FAC.

187. GAF admits that the typical GAF-branded QuickMeasure report includes a view of a building. GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 187 of the FAC, and therefore denies them.

188. GAF admits that the typical GAF-branded QuickMeasure report includes multiple views of a building. GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 188 of the FAC, and therefore denies them.

189. GAF lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 189 of the FAC, and therefore denies them.

190. GAF admits that paragraph 190 of the FAC includes a statement from a webinar made by Vishal Laddha. GAF lacks information or knowledge sufficient to form a belief as to

the truth of the remaining allegations in paragraph 190 of the FAC, and therefore denies them.

191.    GAF admits that the typical GAF-branded QuickMeasure report includes information on multiple attributes of a roof.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 191 of the FAC, and therefore denies them.

192.    GAF admits that the typical GAF-branded QuickMeasure report includes information on roof pitch.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 192 of the FAC, and therefore denies them.

193.    GAF admits that the typical GAF-branded QuickMeasure report includes information on roof pitch.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 193 of the FAC, and therefore denies them.

194.    GAF admits that the typical GAF-branded QuickMeasure report includes information on roof pitch.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 194 of the FAC, and therefore denies them.

195.    GAF admits that the typical GAF-branded QuickMeasure report includes information on ridge lines and valley lines of a roof.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 195 of the FAC, and therefore denies them.

196.    GAF admits that the typical GAF-branded QuickMeasure report includes information on ridge lines and valley lines of a roof, which is illustrated in color.  GAF otherwise denies the allegations in paragraph 196 of the FAC.

197.    GAF admits that the typical GAF-branded QuickMeasure report includes

information on ridge lines and valley lines of a roof, which is illustrated in color. GAF otherwise denies the allegations in paragraph 197 of the FAC.

198.    GAF admits that QuickMeasure reports are typically sent to the email address that was entered at the time that a QuickMeasure report is ordered, or to an email address that is otherwise associated with a particular user. GAF otherwise denies the allegations in paragraph 198 of the FAC.

199.    GAF admits that it has been aware of the '568 patent since no later than May 4, 2021. GAF otherwise denies the allegations in paragraph 199 in the FAC.

200.    GAF denies the allegations in paragraph 200 of the FAC.

201.    GAF denies the allegations in paragraph 201 of the FAC.

202.    GAF denies the allegations in paragraph 202 of the FAC.

203.    GAF denies the allegations in paragraph 203 of the FAC.

204.    GAF denies the allegations in paragraph 204 of the FAC.

### COUNT VIII – INFRINGEMENT OF THE '960 PATENT BY GAF

205.    In response to paragraph 205 of the FAC, GAF incorporates by reference its responses to paragraph 1-204 as if fully set forth herein.

206.    GAF admits that the face of the '960 patent identifies its issuance date as January 7, 2020. GAF denies the remaining allegations in paragraph 206 of the FAC.

207.    GAF denies the allegations in paragraph 207 of the FAC.

208.    GAF denies the allegations in paragraph 208 of the FAC.

209.    GAF admits that paragraph 209 of the FAC recites claim 1 of the '960 patent. To the extent there are any other allegations in paragraph 209 of the FAC, GAF denies them.

210.    GAF denies the allegations in paragraph 210 of the FAC.

211.    GAF admits that GAF-branded QuickMeasure reports are generated through a process involving a computer.  GAF otherwise denies the allegations in paragraph 211 of the FAC.

212.    GAF admits that a GAF-branded QuickMeasure report can be requested through a website.  GAF otherwise denies the allegations in paragraph 212 of the FAC.

213.    GAF admits that GAF-branded QuickMeasure reports include estimates for roof measurements.  GAF lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 213 of the FAC, and therefore denies them.

214.    GAF admits that the typical GAF-branded QuickMeasure report includes multiple views of a building.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 214 of the FAC, and therefore denies them.

215.    GAF lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 215 of the FAC, and therefore denies them.

216.    GAF admits that the typical GAF-branded QuickMeasure report includes information on roof pitch and area.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 216 of the FAC, and therefore denies them.

217.    GAF admits that the typical GAF-branded QuickMeasure report includes a three-dimensional representation of a roof.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 217 of the FAC, and therefore denies them.

218.    GAF lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 218 of the FAC, and therefore denies them.

219.    GAF lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 219 of the FAC, and therefore denies them.

220.    GAF admits that paragraph 220 of the FAC includes a statement from a webinar that was made by Vishal Laddha.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 220 of the FAC, and therefore denies them.

221.    GAF lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 221 of the FAC, and therefore denies them.

222.    GAF admits that the typical GAF-branded QuickMeasure report includes information on roof pitch and area.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 222 of the FAC, and therefore denies them.

223.    GAF admits that paragraph 223 quotes from Exhibits 16 and 18 to the FAC.  GAF otherwise denies the allegations in paragraph 223 of the FAC.

224.    GAF admits that QuickMeasure reports are typically sent to the email address that was entered at the time that a QuickMeasure report is ordered, or to an email address that is otherwise associated with a particular user.  GAF otherwise denies the allegations in paragraph 224 of the FAC.

225.    GAF admits that the typical GAF-branded QuickMeasure report includes information on roof pitch.  GAF otherwise denies the allegations in paragraph 225 of the FAC.

226.    GAF admits that it has been aware of the '960 patent since no later than May 4, 2021.  GAF denies the remaining allegations in paragraph 226 of the FAC.

227.    GAF denies the allegations in paragraph 227 of the FAC.

228.    GAF denies the allegations in paragraph 228 of the FAC.

229.    GAF denies the allegations in paragraph 229 of the FAC.

230.    GAF denies the allegations in paragraph 230 of the FAC.

231.    GAF denies the allegations in paragraph 231 of the FAC.

### COUNT IX – INFRINGEMENT OF THE '149 PATENT BY GAF

232.    In response to paragraph 232 of the FAC, GAF incorporates by reference its responses to paragraphs 1-231 of the FAC as if fully set forth herein.

233.    GAF admits that the face of the '149 patent identifies June 16, 2020, as its issuance date.  GAF otherwise denies the allegations in paragraph 233 of the FAC.

234.    GAF denies the allegations in paragraph 234 of the FAC.

235.    GAF denies the allegations in paragraph 235 of the FAC.

236.    GAF admits that paragraph 236 of the FAC recites claim 1 of the '149 patent.  To the extent there are any other allegations in paragraph 236 of the FAC, GAF denies them.

237.    GAF denies the allegations in paragraph 237 of the FAC.

238.    GAF admits that GAF-branded QuickMeasure reports are generated through a process involving a computer.  GAF otherwise denies the allegations in paragraph 238 of the FAC.

239.    GAF admits that a GAF-branded QuickMeasure report can be requested through a website.  GAF otherwise denies the allegations in paragraph 239 of the FAC.

240.    GAF admits that GAF-branded QuickMeasure reports include estimates for roof measurements.  GAF lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 240 of the FAC, and therefore denies them.

241.    GAF admits that the typical GAF-branded QuickMeasure report includes multiple views of a building.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 241 of the FAC, and therefore denies them.

242.    GAF admits that the typical GAF-branded QuickMeasure report includes information on roof pitch.  GAF further admits that paragraph 242 of the FAC includes a statement from a webinar that was made by Vishal Laddha.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 242 of the FAC, and therefore denies them.

243.    GAF admits that the typical GAF-branded QuickMeasure report includes information on roof pitch.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 243 of the FAC, and therefore denies them.

244.    GAF admits that the typical GAF-branded QuickMeasure report includes a three-dimensional representation of a roof.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 244 of the FAC, and therefore denies them.

245.    GAF admits that the typical GAF-branded QuickMeasure report includes information on multiple attributes of a roof.  GAF lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 245 of the FAC, and therefore denies them.

246.    GAF admits that the typical GAF-branded QuickMeasure report includes information on multiple attributes of a roof.  GAF denies the remaining allegations in paragraph 246 of the FAC.

247.    GAF admits that paragraph 247 quotes from Exhibits 16 and 18 to the FAC.  GAF otherwise denies the allegations in paragraph 247 of the FAC.

248.    GAF admits that it has been aware of the '149 patent since no later than May 4, 2021.  GAF denies the remaining allegations in paragraph 248 of the FAC.

249.    GAF denies the allegations in paragraph 249 of the FAC.

250.    GAF denies the allegations in paragraph 250 of the FAC.

251.    GAF denies the allegations in paragraph 251 of the FAC.

252.    GAF denies the allegations in paragraph 252 of the FAC.

253.    GAF denies the allegations in paragraph 253 of the FAC.

254.    GAF denies that Plaintiffs are entitled to the relief requested in paragraph 254 of the FAC, or to any other relief.  To the extent that paragraph 254 includes any factual or legal allegations, GAF denies them.

255.    To the extent not specifically admitted above, GAF denies any remaining allegations in the FAC.

## **AFFIRMATIVE DEFENSES**

256.    Subject to its above responses, GAF asserts the following affirmative defenses, without assuming any burden of proof or persuasion on any issue, whether in whole or in part, where such burden(s) would otherwise be borne by Plaintiffs.  GAF expressly reserves the right to assert additional defenses that become known during the course of the litigation.  GAF notes

that in the related case of *Eagle View Technologies et al. v. Nearmap US, Inc.*, Case No. 2:21-cv-00283-TS-DAO, Defendant Nearmap US, Inc. has sought leave to assert at least one affirmative defense based on non-public information that is not currently available to GAF, and GAF specifically reserves its right to assert additional defenses based on discovery and/or other confidential materials that are currently unavailable to GAF.

### First Defense (Failure to State a Claim)

257.    Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

### Second Defense (No Infringement)

258.    GAF does not infringe any valid and enforceable claim of the Asserted Patents directly or indirectly, literally or under the doctrine of equivalents.  Plaintiffs are further barred from asserting infringement under the doctrine of equivalents because doing so would ensnare the prior art.

### Third Defense (Invalidity)

259.    The claims of the Asserted Patents asserted by Plaintiffs are invalid for failing to satisfy one or more provisions of the Patent Act, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, and any judicially created doctrine of invalidity, including obviousness-type double patenting.

### Fourth Defense (Prosecution History Estoppel)

260.    Plaintiffs are estopped from construing any valid claim of the asserted patents to cover or include, either literally or by application of the doctrine of equivalents, the Accused Product because of statements made to the U.S. Patent and Trademark Office during the prosecution of the applications which led to the issuance of the asserted patents.

**Fifth Defense (Failure to Mark)**

261.    On information and belief, Plaintiffs failed to follow the marking requirements set forth in 35 U.S.C. § 287 for at least the '518 and '149 patents.

**Sixth Defense (Inequitable Conduct)**

262.    The '880 patent is unenforceable due to inequitable conduct.

263.    The three named inventors of the '880 patent, as well as the Chief Technology Officer of Pictometry, all owed a duty of candor to the United States Patent & Trademark Office ("PTO").  Those individuals were aware of highly material and non-cumulative prior art references that were each published by Pictometry more than a year before the priority date of the '880 patent:  four versions of a user guide for Pictometry software that performs a process for roof measurement using aerial imagery, including by determining attributes of a roof structure of real-world three-dimensional buildings.  As discussed below, upon information and belief, the foregoing individuals violated their duty of candor by withholding those user guides with the specific intent to deceive the PTO, knowing that if they had been disclosed to the PTO, then the claims of the '880 patent would not have issued.

264.    The '880 patent was filed on February 22, 2013, as U.S. Patent Application No. 13/774,478 ("the '478 application") and issued on September 24, 2013.  It is a continuation of U.S. Patent Application No. 12/470,984 ("the '984 application"), which was filed on May 22, 2009.  The '880 patent lists Pictometry as the applicant as well as the assignee.

265.    The three named inventors of the '478 application and the '984 application are Dale R. Thornberry, Chris T. Thornberry, and Mark F. Garringer (collectively, "the Pictometry Inventors").  Each of those individuals owed a duty of candor to the PTO during prosecution of

30

the '478 application and the '984 application pursuant to 37 C.F.R. § 1.56 (a) & (c)(1).

266.   In addition, during prosecution of at least the '478 application, Pictometry's Chief Technology Officer ("CTO"), Stephen Schultz, "[l]ed [Pictometry's] intellectual property efforts as well as being involved in the overall operation and management of [Pictometry]."[1]  During prosecution of the '478 application, Mr. Schultz executed the form conferring power of attorney on behalf of Pictometry, and signed the form for Assignee Showing of Ownership as required under 37 CFR § 3.73.  At least based on the foregoing, Mr. Schultz was a person substantively involved in the preparation or prosecution of the '478 application and associated with the applicant (Pictometry).  As such, he owed a duty of candor pursuant to 37 C.F.R. § 1.56(a) & (c)(3).

267.   As explained below, it is at least reasonable to infer that the Pictometry Inventors and Stephen Schultz (collectively, the "Pictometry Patent Team") knew of prior art that was material to the patentability of at least the '478 application, and that the Pictometry Inventors knew of prior art that was material to the patentability of the '478 application and the '984 application, but affirmatively failed to disclose it to the PTO with deceptive intent.

268.   At least one year before May 22, 2009 (and for several years prior to that time), Pictometry offered a product called the Electronic Field Study ("EFS"), which was further described in at least four versions of user guide that were published no later than July 2007 (the "EFS Guides").  According to the 2007 version of the EFS Guide, EFS is an "easy-to-use software system developed by Pictometry" that allows users to "view and work with aerial

---

[1] *See* Ex. 1 hereto.

images." An example of the EFS user interface as of roughly July 2007 is shown below:



*Figure 3-4: An Image window showing the active image in PentaView.*

269. Upon information and belief, the four members of the Pictometry Patent Team were employed by Pictometry during prosecution of the '478 application and the '984 application.[2] It is reasonable to infer that everyone on the Pictometry Patent Team was aware of the EFS User Guides described above during the prosecution of the '478 application and the '984 application because (i) they were employed by Pictometry; (ii) EFS was one of Pictometry's principal products; (iii) upon information and belief, the entire Pictometry Patent Team was involved in one or more aspects of designing, developing, marketing, and/or implementing EFS

---

[2] *See* Exs. 1-4 hereto.

32

(and therefore would have been aware of the EFS User Guide); and (iv) the sheer number of EFS User Guide versions that exist and that were produced by Plaintiffs in this litigation.  The foregoing is particularly true for Mr. Schultz, who co-founded Pictometry and was serving as its CTO at the time of the prosecution.  Despite their knowledge, however, the Pictometry Patent Team failed to disclose the details of the EFS software or the EFS User Guides to the PTO.[3]

270.    Version 2.7 of the EFS User Guide (July 2007) anticipates and/or renders obvious at least one claim of the '880 patent under Plaintiffs' interpretation of those claims, for at least the reasons set forth in Exhibit E7 to GAF's Initial Invalidity Contentions (attached hereto as Exhibit 5).

271.    In addition, under Plaintiffs' apparent construction of the claims, several earlier versions of the EFS User Guide disclose all the elements of at least claim 1 of the '880 patent. For example, Version 2.4 of the EFS User Guide (April 17, 2002) (EV01575038, hereafter "EFS 2.4 Guide") discloses "software [that] has an easy-to-use interface that enables you to quickly access and study images."  (EV01575050.)  Version 2.4 of EFS contained both "measurement and location tools" that allowed users to "quickly obtain the coordinates of a particular point, [and] measure distance, height, area, bearing, and even angles."  (EV01575072.)  The EFS 2.4 Guide teaches that a user could input the location of a building of interest by "[c]lick[ing] the desired location on the map or image" in the "Location Tool."  (*Id*.)  After the click, the location's "coordinates appear in the Status Bar."  (*Id.*)  Alternatively, if the user already

---

[3]    Although Plaintiffs marked the pre-2007 versions of the EFS User Guide as "Highly Confidential—Attorneys' Eyes Only," there does not appear to be a basis for Plaintiffs to have done so because, upon information and belief, the EFS User Guides were published documents that were publicly accessible and widely disseminated at least before May 22, 2008, and that do not appear to have any confidentiality designations on them that pre-date this litigation.

"know[s] the geographic coordinates of a specific location or object," the user can directly type in the coordinates to locate the object, such as a building.  (*Id.* at EV01575073.)  In either scenario, EFS 2.4 displays aerial images of the building, including "orthogonal image[s] (straight-down view)." (*Id.* at EV015755059.)  The EFS 2.4 Guide further teaches the use of a visual marker corresponding to the input location in oblique imagery, as shown for instance in Figure 3-20:



**Figure 3-20: Image with Crosshair**

(*Id*. at EV01575065.)  This location crosshair is automatically generated.  (*See, e.g.,* EV01575073 ("If you have *draw location crosshairs* enabled, the exact point will be highlighted . . . .").  Once the user confirms the location of interest, EFS 2.4 displays an oblique aerial image.  (*See, e.g., id*. at Figs. 4-10, 4-11, 4-13, 4-14.)  The user may then perform measurements, including height, distance, and area, based on aerial roof images.  (*Id.* at EV01575079.)

272.    Similarly, Version 2.5 of the EFS Guide (June 2003) discloses many of the same

features and functions of Version 2.4, as discussed above.  (EV01574984, hereafter "EFS 2.5 Quick Start Guide.)  For example, Pictometry emphasizes that it has created image libraries that contain not just "orthogonal (straight down) images," but also "oblique (taken from angles) images" that "can easily be viewed in "Pictometry's Electronic Field Study (EFS) software." (EV01574985.)  According to Pictometry's description of EFS, "[l]iterally, within seconds a user can view from their laptop or workstation any house [or] building, . . . observing any feature from any of twelve different angles or directions."  (*Id.*)  Version 2.5 of EFS enabled users to "measure the length/width/height of any feature within an image"; "click on any feature within an image and receive the actual geo-coordinates"; "annotate images with text/lines/circles" and "overlay" outlines "directly over the images."  (*Id.*)  This version of EFS also allowed the user to reposition any marker that appeared as an annotation layer within the center image window in the user interface.  (*Id.* at EV01574990.)

273.    Version 2.6 of EFS also teaches a software-based system and process that, under Plaintiffs' apparent construction of the asserted '880 claims, discloses all elements of one or more of those claims, and includes many of the features that are found in Version 2.7.  (EV01583132 ("EFS 2.6 User Guide"); *see also* EV01583059 ("EFS 2.6 QuickStart Guide").)  For example, EFS 2.6 adds an "Address Search feature (searching by street address)—a new way to find the image you need."  (EV01583142.)  It allows the user to simultaneously view up to five aerial images (including oblique and straight-down views).  (EV01583169.)  It also teaches the "Center Navigation" feature that is discussed in Exhibit 5 hereto.  (EV01583169-72; EV01583175.)  EFS 2.6 also clearly displays "[o]rthogonal image[s] showing a building" and "[o]blique image[s] of the same building." (EFS 2.6 QuickStart Guide at Figs. 2-1, 2-2.)  EFS 2.6 Quick Start Guide

further teaches that a user can confirm that the coordinates for a moved visual marker (called the "Navigation Point") are correct by clicking "OK" to confirm those that are correctly presented in the "Go to" dialog box.  (EV01583099.)

274.    Although numerous prior art references were disclosed to the PTO in connection with the prosecution of at least the '984 application, none discloses, discusses, or describes the details of the EFS software as the EFS User Guides do.  As explained for example in Exhibit 5 hereto, those details would have been highly material to the question of whether the '880 claims were patentable, because the 2007 Version of the EFS User Guides anticipates (or at least renders obvious) multiple claims of the '880 patent under Plaintiffs' interpretation of those claims.  This same sort of analysis applies to the earlier versions of the EFS User Guides, as shown by the exemplary citations above.  Thus, if the Pictometry Patent Team had satisfied their duty of candor by disclosing the EFS User Guides, it is reasonable to infer that the PTO examiner would not have allowed the claims of the '880 patent to issue.

275.    It is likewise reasonable to infer that the Pictometry Patent Team acted with deliberate intent to deceive the PTO by withholding the EFS User Guides.  Indeed, numerous Information Disclosure Statements were provided to the PTO during prosecution of at least the '984 application, including documents that made generic, off-handed references to certain versions of the EFS software.  But none of those Statements discloses the particular information contained in the EFS User Guides, and that would have been highly material to the patentability of the '880 patent claims under Plaintiffs' interpretation of those claims.  It is reasonable to infer that those Statements were thus calculated to give the appearance of complying with the duty of candor by submitting a large quantity of only marginally material references, while deliberating

36

withholding the highly material and related art that the Pictometry Patent Team knew of, and that would have provided the PTO with details about the EFS software that would have led the PTO to conclude that the then-pending claims of the '880 patent should not be issued.

276.    The failure to bring this relevant and material prior art to the examiner's attention is a breach of the duty of candor and good faith before the PTO, which amounts to inequitable conduct.  Accordingly, the '880 patent is unenforceable.

### Seventh Defense (Patent Misuse)

277.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of patent misuse, which renders the Asserted Patents, including at least the '436 patent, the '840 patent, the '152 patent, the '880 patent, and the '376 patent, unenforceable.  Plaintiffs have impermissibly broadened the scope of the Asserted Patents with anticompetitive effect.

278.    This is not the first or only lawsuit in which Plaintiffs have asserted infringement of the Asserted Patents.  In 2015, Plaintiffs filed a patent infringement suit against Verisk Analytics, Inc. and Xactware Solutions, Inc. ("Xactware"), (collectively, "Verisk") in the U.S. District Court for the District of New Jersey.[4]

279.    Plaintiffs argued in the Verisk Action that Verisk competes with Plaintiffs in the market for roof reports, and Plaintiffs sought lost profits in connection with Verisk's alleged infringement of the Asserted Patents.[5]  In the Verisk Action, Plaintiffs originally asserted 153

---

[4] *See Eagle View Technologies, Inc. et al. v. Xactware Solutions, Inc., et al.*, Case No. 15-cv-7025 (RMB-SAK) (D.N.J.) (the "Verisk Action"); Verisk Action, Compl. (D.I. 1), ¶ 6 (Sept. 23, 2015).

[5] Verisk Action, Compl. (D.I. 1), ¶ 1 (Sept. 23, 2015).

claims from nine patents.[6]  After Verisk succeeded in having *inter partes* review proceedings

instituted on six of those patents, Plaintiff dropped 107 asserted claims.[7]  By the time of the trial

in the Verisk Action, the case involved six patent claims from five patents, including the '436

patent, the '840 patent, and the '376 patent, which are asserted by Plaintiffs against GAF here.[8]

280.    In the Verisk Action, the New Jersey jury returned a general verdict finding

willful infringement of all asserted claims and awarding damages of $125 million.[9]  The district

court granted Plaintiffs treble damages, attorneys' fees, and interest which totaled over $400

million by the time of appeal.[10]

281.    Verisk appealed the district court's judgment to the Federal Circuit.  One of the

issues in the appeal was whether the claims from the Asserted Patents were "drawn to the

abstract idea of generating a roof-measurement report without requiring a human to physically

take measurements, using a general-purpose computer without disclosing software or any other

inventive concepts, are ineligible for patenting under 35 U.S.C. § 101."[11]

282.    The Federal Circuit heard oral argument in the Verisk Appeal on October 8, 2021.

During oral argument, the Federal Circuit's questions focused on whether the patent claims were

---

[6] *Id.*; Mot. Hr'g Tr. (D.I. 231) at 37–38 (May 16, 2017).

[7] Mot. Hr'g Tr. at 38.

[8] Verisk Action, Jury Verdict (D.I. 796) at 2–3 (Sept. 26, 2019).

[9] *Id.* at 6.

[10] Verisk Action, Order (D.I. 910) at 1–2 (Feb. 16, 2021); *Eagle View Technologies, Inc. et al. v. Xactware Solutions, Inc.*, et al., Case No. 21-1048 (Fed. Cir.) (the "Verisk Appeal"), Reply Br. for Appellants (D.I. 36) at 1 (June 29, 2021).

[11] Verisk Appeal, Opening Br. for Appellants (D.I. 18) at 16 (Apr. 22, 2021).

patent-ineligible.[12]  For example, Judge Clevenger suggested that the claims in the Asserted

Patents are similar to those in *Yu v. Apple Inc.*, 1 F.4th 1040 (Fed. Cir. 2021), which were held to

be unpatentable abstract ideas:[13]

| | |
|---|---|
| Judge Clevenger: | Isn't the use of the computer to correlate images well known? That's what is happening in your patent. |
| Plaintiffs' Counsel: | Well it's exactly what was happening in Thales, it's the use of… |
| Judge Clevenger: | Why isn't that like *Yu?* |
| Plaintiffs' Counsel: | I'm sorry? |
| Judge Clevenger: | Why isn't that like *Yu?* |
| Plaintiffs' Counsel: | Because… |
| Judge Clevenger: | Using the computer to massage the images whether or not the image is stereoscopic or non-stereoscopic is irrelevant to the correlation. |
| Plaintiffs' Counsel: | Respectfully, Judge Clevenger the use of the computer… |
| Judge Clevenger: | Isn't that true? Isn't that true that whether the computer is massaging stereoscopic or non-stereoscopic photos is irrelevant because the software conventionally can do either? |
| Plaintiffs' Counsel: | I disagree that it is irrelevant. |

283.    On November 5, 2021, less than a month after the Federal Circuit oral argument

in the Verisk Appeal, Plaintiffs and Verisk announced the settlement of the Verisk Action and

---

[12] Verisk Appeal, Oral Arg. at 22:24-31:38 (Oct. 8, 2021), https://cafc.uscourts.gov/10-08-2021-2021-1048-eagle-view-technologies-inc-v-xactware-solutions-inc-audio-uploaded/.

[13] *Id.* at 23:18-24:02.

the Verisk Appeal. █████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

284.    The terms ███████████████████ were treated as confidential, and were not publicly disclosed in connection with the Verisk Action or the Verisk Appeal.[16] The confidential ████████████████ was first produced to counsel for GAF on April 6, 2023.

285.    ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

286.    ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

- ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████

- ████████████████████████████████████████████████

████████████████████████████████████████████

---

[14] Ex. 6 hereto, at EV01568481.

[15] Id. at EV01568462.

[16] Id. at pg. 2, § 12(a) & (b).

[17] Id. at EV01568462.

40



- 

287.

288.

289.

[18] *Id.*



290. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

291. Plaintiffs' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ impermissibly broadened the physical scope of the patent grant relating to at least the Asserted Patents with anticompetitive effect.

292. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[19] *Id.*

[20] *Id.*

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████.

293.    Because Plaintiffs ███████████████████████████████████████

████████, they have committed patent misuse rendering the Asserted Patents unenforceable.

## FIRST AMENDED COUNTERCLAIMS

294.    Counterclaim-Plaintiff GAF Materials LLC ("GAF") by and through its undersigned attorneys, hereby submits these First Amended Counterclaims against Counterclaim-Defendants Eagle View Technologies, Inc. ("Eagle View") and Pictometry International Corp. ("Pictometry") (collectively, "Counterclaim-Defendants" or "Eagleview").

295.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, and the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, GAF seeks a declaration that all claims of U.S. Patent Nos. 8,078,436 ("the '436 patent"); 8,170,840 ("the '840 patent"); 8,209,152 ("the '152 patent"); 8,542,880 ("the '880 patent"); 8,670,961 ("the '961 patent"); 9,129,376 ("the '376 patent"); 9,514,568 ('the '568 patent"); 10,528,960 ("the '960 patent"); and 10,685,149 ("the '149 patent") (collectively, the "Asserted Patents") asserted by Eagleview in this action ("the asserted claims") are invalid, not infringed, and rendered unenforceable by the doctrine of patent misuse, and that all asserted claims of the '880 patent are unenforceable under the doctrine of inequitable conduct (collectively, "the Patent Counterclaims").

296.    Pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, GAF seeks

43

to recover damages, treble damages, injunctive relief, interest, costs of suit, and reasonable attorneys' fees for the injuries sustained by reason of Eagleview's violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 (hereafter "the Antitrust Counterclaim," and collectively with the Patent Counterclaims, "GAF's Counterclaims").

## THE PARTIES

297.    GAF is a Delaware limited liability company with its principal place of business at 1 Campus Drive, Parsippany-Troy Hills, New Jersey 07054.

298.    Upon information and belief, Eagle View is a corporation organized and existing under the laws of the State of Washington, having a principal place of business at 25 Methodist Hill Drive, Rochester, New York 14623.

299.    Upon information and belief, Pictometry International Corp. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 25 Methodist Hill Drive, Rochester, New York 14623.

## OTHER RELEVANT ENTITIES



300.

301.

302.

███████████████████████████████

████████

303.    Whenever the Antitrust Counterclaim refers to an act, deed, or transaction of a corporation, or entity, the Antitrust Counterclaim is alleging that the corporation or entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees, or representations while they were actively engaged in the management, direction, control, or transaction of the corporation or entity's business affairs.

## JURISDICTION AND VENUE

304.    The Patent Counterclaims arise under the Federal Declaratory Judgement Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*

305.    The Antitrust Counterclaim arises under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26.

306.    The Court has subject-matter jurisdiction over the Patent Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 1367, and 2201.

307.    The Court has subject-matter jurisdiction over GAF's Antitrust Counterclaim pursuant to 28 U.S.C. §§ 1331 and 1337(a), and 15 U.S.C. § 15.

308.    This Court has personal jurisdiction over Eagleview at least because it has subjected itself to the jurisdiction of this Court in this case by filing the First Amended Complaint.

309.    Venue in this judicial district for GAF's Counterclaims is proper at least because Eagleview has consented to this venue by asserting claims of patent infringement here against GAF.

## BACKGROUND

*Factual Background Relating to the Patent Counterclaims*

310.    Eagleview has filed suit against GAF asserting infringement of certain claims of the Asserted Patents.

311.    GAF has denied that it infringes or has infringed any asserted claim of the Asserted Patents.

312.    GAF has further contested the validity and enforceability of the asserted claims of the Asserted Patents.

313.    Based on the foregoing, there is an actual, immediate, and justiciable controversy between Eagleview and GAF as to the infringement, validity, and enforceability of the asserted claims of the Asserted Patents.

*Factual Background Relating to the Antitrust Counterclaim*

### The Sale of Rooftop Aerial Measurement Products in the United States ███████████████

314.    Eagleview sells rooftop aerial measurement products in a continuous and uninterrupted flow of interstate commerce in the United States, including in this District.  From 2012 to 2019, Eagleview accounted for the sale of over 15.8 million rooftop aerial measurement products in the United States, with revenue from 2017 exceeding $120 million.  Since 2019, Eagleview has continued to sell millions of rooftop aerial measurement products in the United States, including in this District.

315.    According to Eagleview, ████████████████████████████████████████

46



316.    Eagleview serves the construction, government, insurance, solar, and utilities industries with aerial imagery, property data, and drone-based visual inspection products.  The rooftop aerial measurement products and related add-ons that it sells or has sold include: ▮▮▮▮

317.    Eagleview claims to offer aerial imaging coverage for approximately 98% of the U.S. population, with a library spanning more than twenty million square miles of images, and bills itself as the "leader and industry standard for customers who need property-specific imagery and data."

318.    The price points at which Eagleview has offered rooftop aerial measurement products have changed over time, but upon information and belief have ranged roughly from $30 to $85 per report, depending on the type and size of the property, and with additional fees up to $40 per report for faster delivery.

319.    As a proximate result of Eagleview's unlawful conduct—▮▮▮▮

---



320. ████████████████████████████████████

321. ████████████████████████████████████

████████████████████████████████████[23]

322. ████████████████████████████████████

████████████████████████.[25]

323. ████████████████████████████████████

---

[23] ████████████████████████████

[24] *Id.* at 6.

[25] ████████████████████████████████████



324.

325.

326.

327.

---

[28] *Id.* at 23:18–24:02.



328.

329.

330.

[31] *Id.* at pg. 2 (EV01568460).

[32] *Id.*, § 12(b).

331. ███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

- ████████████████████████████████████████████████

  ████████████████████████████████████████████████

  ████████████████████

- ████████████████████████████████████████████████

  ████████████████████████████████████████████████

  ████████████████████████████████████████████████

  ████████████████████████████████████████████████

  ████████████████

- ████████████████████████████████████████████████

  ████████████████████████████████████████████████

  ████████████████████████████████████████████████

  ████████████

332. ████████████████████████████████████████████████

████████████████████████████████████████████████ [33]

333. Upon information and belief, ████████████████████████████

████████████████████████████████████████████████

334. ████████████████████████████████████████████████

---

[33] *Id.*



335. ██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

336. ██████████████████████████████

██████████████████████████████████

██████████████████████████████████

███████████████████████████

337. ██████████████████████████████

██████████████████████████████████

[34] *Id.*



*Rooftop Aerial Measurement Products Purchased by GAF in the United States*

338. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

339. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

340.    GAF began commercially offering the rooftop aerial measurement products that were delivered to it by Pushpin in the United States—under the GAF logo and branded as "QuickMeasure" reports—on or about April 1, 2019.

341.    GAF has offered QuickMeasure reports that were delivered to it by Pushpin for sale continuously since April 1, 2019, up to and including the present.

342.    During that time, upon information and belief, Nearmap US Inc. ("Nearmap") has been supplying, among other things, the aerial images that Pushpin uses to create QuickMeasure reports that are then delivered to GAF.

343. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



344. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

345.    QuickMeasure reports are currently offered for sale, *inter alia*, through GAF's website at https://www.gaf.com/en-us/quickmeasure.  The price for these reports starts at $18 for a single-family home, and at $54 for commercial and multi-family properties.

346. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

347. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

348. ████████████████████████████████████████

████████████████████████████████████████



349.

350.

351.

352.   ███████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████

353.   GAF's information and belief regarding the potential suppliers for rooftop aerial measurement products is consistent with those of Eagleview. ███████████

████████████████████████████████

████████████████████████████████████

██████████████████████████████████

███████████████████████████████████ [36]

████████████████████████████

354.   In prior negotiations with GAF, Eagleview offered GAF price points and delivery turnarounds that were insufficiently competitive. ████████████████

███████████████████████████████

██████████████████████████

355.   Thus, the only option currently available to supply GAF with rooftop aerial measurement reports is Pushpin, with Nearmap as its sub-supplier of aerial imagery and other materials relating to the QuickMeasure reports that Pushpin produces.

***GAF Suffered Injury as A Proximate Result of Eagleview's Anticompetitive Conduct***





356.

357.

358.

359.

360.

361.



362.

363.

364.

365.

366.

367.

368.

369.    As a proximate result of Eagleview's unlawful conduct, combination or

conspiracy: ████████████████████████████████████

███████████████████████████████

██████████████████████ (ii) GAF has purchased rooftop aerial measurement

products above the price that GAF would have paid in the absence of the conspiracy; (iii) GAF

has not received profits from the increased sales of rooftop aerial measurement products that

would have otherwise resulted in the absence of the conspiracy; (iv) GAF has not received

profits from the sales of add-on products containing measurements for walls, windows and doors

that otherwise would have resulted in the absence of the conspiracy; and (v) GAF has paid supra-

competitive prices, received reduced profits from sales of its products, experienced increased

costs of doing business, and lost the benefits of competition.

370.    The foregoing injuries are the types of injuries that the antitrust laws are designed

to prevent.

371.    Accordingly, GAF has sustained substantial losses and damage to its business and property in the form of overcharges and lost profits, the exact amount of which will be the subject of proof at trial.

***Eagleview's Anticompetitive Conduct Harmed Competition, Consumers, and Commerce***

372.    Upon information and belief, Eagleview has sold millions of rooftop aerial measurement products in each of 2021, 2022, and has continued to sell at least hundreds of thousands of such products in the first half of 2023.  And upon information and belief, Eagleview has sold millions of dollars in additional rooftop aerial measurement products in 2022 and 2023 than they would have but for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

373.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



375.    Eagleview's acts and practices had the purpose and effect of restraining competition unreasonably and injuring competition by restricting output and protecting its rooftop aerial measurement products from competition in the United States ███████████ ████████████████████████████████████████████████████████████████ [37] This allowed Eagleview to exclude competition in the market for rooftop aerial measurement products in the United States, to the detriment of GAF and all other purchasers of rooftop aerial measurement products in the United States.

376.    The unlawful agreement impaired and delayed the sale of Eagleview's rooftop aerial measurement products in the United States and unlawfully enabled Eagleview to sell its rooftop aerial measurement products in the United States with less competition and at artificially

---

[37] ████████████████████

inflated prices.

377. Were it not for Eagleview's anticompetitive conduct, purchasers of rooftop aerial measurement products in the United States would have purchased ███████████████

████████████████████████████████████████████

███████████████████████

378. The foregoing injuries are the types of injuries that the antitrust laws are designed to prevent.

379. Eagleview sells rooftop aerial measurement products in a continuous flow of interstate commerce throughout the United States, including in this District.

380. Eagleview's conduct was within the flow of, was intended to, and did have a substantial effect on interstate commerce in the United States, including in this District.

381. Eagleview used instrumentalities of interstate commerce to sell and market rooftop aerial measurement products and to effectuate the illegal acts alleged herein.

382. Eagleview's unlawful activities have had a direct, substantial, and reasonably foreseeable effect on interstate commerce and have denied those who purchase rooftop aerial measurement products of the benefits of free, open, and unrestricted competition that the antitrust laws are designed to achieve.

### COUNT I – NON-INFRINGEMENT OF THE '436 PATENT

383. GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

384. Eagleview has asserted infringement of at least claim 1 of the '436 patent.

385. GAF has not infringed, actively induced others to infringe, or contributed to the

infringement of any asserted claim of the '436 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

386.    GAF is therefore entitled to a declaration that it has not infringed, actively induced others to infringe, or contributed to the infringement of any asserted claim of the '436 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

### COUNT II – INVALIDITY OF THE '436 PATENT

387.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

388.    Eagleview has asserted infringement of at least claim 1 of the '436 patent.

389.    The asserted claims of the '436 patent are invalid for failing to satisfy at least Sections 101, 102, 103, and/or 112 of the Patent Act, and/or any judicially created doctrine of invalidity including obviousness-type double-patenting.  GAF is therefore entitled to a declaration as to the foregoing.

### COUNT III – NON-INFRINGEMENT OF THE '840 PATENT

390.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

391.    Eagleview has asserted infringement of at least claim 1 of the '840 patent.

392.    GAF has not infringed, actively induced others to infringe, or contributed to the infringement of any asserted claim of the '840 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

393.    GAF is therefore entitled to a declaration that it has not infringed, actively

63

induced others to infringe, or contributed to the infringement of any asserted claim of the '840 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

## COUNT IV – INVALIDITY OF THE '840 PATENT

394. GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

395. Eagleview has asserted infringement of at least claim 1 of the '840 patent.

396. The asserted claims of the '840 patent are invalid for failing to satisfy at least Sections 101, 102, 103, and/or 112 of the Patent Act, and/or any judicially created doctrine of invalidity including obviousness-type double-patenting. GAF is therefore entitled to a declaration as to the foregoing.

## COUNT V – NON-INFRINGEMENT OF THE '152 PATENT

397. GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

398. Eagleview has asserted infringement of at least claim 10 of the '152 patent.

399. GAF has not infringed, actively induced others to infringe, or contributed to the infringement of any asserted claim of the '152 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

400. GAF is therefore entitled to a declaration that it has not infringed, actively induced others to infringe, or contributed to the infringement of any asserted claim of the '152 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

## COUNT VI – INVALIDITY OF THE '152 PATENT

401.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

402.    Eagleview has asserted infringement of at least claim 10 of the '152 patent.

403.    The asserted claims of the '152 patent are invalid for failing to satisfy at least Sections 101, 102, 103, and/or 112 of the Patent Act, and/or any judicially created doctrine of invalidity including obviousness-type double-patenting.  GAF is therefore entitled to a declaration as to the foregoing.

## COUNT VII – NON-INFRINGEMENT OF THE '880 PATENT

404.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

405.    Eagleview has asserted infringement of at least claim 1 of the '880 patent.

406.    GAF has not infringed, actively induced others to infringe, or contributed to the infringement of any asserted claim of the '880 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

407.    GAF is therefore entitled to a declaration that it has not infringed, actively induced others to infringe, or contributed to the infringement of any asserted claim of the '880 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

## COUNT VIII – INVALIDITY OF THE '880 PATENT

408.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

409.    Eagleview has asserted infringement of at least claim 1 of the '880 patent.

410.    The asserted claims of the '880 patent are invalid for failing to satisfy at least Sections 101, 102, 103, and/or 112 of the Patent Act, and/or any judicially created doctrine of invalidity including obviousness-type double-patenting.  GAF is therefore entitled to a declaration as to the foregoing.

### COUNT XI – NON-INFRINGEMENT OF THE '961 PATENT

411.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

412.    Eagleview has asserted infringement of at least claim 1 of the '961 patent.

413.    GAF has not infringed, actively induced others to infringe, or contributed to the infringement of any asserted claim of the '961 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

414.    GAF is therefore entitled to a declaration that it has not infringed, actively induced others to infringe, or contributed to the infringement of any asserted claim of the '961 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

### COUNT X – INVALIDITY OF THE '961 PATENT

415.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

416.    Eagleview has asserted infringement of at least claim 1 of the '961 patent.

417.    The asserted claims of the '961 patent are invalid for failing to satisfy at least Sections 101, 102, 103, and/or 112 of the Patent Act, and/or any judicially created doctrine of

invalidity including obviousness-type double-patenting.  GAF is therefore entitled to a declaration as to the foregoing.

## COUNT XI – NON-INFRINGEMENT OF THE '376 PATENT

418.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

419.    Eagleview has asserted infringement of at least claim 1 of the '376 patent.

420.    GAF has not infringed, actively induced others to infringe, or contributed to the infringement of any asserted claim of the '376 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

421.    GAF is therefore entitled to a declaration that it has not infringed, actively induced others to infringe, or contributed to the infringement of any asserted claim of the '376 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

## COUNT XII – INVALIDITY OF THE '376 PATENT

422.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

423.    Eagleview has asserted infringement of at least claim 1 of the '376 patent.

424.    The asserted claims of the '376 patent are invalid for failing to satisfy at least Sections 101, 102, 103, and/or 112 of the Patent Act, and/or any judicially created doctrine of invalidity including obviousness-type double-patenting.  GAF is therefore entitled to a declaration as to the foregoing.

67

## COUNT XIII – NON-INFRINGEMENT OF THE '568 PATENT

425.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

426.    Eagleview has asserted infringement of at least claim 1 of the '568 patent.

427.    GAF has not infringed, actively induced others to infringe, or contributed to the infringement of any asserted claim of the '568 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

428.    GAF is therefore entitled to a declaration that it has not infringed, actively induced others to infringe, or contributed to the infringement of any asserted claim of the '568 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

## COUNT XIV – INVALIDITY OF THE '568 PATENT

429.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

430.    Eagleview has asserted infringement of at least claim 1 of the '568 patent.

431.    The asserted claims of the '568 patent are invalid for failing to satisfy at least Sections 101, 102, 103, and/or 112 of the Patent Act, and/or any judicially created doctrine of invalidity including obviousness-type double-patenting.  GAF is therefore entitled to a declaration as to the foregoing.

## COUNT XV – NON-INFRINGEMENT OF THE '960 PATENT

432.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

68

433.    Eagleview has asserted infringement of at least claim 1 of the '960 patent.

434.    GAF has not infringed, actively induced others to infringe, or contributed to the infringement of any asserted claim of the '960 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

435.    GAF is therefore entitled to a declaration that it has not infringed, actively induced others to infringe, or contributed to the infringement of any asserted claim of the '960 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

### COUNT XVI – INVALIDITY OF THE '960 PATENT

436.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

437.    Eagleview has asserted infringement of at least claim 1 of the '960 patent.

438.    The asserted claims of the '960 patent are invalid for failing to satisfy at least Sections 101, 102, 103, and/or 112 of the Patent Act, and/or any judicially created doctrine of invalidity including obviousness-type double-patenting.  GAF is therefore entitled to a declaration as to the foregoing.

### COUNT XVII – NON-INFRINGEMENT OF THE '149 PATENT

439.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

440.    Eagleview has asserted infringement of at least claim 1 of the '149 patent.

441.    GAF has not infringed, actively induced others to infringe, or contributed to the infringement of any asserted claim of the '149 patent that is valid and enforceable, either literally

69

or under the doctrine of equivalents, and is not liable for such infringement.

442.    GAF is therefore entitled to a declaration that it has not infringed, actively induced others to infringe, or contributed to the infringement of any asserted claim of the '149 patent that is valid and enforceable, either literally or under the doctrine of equivalents, and is not liable for such infringement.

## COUNT XVIII – INVALIDITY OF THE '149 PATENT

443.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

444.    Eagleview has asserted infringement of at least claim 1 of the '149 patent.

445.    The asserted claims of the '149 patent are invalid for failing to satisfy at least Sections 101, 102, 103, and/or 112 of the Patent Act, and/or any judicially created doctrine of invalidity including obviousness-type double-patenting.  GAF is therefore entitled to a declaration as to the foregoing.

## COUNT XIX –UNENFORCEABILITY OF THE '880 PATENT

446.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

447.    As explained in GAF's Sixth Affirmative Defense, which is incorporated into this Count XIX by reference, Pictometry's claims of infringement of the '880 patent are barred by the doctrine of inequitable conduct because the Pictometry Patent Team knew of multiple versions of the EFS Guide, which are highly material and non-cumulative to prior art that was before the PTO during prosecution of the '880 patent and its parent application, but withheld them with specific intent to deceive the PTO.

70

448.    GAF therefore is entitled to declaratory judgment that the asserted claims of the '880 patent are unenforceable.

## COUNT XX –UNENFORCEABILITY OF THE ASSERTED PATENTS DUE TO PATENT MISUSE

449.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

450.    As explained in GAF's Seventh Affirmative Defense, which is incorporated into this Count XX by reference, Plaintiffs' claims of infringement of the Asserted Patents, including at least the '436 patent, the '840 patent, the '152 patent, the '880 patent, and the '376 patent, are barred by the equitable doctrine of patent misuse because Plaintiffs impermissibly broadened the scope of the Asserted Patents by ███████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████

451.    GAF therefore is entitled to declaratory judgment that the asserted claims of the Asserted Patents are unenforceable under the doctrine of patent misuse.

## COUNT XXI – VIOLATION OF 15 U.S.C. § 1

452.    GAF incorporates by reference all preceding and succeeding paragraphs of GAF's First Amended Answer and these First Amended Counterclaims.

453.    █████████████████████████████████████████████████████

██████ Eagleview, ██████████████████ entered into a contract, combination or conspiracy to unreasonably restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, by artificially reducing or eliminating competition in the United States.

454.    The contract, combination, or conspiracy resulted in an agreement, understanding,

or concerted action between and among Eagleview, ██████████████████████ ██████████████████████████████████████████████ ████████████████████████████ Such contract, combination, or conspiracy constitutes market allocation, a *per se* violation of Section 1 of the Sherman Act and is, in any event, an unreasonable and unlawful restraint of trade.

455.   Eagleview, ████████████████ contract, combination, or conspiracy occurred within the flow of, and substantially affected, interstate commerce.

456.   The foregoing contract, combination or conspiracy has had at least the following effects:  (i) output was restricted in the sale of rooftop aerial measurement products in the United States; (ii) GAF and other purchasers have been deprived of the benefits of free, open, and unrestricted competition in the sale of rooftop aerial measurement products in the United States; (iii) competition in establishing the prices paid for rooftop aerial measurement products in the United States has been unlawfully restrained, suppressed, and eliminated; (iv) output was restricted in the sale of add-on products containing measurements for walls, windows and doors; (v) consumers have been deprived of the benefits of free, open, and unrestricted competition in the sale of add-on products containing measurements for walls, windows and doors; and (vi) competition in establishing the prices paid for add-on products containing measurements for walls, windows and doors in the United States has been unlawfully restrained, suppressed, and eliminated.

457.   As a proximate result of Eagleview's unlawful conduct, GAF has suffered injury in that it: (i) paid more for the rooftop aerial measurement products in the United States than it otherwise would have paid in the absence of Eagleview's unlawful conduct, (ii) did not receive

profits from the increased U.S. sales of rooftop aerial measurement products that otherwise would have resulted in the absence of Eagleview's unlawful conduct; and (iii) did not receive profits from the U.S. sales of add-on products containing measurements for walls, windows and doors that otherwise would have resulted in the absence of Eagleview's unlawful conduct; and has otherwise been damaged as above.

## DEMAND FOR JURY TRIAL

GAF requests a trial by jury of all issues that may be properly tried by a jury, and gives notice of its reliance on Plaintiffs' payment of the statutory fee.

## PRAYER FOR RELIEF

WHEREFORE, GAF prays that the Court enter judgment in its favor and against Plaintiffs/Counterclaim-Defendants as follows:

A. Denying all relief requested by Plaintiffs/Counterclaim-Defendants in the First Amended Complaint;

B. Declaring that GAF has not, does not, and will not infringe any valid or enforceable claim of the Asserted Patents;

C. Declaring that the asserted claims of the Asserted Patents are invalid;

D. Declaring that the asserted claims of the Asserted Patents are unenforceable due to patent misuse, and that the asserted claims of the '880 patent are unenforceable due to inequitable conduct;

E. Granting GAF judgment in its favor on the First Amended Complaint;

F. Denying any request for injunctive relief by Plaintiffs;

G. Denying any request for monetary damages by Plaintiffs;

73

H. Adjudging and decreeing that Counterclaim-Defendants, ▮▮▮▮▮▮▮▮▮▮ engaged in a contract, combination, or conspiracy in violation of Section 1 of the Sherman Act (15 U.S.C. § 1), and that GAF was injured in its business and property as a result of Counterclaim-Defendants' violations;

I. Adjudging and decreeing that GAF shall recover the damages it sustained, as provided by the federal antitrust laws, and entering a joint and several judgment in favor of GAF in an amount to be trebled in accordance with such laws;

J. Adjudging and decreeing that Counterclaim-Defendants, its subsidiaries, affiliates, successors, transferees, assignees, and the respective officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on Counterclaim-Defendants' behalf, shall be permanently enjoined and restrained from continuing and maintaining the contract, combination, or conspiracy alleged herein;

K. Awarding GAF pre-judgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the initial counterclaim in this action;

L. Finding that Plaintiffs lacked a good-faith basis to bring this action;

M. Finding that this case is exceptional under 35 U.S.C. § 285, and awarding GAF its costs and reasonable attorneys' fees; and

N. Awarding any other relief in law or equity as the Court may deem just and proper.

DATED:  July 21, 2023

John M. Neukom (*pro hac vice*)
Yuqing Cui (*pro hac vice*)
Debevoise & Plimpton LLP
650 California Street
San Francisco, CA  94108
Tel: (415) 738-5700
jneukom@debevoise.com
ycui@debevoise.com

Edward David Hassi (*pro hac vice*)
Leah S. Martin (*pro hac vice*)
Debevoise & Plimpton LLP
801 Pennsylvania Ave N.W. Ste 500
Washington, DC 20004
Tel: (202) 383-8000
thassi@debevoise.com
lmartin@debevoise.com

Edward L. Tulin (*pro hac vice*)
Michael M. Powell (*pro hac vice*)
Gish PLLC
41 Madison Ave, Floor 31
New York, NY 10010
Tel: (212) 518-2000
edward@gishpllc.com
michael@gishpllc.com

/s/ *Michael K. Erickson*

Michael K. Erickson (12503)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Ste. 1400
P.O. Box 45385
Salt Lake City, UT 84145-0385
Tel.: 801-532-1500
Fax: 801-532-7543
merickson@rqn.com

*Attorneys for GAF Materials LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of July 2023, a true and correct copy of the foregoing and the exhibits referenced therein was electronically filed with the CM/ECF system of the U.S. District Court for the District of Utah.  The CM/ECF system sent a Notice of Electronic Filing (NEF) to the attorneys of record, who have consented in writing to accept this NEF as service of this document by electronic means.

Dated:  July 21, 2023

/s/ Megan Kuchenthal
Megan Kuchenthal