Michael K. Erickson (12503)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Ste. 1400
P.O. Box 45385
Salt Lake City, UT 84145-0385
Tel.: 801-532-1500
Fax: 801-532-7543
merickson@rqn.com

*Attorney for Defendant - Additional counsel listed in signature block*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC., and PICTOMETRY INTERNATIONAL CORP., <br><br><br><br> *Plaintiffs,* <br><br> v. <br><br><br><br><br><br> **GAF MATERIALS, LLC,** <br> *Defendant.* | **DEFENDANT'S SHORT-FORM MOTION TO COMPEL PLAINTIFFS TO PRODUCE A 30(b)(6) WITNESS TO ADDRESS SEARCHES AND REPOSITORIES RELATING TO EFS** <br><br> **REDACTED** <br><br> Case No.: 2:22-cv-00215-TS-DAO <br><br><br> The Honorable Ted Stewart <br> Magistrate Judge Daphne A. Oberg |

Pursuant to DUCivR 37-1(b), Defendant GAF Materials LLC ("GAF") hereby moves this Court to compel Plaintiffs to produce a witness to address Topics 13-15 of GAF's 30(b)(6) Notice, which seek testimony regarding the repositories of information relating to Plaintiffs' "EFS" software, whether those repositories were searched, and details relating to the loss of such repositories or information that was contained therein.[1] (*See* Ex. A.) Plaintiffs' refusal to produce a witness to address the foregoing topics is just the latest chapter in an ongoing effort by

---

[1] Pursuant to paragraph 7 of the Court's Discovery Management Order (Dkt. 112), GAF also respectfully moves for leave to include more than 500 words in this motion. GAF respectfully requests that it be permitted to file this motion, which is less than 2000 words, in order to more fully address substantive arguments relevant caselaw.

Plaintiffs to prevent GAF from learning the true nature and scope of Plaintiffs' pre-2009 EFS-related activities.

GAF's RFP 5 seeks "documents relating to sales [of], offers for sale [of], licenses [of], or offers to license" Pictometry's "EFS" software from before May 22, 2009. Plaintiffs initially failed to produce any executed EFS licenses after claiming to have conducted a reasonably diligent search for them. On June 15, 2023, GAF moved to compel Plaintiffs to conduct a supplemental search. (Dkt. 140.) On July 3, 2023, after concluding that there was no "genuine dispute as to the relevance of the documents sought" by RFP 5, the Court ordered Plaintiffs to perform a supplemental search. On August 18, 2023, Plaintiffs produced 227 EFS-related documents, including evidence of ███████████████████████████. (Tulin Decl. ¶ 2.) Plaintiffs did not explain why they had previously failed to produce those documents. The ████████████████████████ produced for the first time after the Court ordered a supplemental search appear to have generated more than ████████████ for Pictometry. (*Id.* ¶ 3.) While this production finally confirmed GAF's suspicion that Plaintiffs have many documents evidencing extensive, and extensively lucrative, pre-2009 EFS licensing, Plaintiffs' supplemental search appears to have been deficient in at least three respects: (i) many of the pre-2009 EFS licenses were incomplete (for instance, they included only a signature page, rather than any of the terms or attachments); (ii) others were only referred to in post-2009 documents (such as license renewals, without production of the underlying, pre-2009 license being renewed); and (iii) the produced documents refer to multiple repositories likely to contain additional, relevant information (relating, *inter alia,* to licenses, trade shows at which EFS was demonstrated, and distribution of EFS-related materials and training sessions) that Plaintiffs do not appear to have searched. (*Id.* ¶ 4.)

Based on GAF's review of the documents belatedly produced by Plaintiffs, when Pictometry executed an EFS license prior to 2009, the information relating thereto was typically ███████████████████████████████████████████. (*See, e.g.*, Ex. B at EV01760325 (██████████████████████████ ███████████████████████████████████); EV01760359 (same).) Similarly, EFS-related licenses appear to have been regularly ███████████████████ ██████. (*See, e.g.*, Ex. B at EV01761101.) The missing information regarding pre-2009 EFS licenses that were produced, as well as information relating to other as-yet-unproduced pre-2009 EFS licenses, are likely to be found in ████████████████████████████████ ██████. In addition, Plaintiffs have not produced any custodial documents from any individuals that were indisputably involved in EFS-related activities, and that were referenced in multiple EFS-related documents that have been produced, including: ████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████. In Topics 13-15 of its 30(b)(6) Notice, GAF therefore sought testimony to explain the many gaps in Plaintiffs' production.

On October 19, Plaintiffs served their objections to GAF's 30(b)(6) Notice, in which they refused to produce a witness to address Topics 13-15. (*See* Ex. A.) GAF promptly sent written notice that this refusal was improper, and on November 1, Kieran Kieckhefer, Lillian Mao, Michael Powell, and Ed Tulin met and conferred regarding those Topics. The parties then exchanged additional correspondence, in which Plaintiffs agreed to produce a witness to testify in general regarding "EagleView and Pictometry's document repositories as they have existed over time – provided the witness is not asked to make a determination of what is or is not

'responsive to Request for Production No. 5.'" (Tulin Decl. ¶ 6.) That is not sufficient to allow GAF to understand what happened to the substantial volume of information that is relevant to its defenses but that has not been produced in this litigation.

If data related to any of the foregoing has been lost or destroyed, or is otherwise unavailable, it impairs GAF's ability to advance its invalidity defense to the '880 patent,[2] its inequitable conduct defense to the '880 patent,[3] and its defenses to the remedies sought by Plaintiffs for infringement of the '880 patent.[4] GAF thus should be entitled to discover what happened to the troves of information that Pictometry kept about its signature product at a time before it improperly sought patent protection on technology that embodied that product. GAF acknowledges that it is possible that all of the custodial data from ██████████████████ ██████████████████████████████████, and all evidence of pre-2009 EFS licensing other than the 227 documents produced in response to the Court's order were destroyed prior to the start of this litigation—despite the fact that Plaintiffs have been engaged in litigation relating to the patents asserted here since at least 2015, which is less than

---

[2] The terms of the pre-2009 EFS licenses are likely relevant to the question of how widely EFS-related materials were disseminated, which in turn relates to whether those materials can be considered invalidating "printed publications," as GAF has alleged in its defenses to U.S. Patent No. 8,542,880 ("the '880 patent*"). GoPro, Inc. v. Contour IP Holding LLC*, 908 F.3d 690, 695 (Fed. Cir. 2018) (reversing finding by the Patent Trial & Appeal Board that a catalog did not constitute a "printed publication," in part because it was disseminated without confidentiality restrictions at a trade show).

[3] Documents relating to the EFS licenses may show the extent of knowledge of key Pictometry personnel relating to EFS, which in turn bears on whether those individuals fulfilled their duties of disclosure to the U.S. Patent & Trademark Office. *See, e.g., Am. Calcar, Inc. v. Am. Honda Motor Co.*, 768 F.3d 1185, 1190-91 (Fed. Cir. 2014) (affirming the district court's judgment of inequitable conduct where the applicant provided a limited disclosure regarding a prior art system without providing its operational details); *Unwired Planet, LLC v. Apple Inc.*, Case No. 13-cv-04134-VC, 2017 WL 1175379, at *3 (N.D. Cal. Feb. 14, 2017) (concluding that the defendant has "supplied enough evidence to create a triable question of fact on deceptive intent" where the evidence, "suggest[ed] that the inventors were intimately familiar with the undisclosed prior art").

[4] *See, e.g., ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (noting that in order to calculate a reasonable royalty for alleged infringement, the Court should consider "past and present royalties received by the patentee 'for the licensing of the patent in suit'") (citations omitted); *see also Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1383 (Fed. Cir. 2017) ("To determine whether the patentee will suffer irreparable harm absent an injunction, the court may consider factors such as . . . the willingness of a patentee to license . . . .").

two years after the '880 patent issued. But even if that were the case, GAF should be allowed to probe the circumstances regarding that destruction, because the loss of those documents has a direct impact on GAF's ability to present its invalidity defense, its inequitable conduct defense, its damages case, and its opposition to injunctive relief.[5]

Plaintiffs' refusal to produce a witness to address the full scope of Topics 13-15 appears to be based on two untenable positions. _First_, Plaintiffs contend that these topics relate to "discovery on discovery" to which GAF is not entitled. As an initial matter, there is no blanket prohibition on "discovery on discovery"; on the contrary, "[i]n some circumstances, it is appropriate to allow discovery about a party's efforts to locate and produce discovery, electronic or otherwise." _Crocs, Inc. v. Effervscent, Inc._, Case No. 06-cv-605, 2017 WL 1325344, at *8 (D. Colo. Jan. 3, 2017) (citing _Conagra Foods Food Ingredients Col, Inc. v. Archer Daniels Midland Co._, Case No. 12–2171–EFM, 2014 WL 1570263, at *6 (D. Kan. 2014)). "In general, such discovery will be allowed if a party's efforts to comply with proper discovery requests are reasonably drawn into question." _Crocs_, 2017 WL 1325344, at *8. Plaintiffs' efforts to comply with GAF's discovery requests for EFS-related materials have been "reasonably drawn into question" at least because: (i) it took a Court order for GAF to get even a single executed pre-2009 EFS license produced by Plaintiffs (though more than ▮▮▮▮▮ licenses were in Plaintiffs' possession); (ii) that Court-ordered supplemental search produced evidence for the first time ▮▮▮▮▮ of EFS licenses and several public disclosures of EFS-related materials at trade shows and seminars; and (iii) that supplemental search indicates that there were multiple repositories, custodial documents, and other materials that are directly responsive and relevant to

---

[5] This relief sought in this motion relates solely to the claims and defenses regarding the '880 patent. If Plaintiffs were to drop their claims based on the '880 patent, either on their own volition or pursuant to a Court order granting in whole or in part GAF's pending motion to limit claims (Dkt. 202), that would moot this motion.

GAF's defenses, but that Plaintiffs have failed to search or produce.

The nature of Plaintiffs' prior representations, and the sheer volume of responsive materials produced for the first time months *after* Plaintiffs claimed to have done a reasonably diligent search, raise substantial questions about the adequacy of Plaintiffs' preservation of relevant materials and the diligence of Plaintiffs' search efforts. *See, e.g., Crocs*, 2017 WL 1325344, at *8 (granting a motion to compel a one-hour deposition on the topic of "search for, preservation of and production of electronic and hard copy documents information and things potentially relevant to this Action and/or responsive to [defendant's] requests for production of documents"); *see also F.F.T., LLC v. Sexton*, No. 1:19-cv-3027, 2020 WL 3258623 , at *3 (S.D. Ind. June 15, 2020) (noting that "given Plaintiff's identification of responsive documents that likely exist but have not been produced, Plaintiff would be entitled to conduct discovery into the nature and extent of Defendants' discovery response process in order to determine why [relevant documents] were not located").

*Second*, Plaintiffs contend that the Court has already denied "discovery on discovery" on any EFS-related topics in its July 3 Order. That is incorrect. While the Court did not require Plaintiffs to provide details about their document retention and search efforts at that time, neither the Court nor GAF had any idea then that Plaintiffs had failed to produce evidence of ▮▮▮▮▮ ▮▮▮▮▮ that were responsive to GAF's RFPs. GAF had likewise not served a 30(b)(6) Notice at the time of the Court's July 3 Order, and the Court therefore has not had the opportunity to consider the particular (and limited) request for testimony that GAF seeks here.

For the foregoing reasons, GAF respectfully requests that Plaintiffs be compelled to produce a witness to address Topics 13-15 of GAF's 30(b)(6) Notice.

DATED:  December 4, 2023

John M. Neukom (*pro hac vice*)
Yuqing Cui (*pro hac vice*)
Debevoise & Plimpton LLP
650 California Street
San Francisco, CA  94108
Tel: (415) 738-5700
jneukom@debevoise.com
ycui@debevoise.com

Edward David Hassi (*pro hac vice*)
Leah S. Martin (*pro hac vice*)
Debevoise & Plimpton LLP
801 Pennsylvania Ave N.W. Ste 500
Washington, DC 20004
Tel: (202) 383-8000
thassi@debevoise.com
lmartin@debevoise.com

Edward L. Tulin (*pro hac vice*)
Michael M. Powell (*pro hac vice*)
Gish PLLC
41 Madison Ave, Floor 31
New York, NY 10010
Tel: (212) 518-2000
edward@gishpllc.com
michael@gishpllc.com

/s/ *Michael K. Erickson*

Michael K. Erickson (12503)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Ste. 1400
P.O. Box 45385
Salt Lake City, UT 84145-0385
Tel.: 801-532-1500
Fax: 801-532-7543
merickson@rqn.com

*Attorneys for GAF Materials LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December 2023, a true and correct copy of the foregoing was electronically filed with the CM/ECF system of the U.S. District Court for the District of Utah. The CM/ECF system sent a Notice of Electronic Filing ("NEF") to the attorneys of record, who have consented in writing to accept this NEF as service of this document by electronic means.

/s/ *Liz Beidoun*