UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES INC.; and PICTOMETRY INTERNATIONAL CORP., <br><br> Plaintiffs, <br><br> v. <br><br> GAF MATERIALS LLC, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S SHORT-FORM MOTION TO COMPEL PLAINTIFFS' PRODUCTION OF DOCUMENTS RELATING TO XACTWARE/VERISK (DOC. NO. 141)** <br><br> Case No. 2:22-cv-00215 <br><br> District Judge Ted Stewart <br><br> Magistrate Judge Daphne A. Oberg |

In this patent infringement case, Defendant GAF Materials, LLC filed a motion to compel Plaintiffs Eagle View Technologies, Inc. and Pictometry International Corp. (collectively, "EagleView") to produce (1) all written agreements between EagleView and Xactware Solutions Inc. and/or Verisk Analytics Inc., and (2) EagleView's communications with the Federal Trade Commission ("FTC") regarding Xactware/Verisk.[1] EagleView opposed the motion to compel, arguing the motion was untimely and the requested documents were irrelevant.[2] The court held a hearing on July 3, 2023, overruled EagleView's timeliness objection, and took the motion under advisement.[3] Later, after GAF was permitted to amend its

---

[1] (Def.'s Short Form Mot. to Compel Pls.' Produc. of Docs. Relating to Xactware/Verisk ("Mot."), Doc. No. 141.)

[2] (Pls.' Opp'n to Def.'s Short Form Mot. to Compel Pls.' Produc. of Docs. Relating to Xactware/Verisk ("Opp'n"), Doc. No. 148.)

[3] (See Minute Entry, Doc. No. 162; Tr. of July 3, 2023 Hrg. 38:3–39:10, 56:9–11, Doc. No. 163.) EagleView argued the motion was untimely under the District of Utah's local rules because it was filed more than forty-five days after the first written communication regarding the dispute. (See Opp'n 1, Doc. No. 148); DUCivR 37-1(b)(2)(C). The court found that even assuming the

1

pleadings to add an antitrust counterclaim, both parties submitted supplemental briefing regarding the relevance of the requested documents to this counterclaim.[4]  Having considered all the briefing and argument, and finding the agreements and communications at issue are relevant to GAF's counterclaim and defenses, the court grants GAF's motion as explained below.

As relevant to this motion, GAF asserts a patent misuse defense based on a November 2021 settlement resolving litigation between EagleView and Xactware/Verisk regarding alleged infringement of patents similar to those at issue in this case.[5]  GAF alleges this settlement impermissibly broadened the scope of the patents asserted in this case, with anticompetitive effect.[6]  GAF also asserts an antitrust counterclaim based largely on the same settlement, alleging it was part of a "contract, combination or conspiracy" between EagleView and Xactware/Verisk to unreasonably restrain trade.[7]

---

motion was filed more than forty-five days after the first written communication, the parties were engaged in ongoing meetings in an effort to resolve the dispute, which provided good cause to permit GAF to pursue its motion after the deadline.  (See Tr. of July 3, 2023 Hrg. 38:3–39:10, Doc. No. 163); see also DUCivR 37-1(b)(2)(C) (providing the court may extend the forty-five-day deadline for good cause).

[4] (See Docket Text Order, Doc. No. 165 (permitting supplemental briefing); Pls.' Suppl. Br. Re: Def.'s Short Form Mot. to Compel Pls.' Produc. of Docs. Relating to Xactware/Verisk ("Pls.' Suppl. Br."), Doc. No. 173; Def.'s Suppl. Br. in Supp. of Its Short-Form Mot. to Compel Pls.' Produc. of Docs. Relating to Xactware/Verisk ("Def.'s Suppl. Br."), Doc. No. 174.)

[5] (See First Am. Answer to First Am. Compl. and Countercls. ("First Am. Answer and Countercls.") ¶¶ 277–293, Doc. Nos. 166 (redacted), 169 (sealed).)

[6] (See id. ¶ 277.)

[7] (Id. ¶ 453.)

Agreements Between EagleView and Xactware/Verisk (RFP 1)

GAF's request for production ("RFP") 1 seeks all agreements between EagleView and Xactware/Verisk.[8] EagleView produced the November 2021 settlement agreement and the contemporaneous "integration" agreement, but refuses to produce earlier agreements with Xactware/Verisk—including seven prior agreements referenced in the integration agreement.[9] In its motion to compel, GAF argues these seven agreements are necessary to understand the full context of the November 2021 documents.[10] It also argues these and any other agreements between EagleView and Xactware/Verisk are relevant to the patent misuse defense and antitrust counterclaim because they are likely to reveal EagleView's contracting patterns and potential use of anticompetitive devices in prior relationships.[11]

In opposition, EagleView argues the earlier agreements are irrelevant because they were either business agreements or settlements unrelated to patent litigation, they predated the alleged anticompetitive conduct, and they were referenced only once in the November 2021 agreements.[12]

GAF's motion is granted as to RFP 1. The November 2021 integration agreement expressly references prior agreements between EagleView and Xactware/Verisk, including identifying some as still in force. Thus, the prior agreements are necessary to understand the November 2021 agreements which are central to GAF's patent misuse defense and antitrust

---

[8] (*See* Mot. 1, Doc. No. 141.)

[9] (*See id.* at 1–2.)

[10] (*Id.* at 2.)

[11] (*See id.*; Def.'s Suppl. Br., Doc. No. 174.)

[12] (*See* Opp'n 1–2, Doc. No. 148.)

counterclaim. Moreover, the contracting relationship between EagleView and Xactware/Verisk is relevant to the existence of an anticompetitive contract, combination, or conspiracy.[13] Therefore, the documents sought in RFP 1 are relevant and must be produced.

FTC Communications (RFP 2)

RFP 2 seeks communications with regulatory agencies relating to EagleView's relationship with Xactware/Verisk.[14] According to GAF, the FTC challenged Verisk's proposed acquisition of EagleView in 2014 because it would have resulted in a single-player market for rooftop aerial measurement products.[15] However, EagleView refuses to produce its communications with the FTC from 2014.[16] GAF contends these communications are relevant to patent claims because they are likely to implicate both the scope of EagleView's patent claims and the nature of the market for products covered by EagleView's patents.[17] GAF also argues the communications are relevant to the antitrust counterclaim because they are "necessary to ascertain the full context and extent of [EagleView's] illegal marketplace allocation," including prior attempts to monopolize the rooftop aerial measurement market.[18]

---

[13] *See Full Draw Prods. v. Easton Sports, Inc.*, 182 F.3d 745, 756 (10th Cir. 1999) ("[T]o state a claim for a Sherman Act § 1 violation, 'the plaintiff must allege facts which show: the defendant entered a contract, combination or conspiracy that unreasonably restrains trade in the relevant market.'" (quoting *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 965 F.2d 1022, 1027 (10th Cir. 1992)).

[14] (*See* Mot. 2, Doc. No. 141.)

[15] (*See id.*; Def.'s Suppl. Br. 2, Doc. No. 174.)

[16] (*See* Mot. 2, Doc. No. 141.)

[17] (*See id.*)

[18] (Def.'s Suppl. Br. 3, Doc. No. 174.)

In opposition, EagleView argues communications with the FTC from 2014 are irrelevant because they predate the alleged anticompetitive activity from 2021, and because the proposed acquisition related to the insurance market, not the roof report market at issue in this case.[19] EagleView also argues the competitive landscape has changed significantly since 2014, rendering the FTC investigation irrelevant.[20] Finally, EagleView notes the FTC investigation never resulted in an adjudication which, it argues, reduces its probative value.[21]

GAF's motion is granted as to RFP 2. Given the broad scope of relevance at the discovery stage,[22] the FTC communications are relevant to the claims in this case. "[W]here allegations of conspiracy or monopolization are involved . . . broad discovery may be needed to uncover evidence of invidious design, pattern or intent."[23] Although the communications at issue predate the anticompetitive conduct from 2021, plaintiffs in antitrust cases are "ordinarily permitted to discover defendant's activities for a reasonable period of time antedating the earliest possible date of the actionable wrong."[24] Moreover, the 2014 FTC communications concern the

---

[19] (Opp'n 2, Doc. No. 148.)

[20] (Pls.' Suppl. Br. 2, Doc. No. 173.)

[21] (*Id.*)

[22] *See Allegis Inv. Servs., LLC v. Arthur J. Gallagher & Co.*, No. 2:17-cv-00515, 2018 U.S. Dist. LEXIS 243885, at *6 (D. Utah May 25, 2018) (unpublished) (Relevance in the discovery context is "to be construed broadly to encompass any matter that bears on, or that reasonably could bear on any party's claim or defense." (internal quotation marks omitted)).

[23] *Food Lion, LLC v. Dairy Farmers of Am., Inc.*, No. 1:20-CV-442, 2020 U.S. Dist. LEXIS 226120, at *13 (M.D.N.C. Sept. 29, 2020) (unpublished) (second alteration in original) (citation omitted); *see also Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 U.S. Dist. LEXIS 22090, at *18 (D. Kan. Mar. 26, 2007) (unpublished) (noting courts have "allowed discovery in anti-trust cases to extend a reasonable period of time antedating the earliest possible actionable wrong" (internal quotation marks omitted)).

[24] *Food Lion, LLC*, 2020 U.S. Dist. LEXIS 226120, at *14.

same entities involved in the 2021 settlement upon which GAF's antitrust claim is based—entities which GAF alleges have conspired to allocate the market.[25] Finally, the parties' dispute regarding nature of the market at issue in the FTC investigation need not be resolved at this stage. Where GAF contends the proposed 2014 acquisition would have resulted in monopolization of the rooftop aerial measurement market,[26] the FTC investigation and communications are relevant to GAF's antitrust counterclaim concerning the same market. Thus, the FTC communications sought in RFP 2 are relevant and must be produced.

## CONCLUSION

GAF's motion[27] is granted, and EagleView is ordered to produce all documents responsive to RFPs 1 and 2.

DATED this 29th day of January, 2024.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[25] (*See* First Am. Answer and Countercls. ¶¶ 327, 335, Doc. Nos. 166 (redacted), 169 (sealed)); *cf. Flying J, Inc. v. TA Operating Corp.*, No: 1:06-cv-30, 2007 U.S. Dist. LEXIS 55574, at *22 (D. Utah July 30, 2007) (unpublished) ("In light of Plaintiffs' allegations concerning Comdata's involvement in the alleged antitrust conspiracy, communications with, and about, Comdata are clearly relevant.").

[26] (Def.'s Suppl. Br. 2, Doc. No. 174.)

[27] (Doc. No. 141.)