UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES INC.; and PICTOMETRY INTERNATIONAL CORP., <br><br> Plaintiffs, <br><br> v. <br><br> GAF MATERIALS LLC, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S SHORT-FORM MOTION TO COMPEL PLAINTIFFS' PRODUCTION OF DOCUMENTS SUFFICIENT TO IDENTIFY THIRD PARTIES THAT DEVELOPED, MANUFACTURED, OR SOLD PLAINTIFFS' PRODUCTS (DOC. NO. 188)** <br><br> Case No. 2:22-cv-00215 <br><br> District Judge Ted Stewart <br><br> Magistrate Judge Daphne A. Oberg |

In this patent infringement case, Defendant GAF Materials, LLC filed a motion to compel Plaintiffs Eagle View Technologies, Inc. and Pictometry International Corp. (collectively, "EagleView") to produce documents sufficient to identify the third parties that have developed, manufactured, or sold EagleView's products which EagleView contends practice the asserted patents.[1] EagleView opposed the motion to compel, arguing its response was adequate and the discovery request was overly broad and unduly burdensome.[2] The court

---

[1] (Def.'s Short-Form Mot. to Compel Pls.' Produc. of Docs. Sufficient to Identify Third-Parties that Designed, Developed, Manufactured, or Sold Pls.' Products ("Mot."), Doc. No. 188.)

[2] (Pls.' Opp'n to Def.'s Short-Form Mot. to Compel Pls.' Produc. of Docs. Sufficient to Identify Third-Parties that Designed, Developed, Manufactured, or Sold Pls.' Products ("Opp'n"), Doc. No. 191.)

1

held a hearing on October 16, 2023, and took the motion under advisement.[3] For the reasons explained below, GAF's motion is granted.

GAF's request for production ("RFP") 28 seeks "[d]ocuments sufficient to identify any vendors, manufacturers, fabricators, consultants, or other third-party entities or individuals that have been involved in any way with any of Plaintiffs' products or processes that Plaintiffs contend practice any Asserted Claim, including the products referenced in Section VIII of Plaintiffs' LPR 2.3 Initial Infringement Contentions."[4] EagleView objected on various grounds including overbreadth and undue burden,[5] and eventually agreed to produce documents only for the following categories:

1. entities involved in design or development prior to the patents' 2009 priority dates;
2. entities which sold EagleView's roof reports between 2019 and present;
3. entities which supplied imagery to EagleView before its 2013 merger with Pictometry (which then became its exclusive supplier); and
4. entities which construct roof models or analyze aerial imagery.[6]

GAF argues EagleView's response improperly imposes both temporal and subject-matter limitations on RFP 28.[7] GAF argues the requested documents are relevant because EagleView

---

[3] (*See* Min. Entry, Doc. No. 203; Tr. of Oct. 16, 2023 Hrg. 33:8, Doc. No. 262.)

[4] (Ex. B to Mot., Pls.' Resps. and Objs. to Def.'s Reqs. for Produc. Nos. 6-37 ("Pls.' Resps.") 23, Doc. No. 189-2.)

[5] (*See id.* at 23–24.)

[6] (*See* Opp'n 1, Doc. No. 191; *see also* Mot. 1–2, Doc. No. 188.)

[7] (*See* Mot. 2, Doc. No. 188.)

intends to rely on the alleged commercial success and industry praise of its products to show the asserted patents are valid—specifically, that they were nonobvious.[8] But GAF maintains any such success was not due to patented features, but rather other facts (such as third-party manufacturing, exclusive third-party relationships, marketing, or other non-patented features of the products).[9] Thus, GAF contends documents identifying third parties which contributed to the products' commercial success are relevant to whether the asserted patents are obvious.[10]

      EagleView argues the request for documents identifying any entity "involved in any way" with its products is overly broad, and only the categories of documents it agreed to produce are relevant.[11] Specifically, EagleView contends the first category (designers and developers before 2009) is relevant to inventorship; the second category (sellers from 2019 to present) is relevant to damages; and only the third and fourth categories (imagery suppliers and entities which construct roof models or analyze aerial imagery) are relevant to commercial success.[12] EagleView suggests GAF must identify any other specific categories it is seeking before requiring EagleView to respond.[13] EagleView also argues the request is unduly burdensome because it has had over a thousand vendors, and it does not keep vendor records in a manner corresponding to GAF's request.[14]

---

[8] (*Id.*)

[9] (*Id.*)

[10] (*Id.*)

[11] (*See* Opp'n 1–2, Doc. No. 191.)

[12] (*See id.* at 1.)

[13] (*See id.*)

[14] (*See id.* at 2.)

At the hearing, GAF clarified that it narrowed the scope of its request during conferrals with EagleView, and it only seeks documents identifying developers, manufacturers, and sellers of EagleView's products.[15] With that limitation, RFP 28 is relevant and proportional to the needs of the case.[16] As GAF explained in its motion and at the hearing, discovery regarding the contributions of third-party developers, manufacturers, and sellers is relevant to rebut EagleView's allegation that the commercial success of its products is attributable to patented features. For purposes of determining whether outside vendors contributed to the products' commercial success, the relevant time period is the entire time period during which EagleView's products were developed, manufactured, and sold. Thus, the time limitations proposed by EagleView based on the relevant time periods for inventorship (pre-2009) and damages (2019 to present) are inapt. EagleView has not shown these time limitations are warranted, where RFP 28 seeks information relevant to commercial success rather than inventorship or damages. Finally, EagleView's suggestion that GAF must identify specific categories of vendors is impractical, where GAF lacks information regarding what contributions were made by outside vendors. The limitation to developers, manufacturers, and sellers is sufficient to identify the information sought and permit EagleView to respond.

EagleView has not demonstrated responding to RFP 28, as limited, would cause undue burden. As in initial matter, EagleView presented no evidence of the time or costs it would incur in responding. Further, while EagleView represented it had more than a thousand vendors, it provided no estimate of the number of vendors who were developers, manufacturers, and sellers.

---

[15] (*See* Tr. of Oct. 16, 2023 Hrg. 10:15–24, Doc. No. 262.)

[16] *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.").

Rather, it argued at the hearing that RFP 28 would cover even vendors who supplied ballpoint pens to EagleView. But this is not a fair reading of RFP 28, as limited above, and GAF confirmed at the hearing that it is not seeking such information. EagleView has not demonstrated it would be unduly burdensome to produce documents identifying developers, manufacturers, and sellers of the products at issue in this case.

For these reasons, RFP 28 as limited in this order is relevant and proportional, and EagleView must produce responsive documents.

## CONCLUSION

GAF's motion[17] is granted, and EagleView is ordered to produce documents sufficient to identify third-party developers, manufacturers, and sellers of EagleView's products at issue in this case.

DATED this 31st day of January, 2024.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[17] (Doc. No. 188.)